UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X

REPEX VENTURES S.A., Individually and on :
Behalf of All Others Similarly Situated,

                                 :

           Plaintiff,

                                 :

      -against-

                                 :

BERNARD L. MADOFF; BERNARD L.
MADOFF INVESTMENT SECURITIES;         Case No.  1:09-cv-0289-RMB
BANK MEDICI S.A.; SONJA KOHN; PETER :
SCHEITHAUER; HERALD USA FUND;
HERALD LUXEMBURG FUND; BANK         :
AUSTRIA CREDITANSTALT; UNICREDIT
S.A.; PRIMEO SELECT FUNDS; PIONEER  :
ALTERNATIVE INVESTMENTS; THEMA
INTERNATIONAL FUND PLC; ERNST &    :
YOUNG LLP, and HSBC HOLDINGS PLC,

           Defendants.

-------------------------------------- X

**[caption continues on next page]**

## MEMORANDUM OF DR. SHMUEL CABILLY IN FURTHER SUPPORT OF HIS MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
HORST LEONHARDT, on Behalf of Himself        :
and All Others Similarly Situated,

                                             :

            Plaintiff,

                                             :

      -against-

                                             :

BERNARD L. MADOFF, BANK MEDICI               :
S.A., SONJA KOHN, PETER SCHEITHAUER,
HERALD USA FUND, HERALD                      :
LUXEMBURG FUNDS, BANK AUSTRIA
CREDITANSTALT, UNICREDIT S.A.,               :
PRIMEO SELECT FUND, PRIMEO
EXECUTIVE FUND, PIONEER                       :
ALTERNATIVE INVESTMENTS, THEMA
INTERNATIONAL FUND PLC, HELMUTHY             :    Case No. 1:09-cv-2032-RMB
E. FREY, FRIEDRICH PFEFFER, FRANCO
MUGNAI, ALBERTO BENBASSAT,                   :
STEPHANE BENBASSAT, GENEVALOR,
BENBASSAT & CIE, DAVID T. SMITH,             :
GERALD J.P. BRADY, DANIEL
MORRISSEY, ERNST & YOUNG S.A.,               :
ERNST & YOUNG FLOBAL LIMITED, HSBC
HOLDINGS PLC, HSBC INSTITUTIONAL             :
TRUST SERVICES (IRELAND) LIMITED,
HSBC SECURITIES SERVICES (IRELAND)           :
LIMITED, HSBC SECURITIES SERVICES,
S.A., PRICEWATERHOUSECOOPERS,                :
CHARTERED ACCOUNTANTS,
PRICEWATERHOUSECOOPERS                        :
INTERNATIONAL LIMITED and FRIEHLING
& HOROWITZ,                                  :

            Defendant.

                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```
**[caption continues on next page]**

```
------------------------------------- X
FABIAN PERRONE and CHIA-HUNG KAO,      :

            Plaintiffs,                :

        -against-                      :

ALBERTO BENBASSAT, STEPHANE            :
BENBASSAT, GERALD J.P. BRADY,
NICOLA A. CORSETTI, NIGEL H.           :
FIELDING, HELMUTH E. FREY, JOHN
HOLLIWELL, KARL E. KANIAK, SONJA       :
KOHN, ALBERTO LA ROCCA, DANIEL
MORRISSEY, FRANCO MUGNAI, DECLAN       :
MURRAY, HERALD C. NOGRASEK, JAMES
E. O'NEILL, FRIEDRICH PFEFFER, URSULA  :
RADELLESZCZYNSKI, HANNES SALETA,       :
PETER SCHEITHAUER, ALFRED SIMON,       :   Case No. 1:09-cv-2558-SHS
DAVID T. SMITH, JOHANNES P. SPALEK,
WERNER TRIPOLT, MICHAEL WHEATON,       :
BA WORLDWIDE FUND MANAGEMENT,
LTD., BANK AUSTRIA CREDITANSTALT,      :
BANK OF BERMUDA (CAYMAN) LIMITED,
BANK OF BERMUDA (LUXEMBOURG)           :
S.A., BANK MEDICI AG, ERNST & YOUNG,
PRIMEO FUND, HERALD FUND SPC, HSBC     :
HOLDINGS PLC, HSBC INSTITUTIONAL
TRUST SERVICES (IRELAND) LTD., HSBC    :
SECURITIES SERVICES (IRELAND) LTD.,
HSBC SECURITIES SERVICES               :
(LUXEMBOURG) S.A., PIONEER
ALTERNATIVE INVESTMENT                 :
MANAGEMENT LIMITED,
PRICEWATERHOUSECOOPERS, THEMA          :
INTERNATIONAL FUND PLC, and
UNICREDIT S.A.,                        :

            Defendants.                :
------------------------------------- X
```

