# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REPEX VENTURES S.A, on Behalf of Itself and All Others Similarly Situated, ) ) ) | Civil Action No. 09-cv-289 (RMB) |
| Plaintiff, ) ) | **CLASS ACTION** |
| v.   ) ) | **ECF CASE** |
| BERNARD L. MADOFF; BANK MEDICI S.A.; SONJA KOHN; PETER SCHEITHAUER; HERALD USA FUND; HERALD LUXEMBURG FUND; BANK AUSTRIA CREDITANSTALT; UNICREDIT S.A.; PRIMEO SELECT FUND; PRIMEO EXECUTIVE FUND; PIONEER ALTERNATIVE INVESTMENTS; THEMA INTERNATIONAL FUND PLC, ERNST & YOUNG S.A., and HSBC SECURITIES SERVICES, S.A., ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants.   ) ) | |

[Additional caption on next page]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
REPEX VENTURES, S.A.'S OPPOSITION TO THE
FOXTON GROUP'S MOTION TO BE APPOINTED LEAD PLAINTIFF**

| | |
|---|---|
| HORST LEONHARDT, on Behalf of Himself and All Others Similarly Situated, | Civil Action No. 09-cv-2032 (RMB) |
| Plaintiff, | **CLASS ACTION** |
| v. | **ECF CASE** |
| BERNARD L. MADOFF, BANK MEDICI S.A., SONJA KOHN, PETER SCHEITHAUER, HERALD USA FUND, HERALD LUXEMBURG FUND, BANK AUSTRIA CREDITANSTALT, UNICREDIT S.A., PRIMEO SELECT FUND, PRIMEO EXECUTIVE FUND, PIONEER ALTERNATIVE INVESTMENTS, THEMA INTERNATIONAL FUND PLC, HELMUTH E. FREY, FRIEDRICH PFEFFER, FRANCO MUGNAI, ALBERTO BENBASSAT, STÉPHANE BENBASSAT, GENEVALOR, BENBASSAT & CIE, DAVID T. SMITH, GERALD J. P. BRADY, DANIEL MORRISSEY, ERNST & YOUNG S.A., ERNST & YOUNG GLOBAL LIMITED, HSBC HOLDINGS PLC, HSBC INSTITUTIONAL TRUST SERVICES (IRELAND) LIMITED, HSBC SECURITIES SERVICES (IRELAND) LIMITED, HSBC SECURITIES SERVICES, S.A., PRICEWATERHOUSECOOPERS, CHARTERED ACCOUNTANTS, PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED; and FRIEHLING & HOROWITZ, | |
| Defendants. | |

[Additional caption on next page]

| | |
|---|---|
| FABIAN PERRONE and CHIA-HUNG KAO, | Civil Action No. 09-cv-2558 (SHS) |
| Plaintiff(s), | **CLASS ACTION** |
| v. | **ECF CASE** |
| ALBERTO BENBASSAT, STÉPHANE BENBASSAT, GERALD J.P. BRADY, NICOLA A. CORSETTI, NIGEL H. FIELDING, HELMUTH E. FREY, JOHN HOLLIWELL, KARL E. KANIAK, SONJA KOHN, ALBERTO LA ROCCA, DANIEL MORRISSEY, FRANCO MUGNAI, DECLAN MURRAY, HERALD C. NOGRASEK, JAMES. E. O'NEILL, FRIEDRICH PFEFFER, URSULA RADELLESZCZYNSKI, HANNES SALETA, PETER SCHEITHAUER, ALFRED SIMON, DAVID T. SMITH, JOHANNES P. SPALEK, WERNER TRIPOLT, MICHAEL WHEATON, BA WORLDWIDE FUND MANAGEMENT, LTD, BANK AUSTRIA CREDITANSTALT, BANK OF BERMUDA (CAYMAN) LIMITED, BANK OF BERMUDA (LUXEMBOURG) S.A., BANK MEDICI AG, ERNST & YOUNG, PRIMEO FUND, HERALD FUND SPC, HSBC HOLDINGS PLC, HSBC INSTITUTIONAL TRUST SERVICES (IRELAND) LTD., HSBC SECURITIES SERVICES (IRELAND) LTD., HSBC SECURITIES SERVICES (LUXEMBURG) S.A., PIONEER ALTERNATIVE INVESTMENT MANAGEMENT LIMITED, PRICEWATERHOUSECOOPERS, THEMA INTERNATIONAL FUND PLC, and UNICREDIT S.A., | |
| Defendant(s). | |

