**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------  x   ECF Case
REPEX VENTURES S.A., on behalf of itself            :
and all others similarly situated,                  :   Case No. 09 Civ. 0289 (RMB)
                                                    :
                        Plaintiff,                  :
                                                    :
        vs.                                         :
                                                    :
BERNARD L. MADOFF; BERNARD L.                       :
MADOFF INVESTMENT SECURITIES;                       :
BANK MEDICI S.A.; SONJA KOHN; PETER                 :
SCHEITHAUER; HERALD USA FUND;                       :
HERALD LUXEMBURG FUND; BANK                         :
AUSTRIA CREDITANSTALT; UNICREDIT                    :
S.A.; PRIMEO SELECT FUNDS; PIONEER                  :
ALTERNATIVE INVESTMENTS; THEMA                      :
INTERNATIONAL FUND PLC; ERNST &                     :
YOUNG LLP, and HSBC HOLDINGS PLC,                   :
                                                    :
                        Defendants.                 :
------------------------------------------------------  x
```

[Caption continued on the next page]

**THE FOXTON GROUP'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO CONSOLIDATE,**
**TO BE APPOINTED LEAD PLAINTIFF, AND**
**FOR APPROVAL OF ITS SELECTION OF COUNSEL**

| | |
|---|---|
| ------------------------------------------------------- x<br>HORST LEONHARDT, on Behalf of Himself<br>and All Others Similarly Situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>BERNARD L. MADOFF, BANK MEDICI S.A., SONJA KOHN, PETER SCHEITHAUER, HERALD USA FUND, HERALD LUXEMBURG FUND, BANK AUSTRIA CREDITANSTALT, UNICREDIT S.A., PRIMEO SELECT FUND, PRIMEO EXECUTIVE FUND, PIONEER ALTERNATIVE INVESTMENTS, THEMA INTERNATIONAL FUND PLC, HELMUTH E. FREY, FRIEDRICH PFEFFER, FRANCO MUGNAI, ALBERTO BENBASSAT, STEPHANE BENBASSAT, GENEVALOR, BENBASSAT & CIE, DAVID T. SMITH, GERALD J.P. BRADY, DANIEL MORRISSEY, ERNST & YOUNG S.A., ERNST & YOUNG GLOBAL LIMITED, HSBC HOLDINGS PLC, HSBC INSTITUTIONAL TRUST SERVICES (IRELAND) LIMITED, HSBC SECURITIES SERVICES (IRELAND) LIMITED, HSBC SECURITIES SERVICES, S.A., PRICEWATERHOUSECOOPERS, CHARTERED ACCOUNTANTS, PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED and FRIEHLING & HOROWITZ,<br><br>                      Defendants.<br>------------------------------------------------------- x | ECF Case<br><br>Case No. 09 Civ. 2032 (RMB) |

**Table of Contents**

I.  INTRODUCTION……………………………………………………………………....1

II. ARGUMENT……………………………………………………………................2

        A.      Mr. Foxton's Certification Can Withstand Any Evidentiary Attacks Because the Certification Provides an Adequate Basis for His Father's Damages………….....2

               (1)      The PSLRA Does Not Require Mr. Foxton to Provide a Certification…...2

               (2)      Mr. Foxton's Certification Sufficiently Demonstrates That His Father Suffered Between $2,880,000 and $3,120,000 in Damages……………....3

                       (a)      The PSLRA Does Not Prescribe the Form of Evidence to Demonstrate Financial Interest…………………………………….4

                       (b)      Mr. Foxton's Certification Is Proper Because the Circumstances Necessitate Submission of Hearsay Statements and Because Discovery Will Reveal Admissible Evidence………………..…….4

               (3)      Mr. Foxton' Electronic Signature Is Valid……………….………………..6

               (4)      Mr. Foxton's Use of Exchange Rates Is Proper…………….…………..6

               (5)      News Articles From February 2009 Cannot Form a Basis to Impeach Mr. Foxton's Sworn Certification………………………………...………7

        B.      Mr. Foxton Has the Authority to Pursue Claims on Behalf of His Father's Estate…………………………………………………………………………...8

        C.      The Foxton Group's Motion Is Timely…………………………………….....9

        D.      The Foxton Group Is the Only Movant Who Can Represent the Divergent Interests of All Class Members……………………………..……..9

III. CONCLUSION…………………………………………………………………..10

## I. INTRODUCTION

The underlying actions arose from extraordinary circumstances: the class members lost billions of dollars when defendants allegedly funneled their investments to Bernard L. Madoff, who for decades had been running the largest Ponzi scheme in history. Perhaps the most publicly-noted victim is the father of a member of lead plaintiff movant The Foxton Group, Willard Foxton. Less than three months before these motions were filed, Mr. Foxton's father – William Foxton, a retired soldier – committed suicide after learning that he lost his life savings as a result of the securities fraud alleged in the underlying actions. This tragedy devastated the Foxton family. Linkh Decl. Ex. A.