# TABLE OF CONTENTS

**Page**

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 3

I.      THE PSLRA'S LEAD PLAINTIFF FRAMEWORK ................................... 3

II.     DR. CABILLY IS THE PRESUMPTIVE LEAD PLAINTIFF AND
THE COMPETING MOTIONS SHOULD BE DENIED ............................... 4

     A.     The Repex and Foxton Group Motions Are Untimely ............................. 4

     B.     The Foxton Group Cannot Substantiate Its Losses and Is Therefore
Inadequate and Atypical ........................................................................ 7

     C.     Repex's Niche Plaintiff Arguments Are Unavailing .............................. 11

CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Burke v. Ruttenberg*,
 102 F. Supp. 2d 1280 (N.D. Ala. 2000) ....................................................................................8

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ...................................................................................................7

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001)...................................................................................................10

*Cheney v. Cyberguard Corp.*,
 211 F.R.D. 478 (S.D. Fla. 2002) ...............................................................................................6

*In re Doral Financial Corp. Sec. Litig.*,
 414 F. Supp. 2d 398 (S.D.N.Y. 2006) ....................................................................................12

*In re Enron Corp. Securities Litigation*,
 206 F.R.D. 427 (S.D. Tex. 2002) ...........................................................................................11

*Fishbury, Ltd. v. Connetics Corp.*,
 No. 06 Civ. 11496 (SWK), 2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ............................12

*Freudenberg v. E\*Trade Fin. Corp.*,
 No. 07 Civ. 8538, 2008 WL 2876373 (S.D.N.Y. July 16, 2008) ............................................12

*In re Global Crossing, Ltd. Sec. Litig.*,
 313 F. Supp. 2d 189 (S.D.N.Y. 2003)......................................................................................11

*Greenberg v. Bear Stearns & Co.*,
 80 F. Supp. 2d 65 (E.D.N.Y. 2000) ...................................................................................7, 11

*Hevesi v. Citigroup, Inc.*,
 366 F.3d 70 (2d Cir. 2004).......................................................................................................12

*Lifschitz v. Hexion Specialty Chems.*,
 08 Civ. 6394, 2009 U.S. Dist. LEXIS 21933 (S.D.N.Y. Mar. 19, 2009) ...............................13

*Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*,
 369 F.3d 27 (2d Cir. 2004)......................................................................................................13

*In re Rite Aid Corp. Sec. Litig.*,
 No. 99 Civ. 1349, 1999 U.S. Dist. LEXIS 19753 (E.D. Pa. Dec. 20, 1999) ............................6

*In re Smith Barney Transfer Agent Litig.*,
    No. 05 Civ. 7583 (WHP), 2006 WL 991003 (S.D.N.Y. Apr. 17, 2006) ................................12

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    No. 05 Civ. 1898, 2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005)............................7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) ..........................................................................................12

**STATUTES**

15 U.S.C. § 78u-4(a) ............................................................................................................ passim

**OTHER AUTHORITIES**

Raphael G. Satter, "Son: UK Veteran Killed Himself After Madoff Loss,"
    *USA Today*, Feb. 13, 2009 ....................................................................................................9