## I. INTRODUCTION

This action has three different securities issuers: Bank Medici, which issued the Herald USA Fund and Herald Luxemburg Funds (collectively, "Herald Funds"); Pioneer Alternative Investments ("Pioneer") which issued the Primeo Select Fund and Primeo Executive Fund (collectively, "Primeo Funds"); and Genevalor, Benbassat & Cie, which promoted the Thema International Fund plc, ("Thema Fund"). Recognizing that three co-lead plaintiffs are needed here to represent purchasers of the three different issuers, the Foxton Group has as its members three individuals who claim they purchased securities from a different issuer.

However, the only member of the Foxton Group who can show he has suffered the most losses caused by an issuer is Neville Seymour Davis ("Davis") who claims to have losses of $1,131,441.20 from his purchases in the Thema Fund. *See* Certification of Proposed Lead Plaintiff Neville Seymour Davis, attached as Exhibit "A" to Declaration of Gregory B. Linkh in Support of the Foxton Group's Motion to Consolidate, To Be Appointed Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel (hereinafter, the "Davis Cert."). Repex Ventures S.A. ("Repex") believes it is appropriate for this Court to appoint Davis as co-lead plaintiff to represent Thema Fund purchasers. As Dr. Cabilly has suffered a $3,665,200 loss as a result of his investment in Primeo, he should be appointed co-lead plaintiff to represent the investors in Pioneer's Primeo Funds. And completing the tri-lead plaintiff structure, Repex, with its $700,000 in losses due to its investment in the Herald Funds, should be appointed co-lead plaintiff to represent the purchasers of Bank Medici's Herald Funds.

1

## II. ARGUMENT

### A. Each of the Three Issuers Requires its Own Lead Plaintiff to Adequately Represent Investors

Each fund family needs a lead plaintiff appointed to represent its securities' purchasers. In determining the appropriate lead plaintiff, the PSLRA provides, in pertinent part: "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that (aa) has either filed the complaint or made a motion [to be designated as lead plaintiff]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008).

Here, because there are three different issuers, no investor in a single fund has standing to satisfy Rule 23's "typicality" requirements when they seek to be appointed lead plaintiff to represent investors in the other two fund families. For example, Primeo Fund purchasers do not have standing to bring claims on behalf of Herald Fund or Thema Fund purchasers because they did not purchase or sell those funds. *Ont. Pub. Serv. Emples. Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 31 (2d Cir. 2004).

In *Nortel* the district court held that the JDS shareholders did not have standing to sue because they did not purchase or sell any Nortel stock. 369 F.3d at 31. The Second Circuit upheld the dismissal, holding that investors do not have standing to sue under Section 10(b) and Rule 10b-5 when the company whose securities they purchased is negatively impacted by the material misstatement of another company, whose securities they do not purchase. 369 F.3d at 34. The same reasoning holds true in the present case. Investors who purchased one of the three

funds do not have standing to sue the other two funds when they did not purchase any of those funds. *Id*; *See also Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 531 (S.D.N.Y. 2008)(plaintiffs lack standing for claims relating to funds that plaintiffs did not own); *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d 233, 236 (S.D.N.Y. 2006)(plaintiffs who only owned shares in Merrill Lynch mutual funds do not have standing to assert claims on behalf of shareholders of other funds).

In the present case, the Primeo Funds were at all relevant times owned by Pioneer Alternative Investments. ¶[1] 22. The Herald Funds were at all relevant times investment funds created and sold by Bank Medici. ¶ 20. The Thema Funds were promoted by Genevalor, Benbassat & Cie. ¶ 32. As the three funds had different issuers -- investors in the different fund families should have different lead plaintiffs appointed to represent their respective interests.