Unmoved by this devastation, the competing movants, Shmuel Cabilly and Repex Ventures S.A., argue that Mr. Foxton's certification contains speculative hearsay statements. And Cabilly and Repex urge the Court to deny the Foxton Group's motion based on the grieving family's inability to locate documents in the months following the tragedy.

Contrary to their arguments, however, the certification constitutes sufficient evidence of Mr. Foxton's financial interest in the litigation and nothing in the PSLRA precludes the Court from considering such evidence. Indeed, all lead plaintiff movants have submitted hearsay evidence in support of their motions. And this Court has broad discretion to consider hearsay evidence upon a showing that admissible evidence will be available at trial. Because discovery will produce admissible evidence to confirm the exact amount of the investment that caused Mr. Foxton's father to take his own life, the Court should reject the attempts of Cabilly and Repex to escalate a simple lead plaintiff appointment process into an evidentiary battle.

By arguing that they should be appointed as lead plaintiff despite having much smaller damages than the Foxton Group, Cabilly and Repex ignore the policy behind the Private

1

Securities Litigation Reform Act of 1995 (the "PSLRA") – to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will . . . exercise control over the selection and actions of plaintiffs counsel." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 44 (S.D.N.Y. 1998) (Brieant, J.). Here, the Foxton Group's members – Willard Foxton, Neville S. Davis, and Chia-Hung Kao – are precisely the parties Congress sought to protect, because they have suffered over $4.2 million in damages – at least $500,000 higher than any other movant.

Furthermore, because Messrs. Foxton, Davis, and Kao purchased all underlying funds – the Herald Funds, the Primeo Funds, and the Thema Fund (collectively, the "Medici Funds") – they can adequately represent the divergent interests of all class members. Even if the Court does not appoint the entire Foxton Group as lead plaintiff, at a minimum it should appoint Mr. Davis as a co-lead plaintiff because, as Repex concedes, he is the only movant who can represent purchasers of the Thema Fund.

## II. ARGUMENT

### A. Mr. Foxton's Certification Can Withstand Any Evidentiary Attacks Because the Certification Provides an Adequate Basis for His Father's Damages

#### (1) The PSLRA Does Not Require Mr. Foxton to Provide a Certification

Misstating the law, Cabilly argues that "the PSLRA requires each movant seeking the position of lead plaintiff to provide a 'sworn certification'" setting forth the movant's transactions in the securities implicated in the litigation. Cabilly Opp. Br. at 7 (quoting 15 U.S.C. § 78u-4(a)(2)(A)). Contrary to Cabilly's argument, the statutory language states that the requirement of a "sworn certification" applies only to *plaintiffs*, and not to movants seeking lead plaintiff appointment. 15 U.S.C. § 78u-4(a)(2)(A). Thus, some courts have refused to extend this requirement to movants. *See*, *e.g.*, *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146,

1155 (N.D. Cal. 1999) (Whyte, J.) (finding that Congress intended to "limit[] the certification requirement to those who file complaints"). This District has recognized that the question is "unsettled." *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS), 2007 U.S. Dist. LEXIS 93470, at *34 (S.D.N.Y. Dec. 26, 2007) (Peck, Mag. J.). The Court need not resolve this unsettled question, however, because Mr. Foxton has submitted a certification dated May 2, 2009. Linkh Decl. Ex. A.