Cahal Milmo, "Ex-Soldier Shot Himself After Losing Fortune In Madoff Fraud,"
    *The Independent,* Feb. 14, 2009................................................................................................9

Stephen Adams, "Army Major Kills Himself Over Bernard Madoff Fraud Debts,"
    *London Telegraph*, Feb. 13, 2009..............................................................................................9

Mary Jordan, "British Family Blames Madoff for Suicide,"
    *Washington Post* Feb. 15, 2009 ..............................................................................................9

Dr. Shmuel Cabilly ("Dr. Cabilly") respectfully submits this memorandum of law in further support of his motion for consolidation, appointment as lead plaintiff, and approval of selection of lead counsel, and in opposition to the competing motions filed by Repex Ventures S.A. ("Repex") and the Foxton Group.

## INTRODUCTION

The procedural history of these competing motions is surprisingly complex. It begins on January 12, 2009 when the first of the above-captioned actions, *Repex Ventures S.A. v. Madoff, et al.*, No. 09 Civ. 289 (RMB), was filed.[1] On the same day, as required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(A)(i), counsel for the plaintiff in the first-filed action, Stull Stull & Brody (the "Stull firm"), published a notice to investors alerting them of the pendency of the action and their right to move the court, within sixty days, to serve as lead plaintiff of the purported class. *See* Declaration of Timothy J. Burke in Support of the Motion of the Repex Group for Appointment as Lead Plaintiff Pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 and Approval of Selection of Lead Counsel at Ex. A (Docket Entry No. 21).[2] The deadline for such motions was March 13, 2009. On that date, four motions were filed, on behalf of (1) Dr. Cabilly, (2) Nürnberger Versicherung Aktiengesellschaft Österreich, (3) Repex Ventures S.A. and Radovan Fijember (the

---

[1]    The class period described in the complaint is January 12, 2004 through and including January 12, 2009.

[2]    The Notice was timely published, but the Stull firm incorrectly listed the dates for the class period as "January 12, 2002 through and including January 12, 2008."

"Repex Group"), and (4) Peter Brandhofer.[3]  These motions are now fully briefed.  Dr. Cabilly's loss was far greater than any of the other movants, and thus he is the presumptive lead plaintiff.

However, just prior to the March 13 deadline, on March 5, 2009, the Stull firm filed the second of the above-captioned actions, *Leonhardt v. Madoff, et al.*, No. 09 Civ. 2032 (RMB).  The *Leonhardt* complaint is nearly identical to the *Repex* complaint, with the exception of the addition of the Primeo Executive Fund as a defendant.  <u>Notably, the class definition in both complaints is exactly the same</u>.  *See Repex* Comp. at ¶ 54 (including "those who purchased investments in funds that were controlled or managed by Medici and in turn provided to Madoff between January 12, 2004 and January 12, 2009, inclusive"); *Leonhardt* Comp. ¶ 75 (same).  The Stull firm nevertheless issued a second notice to investors, this time suggesting that investors had until May 4, 2009 to file motions for appointment as lead plaintiff in the *Leonhardt* action.  *See* Declaration of Timothy J. Burke in Support of Motion By Repex Ventures S.A. for Consolidation of All Related Actions, Appointment as Lead Plaintiff Pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934, and Approval of Selection of Lead Counsel at Ex. A (Docket Entry No. 43).

On May 4, 2009, only one additional lead plaintiff motion was filed in the *Leonhardt* action – by the Stull firm itself – on behalf of Repex.[4]  Thus, despite the Stull

---

[3]  Plaintiff Peter Brandhofer subsequently withdrew his motion for appointment of lead plaintiff and lead counsel.  *See Repex Ventures S.A. v. Madoff, et al.*, No. 09 Civ. 289 (RMB), at Docket Entry No. 26.