Repex is unaware of *any case* holding that an investor in securities from an issuer can be appointed lead plaintiff to represent purchasers of a different security from a different issuer when they did not purchase any of the securities from that issuer.[2] The Second Circuit in *Nortel* forbid it, and so should every other court. Such a result is absurd. Herald Fund purchasers have no cause of action against any of the issuers of the Pioneer Funds. Nor do they have a cause of action against Thema Fund's issuers. The issuers of these two funds are in no way responsible

---

[1] All paragraph references are to the complaint filed in *Leonhardt v. Madoff*.

[2] While courts often appoint purchasers of one type of securities to represent purchasers of other types of securities of the same issuer where the interests of those purchasers are aligned, (*Lifschitz v. Hexion Specialty Chems.*, 08 Civ. 6394, 2009 U.S. Dist. LEXIS 21933 at * 4-5 (S.D.N.Y. Mar. 19, 2009) (emhpasis added)), here the required "same issuer" does not exist. Instead of having the same issuer, the three different funds each have different issuers, which necessitates investors in the three different fund families each needing their own lead plaintiff. 434 F. Supp. 2d at 236.

for Herald Fund losses. Thus, purchasers of the Thema or the Primeo Funds cannot represent purchasers of the Herald Funds.

### B. Willard Foxton Should Not Be Appointed Lead Plaintiff for the Herald Fund Investors

Willard Foxton does not claim that he personally suffered any losses related to the present action. Instead, he claims that his late father lost between $2.88 million and $3.12 million U.S. Dollars, and that his father's estate has authorised him to sue on the estate's behalf. However, Willard Foxton cannot be appointed lead plaintiff in this action because he presents no admissible evidence that his father suffered any losses and he lacks standing to file a suit on behalf of his father's estate.

#### 1. The Foxton Group Fails to Present Any Admissible Evidence Showing That the Estate of William Foxton Suffered Any Losses

Willard Foxton fails to present any admissible evidence concerning the supposed loss he claims his father suffered. Instead of admissible evidence, he presents hearsay and speculation concerning both the existence of any losses and the amount claimed. Willard Foxton's claim that his father suffered damages is based upon paragraph 9 of the Certification of Proposed Lead Plaintiff Willard Foxton, attached as Exhibit "A" to Declaration of Gregory B. Linkh in Support of the Foxton Group's Motion to Consolidate, To Be Appointed Lead Plaintiff and for Approval of its Selection of Lead and Liaison Counsel (hereinafter, the "Foxton Cert."). Paragraph 9 states:

> It has been extremely hard for my family to find any of my father's documents, and we have no idea where he may have kept them, despite repeated searches of the family home. However, my family did confirm with my father in 2006 that he had invested approximately 1.6 million British Pounds in an investment, which due to my father's email quoted above we came to subsequently learn was invested in the Herald USA Fund and Herald Luxembourg Fund through Bank

4

> Medici's Vienna, Austria office. Moreover, shortly prior to his death, he told me that he was having disagreements with the bank in Austria regarding his investments there. Moreover, I believe he invested in the funds in approximately late 2004 or early 2005, as he was nearing retirement. He retired in November 2008, and shortly thereafter, on December 10, 2008, learned about the Madoff Ponzi scheme and that his entire life savings were lost. During late 2004 and early 2005, the British Pound traded between approximately $1.80 and $1.95 United States Dollars. Thus, I believe that my father's investments in the Herald USA Fund and Herald Luxembourg Fund were between approximately $2.88 million U.S. Dollars and $3.12 million U.S. Dollars.

The email referred to in paragraph 9 above, which according to Willard Foxton is the only evidence he has that his father invested in Herald Funds, states in its entirety:

> Dear Will, I will be brief. I had some in fact all my money in two funds Herald USA Fund and Herald Luxemburg Fund invested in Austria. I have now found out that the office is closed and the money was invested in Hedge funds of Madoff of the Ponzi scheme. I have lost everything. I am now considering whether or not to get myself declared bankrupt. Feeling pretty low and depressed. Thats about it for the moment.

*See* ¶7 of Foxton Cert.