### (2) Mr. Foxton's Certification Sufficiently Demonstrates That His Father Suffered Between $2,880,000 and $3,120,000 in Damages

In his certification, Mr. Foxton stated, under penalty of perjury, that his father invested approximately 1.6 million British Pounds in the Herald Funds between late 2004 and early 2005. Linkh Decl. Ex. A. And during that period, the exchange rate ranged between $1.80 and $1.95 for a British Pound. *Id.* Accordingly, Mr. Foxton estimated that his father lost between $2,880,000 and $3,120,000 as a result of the fraud alleged in the underlying actions. *Id.*

Without any authority on point, Cabilly and Repex contend that Mr. Foxton's certification contains hearsay statements and should therefore be disregarded. This contention lacks merit for two reasons. First, the PSLRA does not prescribe the form of evidence lead plaintiff movants may proffer to demonstrate their financial interest in the litigation.[1] Second, in ruling on motions for lead plaintiff appointment, courts have broad discretion to fashion the evidentiary standard and have routinely considered hearsay evidence. Considering hearsay evidence is also appropriate where, as here, with adequate discovery admissible evidence will be available to support Mr. Foxton's statements.

---

[1] Significantly, neither Cabilly nor Repex have submitted any evidence other than their own hearsay declarations in support of their motions for lead plaintiff appointment. Nor have they submitted account statements or any type of admissible evidence to support their alleged losses.

3

### (a) The PSLRA Does Not Prescribe the Form of Evidence to Demonstrate Financial Interest

The PSLRA requires the appointment of the "most adequate" plaintiff as the lead plaintiff in securities class actions. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The "most adequate" plaintiff is presumed to be the one who "has the largest financial interest" in the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA does not specify the type of evidence that is required to demonstrate financial interest, nor "provide a method for determining which [movant] has the largest financial interest." *Vladimir*, 2007 U.S. Dist. LEXIS 93470, at *14. Thus, courts have broad discretion when deciding which movant has the largest financial interest. *See id.* at *15 & n.9 (applying a judicially-developed four-factor test).

### (b) Mr. Foxton's Certification Is Proper Because the Circumstances Necessitate Submission of Hearsay Statements and Because Discovery Will Reveal Admissible Evidence

Declarations are hearsay evidence because they contain out-of-court statements offered to prove the truth of the matter asserted. *See* FED. R. EVID. 801(c). In ruling on PSLRA lead plaintiff motions, however, courts rely almost exclusively on movants' declarations specifying their damages. *E.g.*, *In re Orion Sec. Litig.*, No. 08 Civ. 55368, 2008 U.S. Dist. LEXIS 55368, at **15-16 (S.D.N.Y. July 8, 2008) (Sullivan, J.) (considering declarations). Reliance on hearsay declarations is appropriate because the PSLRA obligates courts to find the movant with the "largest financial interest," not to hunt for the best evidence of financial interest.[2]

Courts have taken a similar approach in an analogous situation. Under Article 16(b) of the Fair Labor Standards Act of 1938 (the "FLSA"), courts have discretion to conditionally certify a class at the pleadings stage, upon a showing that "similarly situated" class members

---

[2] Were hearsay declarations inadmissible, then presumably district courts would need to conduct lengthy evidentiary hearings with live witnesses to decide every lead plaintiff motion.

4

exist. *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) (Batts, J.). But the FLSA does not define the term "similarly situated." *Id.* Accordingly, courts have adopted a test requiring movants to submit affidavits and make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (citing cases). Following this approach, the *Fasanelli* court overruled evidentiary objections based on hearsay and speculation because, at the pre-discovery stage, declarations "necessarily contain unproven allegations." *Id.* at 322.

The same reasoning applies here. District courts almost always rely upon hearsay declarations to decide lead plaintiff motions. Moreover, it is undisputed that Mr. Foxton's father is unavailable to testify. To ascertain the exact amount his father invested in the Herald Funds, Mr. Foxton searched, without success, for his father's documents between February and May 2009. Linkh Decl. Ex. A. Thus, Mr. Foxton had no choice but to submit to the Court a reliable estimate of his father's damages based on his communications with his father and other family members. *See id.* Discovery will no doubt reveal additional evidence showing the exact amount of Mr. Foxton's father's damages. Because the truth of Mr. Foxton's statements will be established by additional admissible evidence obtained from discovery, the Court may properly consider his certification, even if it contains hearsay statements.[3] *Fasanelli*, 516 F. Supp. 2d at 322 (considering hearsay evidence in granting conditional class certification); *see also Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (holding that consideration of hearsay statements is permissible only upon "a showing that admissible evidence will be available at trial").

---

[3] The Court can overrule the objections to Mr. Foxton's certification on this ground and therefore need not determine whether any hearsay exceptions apply to his statements. The Foxton Group does not analyze the hearsay exceptions here, but is prepared to submit further briefing on hearsay exceptions, should the Court so require.