[4]  Dr. Cabilly filed a Notice alerting the Court that his motion for appointment as lead plaintiff had already been timely filed in both the *Repex* and *Leonhardt* actions on March 13, 2009.  *See Leonhardt v. Madoff, et al.*, No. 09 Civ. 2032 (RMB), at Docket Entry No. 16.

firm's concerns that its January 12 notice was somehow defective and would deter investors from applying for appointment as lead plaintiff who otherwise might, <u>no new investors stepped forward to request appointment in the *Leonhardt* action</u>. Nevertheless, a lead plaintiff motion was filed then in yet another case, *Perrone v. Benbassat, et al.*, No. 09 Civ. 2558 (SHS) (S.D.N.Y. filed March 19, 2009), on behalf of the Foxton Group. The Foxton Group seeks to serve as lead plaintiff on behalf of substantially the same class as lead plaintiff movants in the *Repex* and *Leonhardt* actions.

Dr. Cabilly submits this memorandum of law in opposition to the competing motions filed by Repex and the Foxton Group.

## <u>ARGUMENT</u>

## I.     THE PSLRA'S LEAD PLAINTIFF FRAMEWORK

The PSLRA sets forth procedures for the selection of a lead plaintiff in class actions brought under the Securities Exchange Act of 1934. 15 U.S.C. § 78u-4(a)(1). The PSLRA requires the Court to consider all **timely** motions made by purported class members seeking appointment and to determine the "member or members of the purported plaintiff class" that are "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

In ruling on competing motions, the Court must adopt a presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class" and who "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption is rebuttable, however, upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to

unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## II.     DR. CABILLY IS THE PRESUMPTIVE LEAD PLAINTIFF AND THE COMPETING MOTIONS SHOULD BE DENIED

Dr. Cabilly, who incurred a substantial loss of $3,665,200 as a result of the

alleged fraud, has the largest loss of any movant to timely file a motion for appointment

as lead plaintiff in this litigation, and is thus the presumptive lead plaintiff.  Because no

other movant is able to rebut Dr. Cabilly's presumptive adequacy, his motion for

appointment as lead plaintiff should be granted.  The only movant to claim a larger loss,

the Foxton Group, not only filed an untimely motion, it cannot substantiate its losses.  It

therefore fails to satisfy the adequacy and typicality prerequisites of Rule 23 and its

motion should be denied.  Finally, the "niche" plaintiff arguments made by Repex, whose

motion is also untimely and who does not seek appointment as lead plaintiff but, rather,

seeks appointment as co-lead plaintiff to represent Herald Fund purchasers, should be

rejected, and its motion, accordingly, should be denied.

### A.     The Repex and Foxton Group Motions Are Untimely

The PSLRA establishes a firm deadline for the filing of motions for appointment

of lead plaintiff, namely "not later than 60 days after the date on which the notice is

published."  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Here, the notice was published on January

12, 2009.  Sixty days thereafter is March 13, 2009.  Motions filed after March 13, 2009 –

including the Repex and Foxton Group motions – are therefore untimely, and should be

denied for that reason alone.

The Stull firm, which filed both the *Repex* and *Leonhardt* actions and issued both

notices to investors, argues that publication of a revised notice was necessary to correct a

typographical error in the dates of the class period and to inform investors that an additional fund had been named as a defendant in the *Leonhardt* complaint. But the Stull firm does not come into this process with clean hands. Indeed, the Stull firm did not even raise the issue of a revised notice and extended deadline in its initial motion for appointment of lead plaintiff in the *Repex* action, even though it had issued the second notice itself on March 5, a mere eight days before filing its lead plaintiff motion. *See generally* Memorandum of Law in Support of the Motion of the Repex Group for Appointment as Lead Plaintiff Pursuant to § 21D(A)(3)(B) of the Securities Exchange Act of 1934 and Approval of Selection of Lead Counsel (Docket Entry No. 20).