Simply put, the information in paragraphs 7 and 9 of the Foxton Dec. is not admissible and cannot be considered by the Court. For starters, the email in paragraph 7 is hearsay. *See* F.R.E. 801. Furthermore, it does come under any exception to the hearsay rule. *See* F.R.E. 803, 804. Thus, it is inadmissable. *See* F.R.E. 802. As the email is inadmissible hearsay, there is no evidence contained in the Foxton Cert. that this Court can use to determine that William Foxton had any "financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). And as Willard Foxton claims to be standing in the shoes of his father's estate, he cannot show that he has any financial interest in the relief sought by the class either. Because he presents no admissible evidence of losses, Willard Foxton cannot serve as a lead plaintiff.

In addition to failing to show any financial interest in the relief sought, the Foxton Cert. also fails to present any admissible evidence showing the *amount* lost. Willard Foxton states "However, my family did confirm with my father in 2006 that he had invested approximately 1.6 million British Pounds in an [unnamed] investment[.]" *See* ¶ 9 of Foxton Cert. Here, Willard Foxton's testimony is inadmissible because it is not based upon his personal knowledge. *See* F.R.E. 602. Willard Foxton didn't personally confirm that his father made an unnamed investment of "approximately 1.6 million British Pounds[.]" Instead, he claims an unnamed "family" member confirmed this supposed fact. Willard Foxton has no personal knowledge of the amount invested, thus he cannot testify to the issue.

Additionally, the statement by Willard Foxton that his family learned William Foxton made an investment of "approximately 1.6 million British Pounds" is inadmissible because it is hearsay within hearsay. *See* F.R.E. 805. How the "family" came to believe that William Foxton made a 1.6 million Pound investment isn't explained, but if the belief came from a document or statement by William Foxton, then whoever "confirmed" it learned it from hearsay. Making matters worse, as Willard Foxton gained his belief from what he was told by the family member who "confirmed" the information, then the statement from the person who confirmed the information is also hearsay, making the statement in Willard Foxton's Cert. hearsay within hearsay. *See* F.R.E. 805.

Additionally, the statement that "my family did confirm with my father in 2006 that he had invested approximately 1.6 million British Pounds in an [unnamed] investment" is also inadmissible because it lacks foundation. There is no foundation for the statement that the supposed investment was "confirmed." The confirmation process, if any actually occurred, is

6

not explained. While it was based upon hearsay within hearsay as explained above, the entire supposed confirmation process, performed by some unnamed person, is not explained.

Finally, Willard Foxton's testimony concerning the amount his father invested is not to be believed, even if it were somehow admissible. Prior to making his application, Willard Foxton spoke to a reporter from the Associated Press, Raphael G. Satter, for a news article dated February 14, 2009, entitled "William Foxton, British Investor In Madoff Scheme, Kills Himself." *See* Ex.1 to Burke Dec. While Willard Foxton now claims his family confirmed in 2006 that his father invested 1.8 million Pounds, he told something quite different to the Associated Press. Foxton told the Associated Press that, as of February 14, 2009, he didn't yet know how much his father lost, but thought it could be in the high six figures. *Id.*

Clearly, Willard Foxton's statement that he though his father loses "could be in the high six figures" contradicts his present statement that his family confirmed in 2006 that his father invested 1.6 million British Pounds. Thus, his statement that his father lost 1.6 million Pounds is not to be believed, even if it were somehow admissible.

> **C.      Willard Foxton Does Not Have the Authority to Sue on Behalf of the Estate of William Foxton**

Willard Foxton claims "[m]y father's estate has authorized me to pursue a claim on behalf of the Estate of William Foxton (the "Estate") in this case in an attempt to recover the losses suffered by my father in the Herald USA Fund and Herald Luxembourg Fund." *See* Foxton Cert. at ¶ 3. However, under English law, this power resides with the "personal representative" of the estate, not the estate itself. Administration of Estates Act, 1925 2-1, 25 (Eng.) Attached to Burke Decl at Ex.2. Only the personal representative can sue on behalf of an estate. *Id*; *Roberts v Gill & Co and another* [2008] EWCA Civ 803, [2008] All ER (D) 162