5

### (3) Mr. Foxton' Electronic Signature Is Valid

Relying on the faulty premise that the PSLRA requires Mr. Foxton to "personally sign[]" his certification, Cabilly argues that Mr. Foxton's electronic signature to his certification is invalid. But Cabilly fails to cite any authority for the proposition that the PSLRA prohibits electronic signatures on certifications. Indeed, another court in this District has rejected that proposition. *Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761 (CM) *et al.*, 2007 U.S. Dist. LEXIS 52139, at *27 (S.D.N.Y. June 26, 2007) (Fox, Mag. J.).

In any event, Mr. Foxton did in fact personally sign a certification on May 2, 2009. But his travels prevented him from delivering the personally-signed certification to counsel in time to meet the May 4, 2009 deadline. Chang Decl. ¶ 2. Thus, he authorized the filing of an electronically-signed copy. *Id.* He now submits a copy of his personally-signed certification together with this memorandum of law. Chang Decl. Ex. A. Accordingly, Cabilly's argument not only lacks a legal basis, but is also moot.

### (4) Mr. Foxton's Use of Exchange Rates Is Proper

Cabilly speculates that Mr. Foxton used a "hypothetical exchange rate of $1.80 to $1.95 per British [P]ound" to calculate his father's damages. Cabilly Opp. Br. at 9. But there is nothing "hypothetical" about these exchange rates. Contrary to Cabilly's speculation, the exchange rates Mr. Foxton used are the historical exchange rates. Mr. Foxton stated that his father invested approximately 1.6 million British Pounds in the Herald Funds between late 2004 and early 2005. Between November 1, 2004 and March 1, 2005, the average exchange rates were between $1.80 and $1.95 per British Pound – an exact match to the range Mr. Foxton used. *See* Chang Decl. Ex. B (chart reflecting actual daily average exchange rates between November 1, 2004 and March 1, 2005). Accordingly, the Court should reject Cabilly's argument.

### (5) News Articles From February 2009 Cannot Form a Basis to Impeach Mr. Foxton's Sworn Certification

In a last-ditch effort to muddy Mr. Foxton's credibility, Cabilly and Repex submit news articles published between February 12 and 15, 2009. *Repex*, Dkt. Nos. 46, 48. These articles report that in the wake of his father's death, Mr. Foxton was unsure about the amount of his father's investment in the Herald Funds. For example, in an article published on February 12, 2009, the second day after the tragic suicide, Mr. Foxton reportedly stated that his "guess" would have been that his father lost "six-or-seven figure sums[,] but it would be foolish to assume an accurate amount." *Repex*, Dkt. No. 46 Ex. A. According to Cabilly and Repex, these statements are inconsistent with Mr. Foxton's statement in his May 2, 2009 certification that his father invested approximately 1.6 million British Pounds in the Herald Funds. Thus, Cabilly and Repex argue that Mr. Foxton's certification is unreliable.

Cabilly's and Repex's argument fails for three reasons. First, the February 2009 news articles do not conflict with the statement in Mr. Foxton's May 2, 2009 certification. As the articles indicate, he estimated his father lost a six or seven figure sum, which is fully consistent with the estimated loss contained in Mr. Foxton's certification. *See Repex*, Dkt. No. 46 Exs. A-D. Second, the articles identify investments in the Herald Funds, corroborating the statements in his certification. *See id.* Third, the statements attributed to him in the news articles from February 2009 (made at a time of shock and grief) have not been verified or authenticated and are therefore inadmissible. *See Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 425 (2d Cir. 2008) (noting with approval that the district court did not consider press coverage for the truth of the matter asserted). Mr. Foxton's May 2, 2009 certification has been submitted under penalty of perjury, and was submitted three months after the dates of the alleged news articles. Thus, Mr. Foxton's unsworn statements to the press cannot form a basis to impeach his certification.

7

Furthermore, to the extent that Cabilly argues that these meritless evidentiary issues render the Foxton Group an inadequate class representative, this argument is misplaced because nothing in the record indicates that Messrs. Foxton, Davis, and Kao lost their investments in a different manner than any class members. The Foxton Group's opening and opposition briefs have firmly established that the group members meet the typicality and adequacy requirements under Federal Rule of Civil Procedure 23. Cabilly's and Repex's evidentiary challenges cannot change this conclusion and should be rejected because, as discussed above, they lack any factual and legal basis.