Only after the opening briefs had been filed, and it became clear that its client was not the presumptive lead plaintiff, did the Stull firm then argue in its opposition memorandum that the Court should defer ruling on the lead plaintiff motions until after the May 4 date it had inserted in the second notice it issued. Memorandum of Law in Further Support of the Motion of the Repex Group for Appointment as Lead Plaintiff Pursuant to § 21D(A)(3)(B) of the Securities Exchange Act of 1934 and Approval of Selection of Lead Counsel at 2-5 (Docket Entry No. 29). The Foxton Group, following suit, has seized upon the opportunity, cobbling together a group of three dissimilar movants in an effort to claim the largest financial interest in this litigation.

Notably, extension of the statutory deadline through May 4, 2009 has apparently had ***no effect whatsoever*** on the willingness of additional investors to come forward for appointment as lead plaintiff who otherwise would not have. Consider the following:

- Of the four original lead plaintiff movants, <u>every single one</u> purchased shares in the Funds between January 13, 2008 and January 12, 2009 – <u>the portion of the class period the initial notice failed to describe</u>. Investors

who purchased shares during this period thus clearly had notice of their right to apply for appointment as lead plaintiff.

- Of the motions for appointment of lead plaintiff filed on May 4, 2009, only one, the Foxton Group's, was filed on behalf of investors who had not previously applied to serve as lead plaintiff. And of the three members of the Foxton Group, two, Willard Foxton and Neville Seymour Davis, claim purchases during the period included in the initial notice. They were thus on notice of the March 13 deadline, and could have filed then, but failed to do so.

Accordingly, the concern that investors only belatedly learned of their ability to move the court to serve as lead plaintiff, and that, but for the extended deadline, they would not have been able to apply to serve as lead plaintiff, is misplaced. Rather, investors were on notice of their ability to apply to serve as lead plaintiff from the moment the initial notice was published. Thus, there is no logical or coherent reason to extend the statutorily-imposed 60-day deadline because of a mistake in the initial notice by the counsel issuing it, which both they and counsel for the Foxton Group are now attempting to use to their advantage to obtain a leadership role in this case to which they are not entitled. The law is clear: the 60-day lead plaintiff deadline is statutorily mandated and no exceptions are permitted. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

It is for these reasons that, as Dr. Cabilly noted in his previously-filed reply brief, courts generally disfavor republication of notice, even when the revised notice would alter the class period. *See* Reply Memorandum of Dr. Shmuel Cabilly to Opposition to His Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel at 10 n.6 (citing *Cheney v. Cyberguard Corp.*, 211 F.R.D. 478, 498 (S.D. Fla. 2002) ("additional notice is not required where the original complaint is amended to include, in part, an extension of the class period"); *In re Rite Aid Corp. Sec. Litig.*, No. 99 Civ. 1349, 1999 U.S. Dist. LEXIS 19753, at * 4 (E.D. Pa. Dec. 20, 1999)

(filing of complaint similar to previously-filed complaint, but encompassing an earlier class period, did not warrant republication)) (Docket Entry No. 32).  Even in *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898, 2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005), relied on by the Repex Group in its previously-filed opposition brief, the court noted that it would not require that notice be republished merely to extend the class period.  *See Teamsters*, 2005 U.S. Dist. LEXIS at * 6-7 (cited in Memorandum of Law in Further Support of the Motion of the Repex Group for Appointment as Lead Plaintiff Pursuant to § 21D(A)(3)(B) of the Securities Exchange Act of 1934 and Approval of Selection of Lead Counsel at 3-5 (Docket Entry No. 29)).  Similarly, notice need not be republished when an additional defendant is named.  *Greenberg v. Bear Stearns & Co.*, 80 F. Supp. 2d 65, 69 (E.D.N.Y. 2000) (new publication not required where new defendant is added to the complaint).  Accordingly, the competing movants' requests to give effect to publication of a revised notice for this purpose should be denied, and their motions, accordingly, should be denied as untimely.