7

(Jul), (Approved judgment)(for a beneficiary to sue, instead of a personal representative, there must be "exceptional circumstances, which embrace a failure, excusable or inexcusable, by the trustees in the performance of a duty and by the trustees to the beneficiary to protect the trust estate, or to protect the interests of the beneficiary in the trust estate")(Arden, L.J,). Attached to Burke Decl at Ex. 3. Here, there are no special circumstances. There is no evidence that the personal representative will not file a claim if the present action is successful. More important, there is no evidence that the personal representative has any knowledge that someone is attempting to sue on behalf of the estate in the United States. While Willard Foxton claims he has the estates' permission, he does not claim that he has the personal representative's permission. In fact, he has not even identified the personal representative so he or she can be asked if Willard has permission to serve as lead plaintiff on behalf of the estate. Here, Willard Foxton cannot move on behalf of the estate because he is not legally authorised to do so under English law.

//

//

//

### III. CONCLUSION

This case requires three different co-lead plaintiffs to represent purchasers. This Court should appoint Davis of the Foxton Group as co-lead plaintiff to represent Thema Fund investors, Dr. Cabilly to represent investors in Pioneer's Primeo Funds, and Repex to represent purchasers of Bank Medici's Herald Funds.

Dated: May 21, 2009

Respectfully submitted,

**STULL, STULL & BRODY**

By:     s/ Timothy J. Burke
Timothy J. Burke (Admitted *Pro Hac Vice*)
10940 Wilshire Boulevard, Suite 2300
Los Angeles, CA 90024
Tel: 310-209-2468
Fax: 310-209-2087

**STULL, STULL & BRODY**
Jules Brody (JB-9151)
Patrick K. Slyne (PS-1765)
6 East 45th St.
New York, NY 10017
Tel: 212-687-7230
Fax: 212-490-2022

*Counsel for Movant Repex Ventures, S.A.
and Proposed Lead Counsel For Plaintiffs
and The Class*

# CERTIFICATE OF SERVICE

       I hereby certify, this 21st day of May, 2009, that I caused a true and correct copies of the **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REPEX VENTURES, S.A.'S OPPOSITION TO THE FOXTON GROUP'S MOTION TO BE APPOINTED LEAD PLAINTIFF** to be served via First Class Mail on all parties listed on the attached service list.

Dated  May 21, 2009                        **STULL, STULL & BRODY**

                           By:      <u>s/ Timothy J. Burke</u>
                                   Timothy J. Burke (Admitted *Pro Hac Vice*)
                                   10940 Wilshire Boulevard, Suite 2300
                                   Los Angeles, CA  90024
                                   Tel:    310-209-2468
                                   Fax:   310-209-2087

**SERVICE LIST**

William P. Hammer, Esq.
ERNST & YOUNG LLP
5 Times Square
36th Floor
New York, NY 10036-6530
Tel:    (212) 773-3865
Fax:    (212) 773-3928

Lawrence J. Zweifach, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Tel:             (212) 351-2625
Direct Fax:    (212) 351-6225

William J. O'Brien, Esq.
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
Four Times Square
New York, NY  10036-6522
Tel:    (212) 735-3000
Fax:    (917) 777-4128

Steven J. Toll
Daniel S. Sommers
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel:    (202) 408-4600
Fax:    (202) 408-4699

Catherine A. Torell
COHEN MILSTEIN SELLERS & TOLL PLLC
150 East 52nd Street
30th Floor
New York, NY  10022
Tel:    (212) 838 7797
Fax:    (212) 838-7745

Samuel H. Rudman
David A. Rosenfeld
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS LLP
58 South Service Road
Suite 200
Melville, NY 11747
Tel:    (631) 367-7100
Fax:    (631) 367-1173

Sabrina E. Tirabassi
COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DOUGLAS WILENS
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432-4809
Tel:    (561) 750-3000
Fax:    (561) 750-3364

Frank A. Bottini
JOHNSON BOTTINI, LLP
655 W. Broadway
Suite 1400
San Diego, CA 92101
Tel:    (619) 230-0063
Fax:    (619) 233-5535

Jacob Sabo, Esq.
The Tower
# 3 Daniel Frisch St.
Tel Aviv Israel
Tel:    (972) 36078888
Fax:    (972) 36078889