### B. Mr. Foxton Has the Authority to Pursue Claims on Behalf of His Father's Estate

Before signing the May 2, 2009 certification, Mr. Foxton obtained authorization from his mother-in-law, the personal representative of his father's estate, to pursue the claims on the estate's behalf in this litigation. In his certification, Mr. Foxton states that his "father's estate has authorized [him] to pursue a claim on behalf of [the estate] in this case." Linkh Decl. Ex. A.

But Mr. Foxton's reference to "estate" alarmed Repex. Repex argues that because, under English law, the personal representative of the estate, not the estate itself, possesses the estate's claims, Mr. Foxton lacks authority to sue on behalf of his father's estate. Even assuming English law applies, however, Repex's argument fails because Mr. Foxton in fact has authorization from his mother-in-law, the personal representative of his father's estate.[4]

---

[4] Mr. Foxton is prepared to submit further declarations and briefing on this issue, should the Court so require.

### C. The Foxton Group's Motion Is Timely

Cabilly argues that the Foxton Group's motion is untimely. This argument lacks a legal and factual basis. As a matter of fact, the Foxton Group filed its lead plaintiff motion on May 4, 2009, relying in good faith upon the March 5, 2009 class notice, as well as the letter endorsed by this Court in *Repex* stating that the May 4, 2009 deadline for lead plaintiff motions "should not [be] disturbed." *Repex*, Dkt. No. 18 at 1. Moreover, the Foxton Group has no role in creating the confusion of deadlines. In terms of law, Cabilly fails to cite any authority for the proposition that a lead plaintiff motion is time-barred even though the class member filed the motion in compliance with a valid class notice and a court-endorsed deadline. Accordingly, the Court should reject Cabilly's argument.

### D. The Foxton Group Is the Only Movant Who Can Represent the Divergent Interests of All Class Members

As Repex concedes, an appropriate lead plaintiff must be able to claim damages attributable to each Medici Fund. Cabilly and Repex claim damages attributable only to either the Heralds Funds or the Primeo Funds and thus have no standing to pursue claims against numerous defendants whom were implicated solely based on their alleged involvement with the Thema Fund. *See Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, 369 F.3d 27, 34 (2d Cir. 2004) ("Stockholders do not have standing to sue under Section 10(b) and Rule 10b-5 when the company whose stock they purchased is negatively impacted by the material misstatement of another company, whose stock they do not purchase.").

Whether or not the Court engages in a standing analysis under *Nortel*, the inability of Cabilly and Repex to represent all class members is fatal to their motions because many courts have "look[ed] into Rule 23(a)(3)'s *typicality requirement* in determining whether plaintiffs can bring claims for harms committed to funds in which they did not invest." *Hoffman v. UBS-AG*,

591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) (Sand, J.) (emphasis added). The typicality requirement, of course, must be examined at the lead plaintiff stage. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) (requiring that the presumption of lead plaintiff be given only to those who satisfy Federal Rule of Civil Procedure 23). Here, Cabilly and Repex are not typical or adequate lead plaintiffs because they have no standing to pursue claims on behalf of the purchasers of funds in which Cabilly and Repex did not invest. *Hoffman*, 591 F. Supp. 2d at 532.

Arguing the contrary, Cabilly relies on a line of cases in which courts "appoint[ed] purchasers of one type of securities to represent purchasers of other types of securities of *the same issuer* where the interest of those purchasers are aligned." *See Davidson v. E*Trade Fin. Corp.*, Nos. 07 Civ. 10400 *et al.*, 2008 U.S. Dist. LEXIS 61265, at *17 (S.D.N.Y. July 17, 2008) (Sweet, J.). Cabilly's reliance on these case is misplaced because the Medici Funds were managed and sold by different defendants and because the class members' interests are divergent. Accordingly, the Foxton Group is the only movant claiming damages attributable to all Medici Funds and is thus the most adequate lead plaintiff.

## III.   CONCLUSION

Cabilly's and Repex's meritless attacks on Mr. Foxton's credibility and the Foxton Group's motion amount to nothing but red herring. The Court should appoint the Foxton Group Lead Plaintiff in this litigation because the group claims the largest damages and is the only movant who can adequately represent all class members.