**B.      The Foxton Group Cannot Substantiate Its Losses and Is Therefore Inadequate and Atypical**

In order to give the Court the information it needs to determine the movant with the "largest financial interest" in the outcome of this litigation, the PSLRA requires each movant seeking the position of lead plaintiff to provide a "sworn certification" which is "personally signed" and sets forth, *inter alia*, "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint."  15 U.S.C. § 78u-4(a)(2)(A)(iv); *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (holding that court must base its initial determination of adequacy on the "presumptive lead plaintiff's … sworn certification").  The certification required by

the PSLRA is a critical component of a lead plaintiff motion. It provides "information from which the district court can evaluate the adequacy of that plaintiff against [its] competitors[.]" *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1320 (N.D. Ala. 2000).

In its motion, the Foxton Group claims losses of "approximately $4,211,441.20 to $4,451,441.20." Foxton Group Mem. at 6. Only $1,331,441.20 of this amount, however, is accounted for by the transactions which the Foxton Group has listed in it sworn certifications. *See* Declaration of Gregory B. Linkh in Support of the Foxton Group's Motion to Consolidate, to Be Appointed Lead Plaintiff and For Approval of Its Selection of Lead and Liaison Counsel ("Linkh Decl.") at Ex. A. To account for the remainder of approximately $3 million, the Foxton Group offers a declaration (the "Foxton Declaration") from Willard Foxton ("Mr. Foxton"), electronically signed on behalf of the estate of his deceased father, Sir William Foxton ("Sir Foxton").[5] *Id.* According to the Foxton Declaration, Sir Foxton committed suicide after learning of Madoff's fraud. The investments he held and the extent of his losses in those investments are apparently known only from hearsay evidence in the form of Sir Foxton's suicide note and remarks he made to his family three years ago. Foxton Decl. at ¶¶ 8-9.

The Foxton Group's evidence of Sir Foxton's transactions is highly speculative and hypothetical, and leaves the Court unable to conclude what Sir Foxton's losses, if any, actually were. Mr. Foxton states that his family learned in 2006 that his father "had invested approximately 1.6 million British pounds" in an unnamed "investment." Foxton Decl. at ¶ 9. Mr. Foxton concludes, through unspecified logic, that this "investment"

---

[5] Sir William Foxton, allegedly, was "a decorated British soldier knighted by the Queen." Foxton Decl. at ¶ 7. Not only is no evidence provided that Mr. Foxton has authority to act on behalf of Sir Foxton's estate, but the certification is not "personally signed" as required by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(2)(A)(iv).

must have been the Herald Fund "investment" to which his father's February 10, 2009

suicide note referred. *Id.* As for when that "investment" was made, Mr. Foxton states

that he "believe[s] Mr. Foxton invested in the funds in approximately late 2004 or early

2005." *Id.* Then, by multiplying Sir Foxton's "investment" by a hypothetical exchange

rate of $1.80 to $1.95 per British pound, Mr. Foxton concludes that he "believe[s] [his]

father's investments … were between approximately $2.88 million U.S. Dollars and

$3.12 million U.S. Dollars." *Id.*

Not only is the Foxton Declaration replete with speculation, but news reports

about Sir Foxton's investments, and prior statements of Mr. Foxton himself, directly

conflict with the Foxton Declaration and undermine the Court's ability to rely on it.

Consider, for example, the following news reports and public statements about the

investments Sir Foxton held, when he invested, and the size of his loss:

- "The former soldier invested in two hedge funds and lost a "six or seven figure sum" according to Willard. He said: … "I do not know how much it was – *there is no definite figure I can put on it*. My guess is that it would have been six-or-seven figure sums *but it would be foolish to assume an accurate amount*."
  -- Stephen Adams, "Army Major Kills Himself Over Bernard Madoff Fraud Debts," *London Telegraph*, Feb. 13, 2009.

- "[Willard] Foxton said he *doesn't yet know how much his father lost*, but thought it could be in the high six figures."
  -- Raphael G. Satter, "Son: UK Veteran Killed Himself After Madoff Loss," *USA Today*, Feb. 13, 2009.

- "… Mr. Foxton built up a body of savings and *in the late 1980s* began investing in two hedge funds – Herald USA Fund and Herald Luxemburg Fund."
  -- Cahal Milmo, "Ex-Soldier Shot Himself After Losing Fortune In Madoff Fraud," *The Independent*, Feb. 14, 2009.