In the alternative, should the Court decline to appoint the Foxton Group as Lead Plaintiff, each member of the Foxton Group requests appointment individually as Lead Plaintiff or Co-Lead Plaintiff.

Dated: June 1, 2009	Respectfully submitted,

JOHNSON BOTTINI, LLP

           s/ Albert Y. Chang
———————————————
Francis A. Bottini, Jr.
Albert Y. Chang (AC 5415)
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 233-5535

Brian P. Murray (BM 9954)
Gregory B. Linkh (GL 0477)
275 Madison Avenue, Suite 801
New York, NY 10016-1101
Telephone: (212) 681-1818
Facsimile: (212) 682-1892

*Attorneys for the Foxton Group*

# DECLARATION OF SERVICE

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 1st day of June, 2009, I caused a true and correct copy of the foregoing document to be served on the persons listed below: 1) through this court's ECF system, 2) by e-mail, and/or 3) by mail, postage prepaid:

ERNST & YOUNG GLOBAL LIMITED
Becket House, 1 Lambeth Palace Rd.
London
SE1 7EU, United Kingdom

William P. Hammer, Esq.
ERNST & YOUNG LLP
5 Times Square, 36th Floor
New York, New York 10036-6530

ERNST & YOUNG S.A.
7 Pare d'Activite Syrdall
Munsbach
L5365
Luxembourg

Lawrence J. Zweifach, Esq.
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193

Jules Brody (ssbny@aol.com)
Patrick Kevin Slyne
STULL, STULL & BRODY
6 East 45th Street
New York, NY 10017

Timothy Joseph Burke
(service@ssbla.com)
STULL, STULL & BRODY
10940 Wilshire Blvd., Suite 2300
Los Angeles, CA 90024

Robert S. Schachter (rschachter@zsz.com)
ZWERLING, SCHACHTER &
ZWERLING
41 Madison Avenue
New York, NY 10010

Catherine A. Torell, Esq.
(ctorell@cohenmilstein.com)
COHEN, MILSTEIN, SELLERS & TOLL,
P.L.L.C.
150 East 52nd Street
30th Floor
New York, NY 10022

Steven J. Toll, Esq.
Daniel S. Sommers, Esq.
COHEN, MILSTEIN, SELLERS & TOLL,
P.L.L.C.
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005

Samuel Howard Rudman
(srudman@csgrr.com)
COUGHLIN STOIA GELLER RUDMAN
& ROBBINS, LLP
58 South Service Road
Suite 200
Melville, NY 11747

Jacob Sabo, Esq.
The Tower
# 3 Daniel Frisch St.
Tel Aviv, Israel

GENEVALOR, BENBASSAT & CIE
7, rue Versonnex
CH-1207 Geneva
Switzerland

STEPHANE BENBASSAT
7, rue Versonnex
CH-1207 Geneva
Switzerland

FRIEHLING & HOROWITZ
4 High Tor Rd.
New City, NY 10956

BERNARD L. MADOFF
885 Third Avenue
New York, New York 10022

BANK MEDICI AG
Operngasse 6/4
Vienna, 1010
Austria

PETER SCHEITHAUER
Operngasse 6/4
Vienna, 1010
Austria

HERALD FUND SPC
PO Box 30B
Ufllend Heues
Oranti
Cayman Kri 1104

HERALD LUXEMBURG FUND
Operngasse 6/4
Vienna, 1010
Austria

ALBERTO BENBASSAT
7, rue Versonnex
CH-1207 Geneva
Switzerland

Susan L. Saltzstein
(susan.saltzstein@skadden.com)
William J. O'Brien
(william.obrien@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036-6522
*Attorneys for Defendant Pioneer
Alternative Investment Management
Limited*

BANK MEDICI S.A.
Operngasse 6/4
Vienna, 1010
Austria

SONJA KOHN
Operngasse 6/4
Vienna, 1010
Austria

HERALD FUND SPC
Operngasse 6/4
Vienna, 1010
Austria

HERALD USA FUND
Operngasse 6/4
Vienna, 1010
Austria

WERNER TRIPOLT
Operngasse 6/4
Vienna, 1010
Austria

JOHN HOLLIWELL  
Operngasse 6/4  
Vienna, 1010  
Austria  

BANK AUSTRIA CREDITANSTALT  
1010 Wien, Schottengasse 6-8  
A-1010 Vienna  
Austria  

ALFRED SIMON  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

JOHANNES P. SPALEK  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

JAMES E. O'NEILL  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

DECLAN MURRAY  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

MICHAEL WHEATON  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

PRIMEO EXECUTIVE FUND  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

FRIEDRICH PFEFFER  
WFE-Consulting  
Fuhrenweg 27  
D-31515 Wunstorf  
Germany  

HELMUTH E. FREY  
Operngasse 6/4  
Vienna, 1010  
Austria  

UNICREDIT S.A.  