- "Foxton's son Willard told reporters that his father recently discovered that his life's savings, *estimated at more than $1 million*, which he invested in two hedge funds, had then been poured into Madoff's fund."
  -- Mary Jordan, "British family Blames Madoff for Suicide," *Washington Post*, Feb. 15, 2009, at A17.

*See* Declaration of Catherine A. Torell, Exs. A-D (emphasis added). Accordingly, any consensus on how much Sir Foxton lost or when he invested, the very information the PSLRA requires in order for a court to determine the adequacy of a prospective lead plaintiff, and, indeed, whether such a lead plaintiff is even a member of the putative class, is hopelessly fraught with conflicting or incorrect information, and cannot be relied upon.

Ultimately, the Foxton Group has failed to provide "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint," 15 U.S.C. § 78u-4(a)(2)(A)(iv), and thus is in clear violation of the PSLRA. Indeed, the Foxton Group cannot substantiate nearly three-quarters of the losses it claims, and what evidence it does provide is hypothetical, speculative, and contradicted by publicly-available information. The Foxton Group is therefore inadequate to serve as lead plaintiff in this litigation, or, at the very least, is subject to "unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Additionally, the Foxton Group's inability to substantiate Sir Foxton's damages – much less the damages of his estate or Mr. Foxton's authority to recover those damages on his behalf – renders the group atypical. *See, e.g., In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001) (in assessing typicality, "[courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different'" from other class members). The Foxton Group's motion, accordingly, should be denied.

## C.    Repex's Niche Plaintiff Arguments Are Unavailing

Unable to achieve the greatest financial interest in this litigation,[6] and thus the presumption in its favor, Repex resorts to its backup plan: to become a "niche" plaintiff to represent purchasers of the Herald Funds.  According to Repex, competing movants – including Dr. Cabilly – do not have standing to sue on behalf of Herald Fund purchasers. Repex Mem. at 7-10.

Almost uniformly, courts reject attempts by "niche" plaintiffs to wrest control of the litigation from a movant with a larger financial interest in the action.  For example, in *In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003), the court stated that:

> nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case. Indeed, the imposition of any such requirement would be at odds with the purposes of the statute, since in the case of large alleged frauds involving issuers of many classes of securities, the consequence would be either the appointment of a large number of lead plaintiffs (undermining the goal of a cohesive leadership and management group) or the premature breakdown of the action into an unmanageable number of separate cases brought by different lead plaintiffs on behalf of each potential subclass of securities holders.

*Id.* at 204-05.  Similarly, the court in *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 451 (S.D. Tex. 2002), rejected the appointment of separate lead plaintiffs for different subclasses, finding that "requests for splintering the action or appointing multiple Lead Plaintiffs to represent specialized interests, especially in light of the common facts and legal issues here, would undermine the purpose of the PSLRA."
*Accord Greenberg,* 80 F. Supp. 2d at 69-70 (finding that subdividing the class into

---

[6]    Repex claims a loss of only $700,000.  Repex Mem. at 7.

various subclasses was contrary to the language and stated purposes of the PSLRA, including to "minimize costs").

Consequently, it is virtually uncontroverted that a lead plaintiff may represent purchasers of securities different than its own, and it is therefore unnecessary and counterproductive to appoint a "niche" plaintiff over certain classes or types of securities. The Second Circuit has made this clear:

> Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.

*Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).

District courts in the Second Circuit have followed this rationale. *See, e.g., In re Doral Financial Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 401 (S.D.N.Y. 2006) (expressly declining to appoint a "niche" plaintiff to represent purchasers of preferred shares); *Freudenberg v. E*Trade Fin. Corp.*, No. 07 Civ. 8538, 2008 WL 2876373, at *6 (S.D.N.Y. July 16, 2008) ("[Courts] often appoint purchasers of one type of securities [*sic*] to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned."); *In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 991003, at *4 (S.D.N.Y. Apr. 17, 2006) (citing *Hevesi* with approval and refusing to appoint a different lead plaintiff for each of a number of different funds); *Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496 (SWK), 2006 WL 3711566, at *3-4 (S.D.N.Y. Dec. 14, 2006) (rejecting argument that the court appoint as co-lead plaintiffs investors who bought both stock options and common stock); *see also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253-54 (S.D.N.Y.