Piazza Cordusio  
20123 Milan  
Italy  

KARL E. KANIAK  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

NIGEL H. FIELDING  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

ALBERTO LA ROCCA  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

URSULA RADEL-LESZCZYNSKI  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

PRIMEO SELECT FUND  
13 Rue Goethe, B P 413 L-2014  
Luxembourg  

THEMA INTERNATIONAL FUND PLC  
3 George's Dock IFSC  
Dublin 1  
Ireland  

FRANCO MUGNAI  
Via Leone XIII_n.27  
1-20145 Milan  
Italy

DAVID T. SMITH
c/o Equus Asset Management Partners
Bermudiana Arcade
27 Queen Street
Hamilton HM 11
Bermuda

GERALD J. P. BRADY
Birch Hollow
Upper Kilmacud Road
Dundrum
Dublin 14
Ireland

DANIEL MORRISSEY
William Fry Solicitors
Fitzwilton House
Wilton Place
Dublin 2
Ireland

HSBC HOLDINGS PLC
c/o Chris Wilcockson
Managing Director, HSS
40 Avenue Monterey
B.P. 413, L-2014
Luxembourg

HSBC SECURITIES SERVICES, S.A.
c/o Chris Wilcockson
Managing Director, HSS
40 Avenue Monterey
B.P. 413, L-2014
Luxembourg

HSBC SECURITIES SERVICES
(LUXEMBURG) S.A.
40 Avenue Monterey
P.O. Box 413, L-2014
Luxembourg

HSBC INSTITUTIONAL TRUST
SERVICES (IRELAND) LIMITED
c/o Ronnie Griffin
1 Grand Canal Square
Grand Canal Harbour
Dublin 2
Ireland

HSBC SECURITIES SERVICES
(IRELAND) LIMITED
c/o Rosemary Leahy
1 Grand Canal Square
Grand Canal Harbour
Dublin 2
Ireland

PRICE WATERHOUSECOOPERS,
CHARTERED ACCOUNTANTS
One Spencer Dock
North Wall Quay
Dublin 1
Ireland

PRICEWATERHOUSECOOPERS
INTERNATIONAL LIMITED
1 Embankment Place
London
WC2N 6RH
United Kingdom

PIONEER ALTERNATIVE
INVESTMENTS
1 George's Quay Plaza
George's Quay
Dublin 2
Ireland

BA WORLDWIDE FUND
MANAGEMENT, LTD
c/o HWR Services
P.O. Box 71
Road Town
Tortola
B.V.I.

BA WORLDWIDE MANAGEMENT LTD
c/o HWR Services
P.O. Box 71
Road Town
Tortola
B.V.I.

HERALD C. NOGRASEK
c/o HWR Services
P.O. Box 71
Road Town
Tortola
B.V.I.

HANNES SALETA
c/o HWR Services
P.O. Box 71
Road Town
Tortola
B.V.I.

NICOLA A. CORSETTI
c/o HWR Services
P.O. Box 71
Road Town
Tortola
B.V.I.

BANK OF BERMUDA (LUXEMBOURG) S.A.
6 Front St.
Hamilton, HM 11
Bermuda

BANK OF BERMUDA (LUXEMBOURG) S.A.
13 rue Goethe
L-1637
Luxembourg

BANK OF BERMUDA
P.O. Box 513
GT HSBC House
68 West Bay Road
Grand Cayman
Cayman Islands

BANK OF BERMUDA (CAYMAN) LIMITED
P.O. Box 513
GT HSBC House
68 West Bay Road
Grand Cayman
Cayman Islands

PRIMEO FUND
c/o BANK OF BERMUDA (CAYMAN) LIMITED
P.O. Box 513
GT HSBC House
68 West Bay Road
Grand Cayman
Cayman Islands

_____S/_____
Thomas J. Kennedy (TK-9989)