2003) (holding that "only one Lead Plaintiff is necessary" to represent Exchange Act and Securities Act claims, and that "[i]t is well established that the Lead Plaintiff's claims do not have to be identical to the other class members' claims").

Accordingly, the cases Repex cites in support of its argument that Dr. Cabilly does not have standing to sue on behalf of purchasers of the Herald Funds, *see* Repex Mem. at 7-10, are inapposite, since, even if Dr. Cabilly lacks standing on the Herald Fund claim (which is unlikely, since the Herald Fund is simply another Madoff feeder fund under the auspices of Bank Medici), he is not thereby precluded from serving as sole lead plaintiff for the entire action. Not surprisingly, none of Repex's cases involves the appointment of a lead plaintiff. *See*, *e.g.*, *Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 31 (2d Cir. 2004) (granting motion to dismiss claims of certain shareholders). Indeed, Repex – after *conceding* that courts "often" appoint purchasers of one type of security to represent purchasers of another type of security – points to a single case which it says requires the two different securities to have been sold by the "same issuer." Repex Mem. at 10 (citing *Lifschitz v. Hexion Specialty Chems.*, 08 Civ. 6394, 2009 U.S. Dist. LEXIS 21933, at *4-5 (S.D.N.Y. Mar. 19, 2009)). This Court's decision in *Lifschitz*, however – which actually *rejected* the argument that a court must appoint multiple lead plaintiffs to represent purchasers of different types of securities – did not turn on the question of whether such securities were sold by the "same issuer." On the contrary, the Court's attention was focused on whether "the interests of those purchasers are aligned." *Lifschitz*, 2009 U.S. Dist. LEXIS 21933, at *4-5. Here, where the Herald, Primeo, and Thema Funds are alleged to have engaged in the same pattern of fraudulent conduct, *see Repex* Comp. at ¶¶ 49-50, the interests of

the purchasers of one are clearly aligned with the interests of purchasers of the other

two.[7] Repex's motion, accordingly, should be denied.

## CONCLUSION

For the foregoing reasons, Dr. Cabilly respectfully submits that the motions of

Repex and the Foxton Group must be denied, and that the Court should appoint Dr.

Cabilly as Lead Plaintiff on behalf of the Class.

Dated: New York, New York                     Respectfully submitted,
      May 21, 2009

                                             **COHEN MILSTEIN SELLERS & TOLL PLLC**

                                           By:_____/s/ Catherine A. Torell_____
                                               Catherine A. Torell (CAT-0905)
                                               150 East 52nd Street, 30th Floor
                                               New York, New York 10022
                                               Tel: (212) 838 7797
                                               Fax: (212) 838-7745
   -and-
   Steven J. Toll
   Daniel S. Sommers
   S. Douglas Bunch
   1100 New York Avenue, N.W.
   Suite 500, West Tower
   Washington, D.C. 20005
   Tel:  (202) 408-4600
   Fax:  (202) 408-4699

   ***Proposed Lead Counsel for Movant***

---

[7]     If the Court is nonetheless concerned that the class requires a purchaser of the Herald Fund to pursue that claim, a Herald Fund purchaser like Repex can simply be named as a class representative in the consolidated amended complaint, rather than a lead plaintiff, as other courts have allowed in similar circumstances. *See, e.g., In re Worldcom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283 (S.D.N.Y. 2003).

**Of Counsel:**

Jacob Sabo, Esq.
The Tower
# 3 Daniel Frisch St.
Tel Aviv Israel
Tel:  (972) 36078888
Fax:  (972) 36078889