UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10 15 09

------------------------------------------------------------x

REPEX VENTURES, on behalf of itself and all
others similarly situated,

                Plaintiffs,

          - against -                 09 Civ. 289 (RMB) (HBP)

BERNARD L. MADOFF, et al.,

                Defendants.

------------------------------------------------------------x

HORST LEONHARDT, on behalf of himself and
others similarly situated,

                Plaintiffs,

          - against -              09 Civ. 2032 (RMB) (HBP)

BERNARD L. MADOFF, et al.,

                Defendants.

------------------------------------------------------------x

FABIAN PERRONE and CHIA-HUNG KAO, on
behalf of themselves and others similarly situated,

                Plaintiffs,

          - against -              09 Civ. 2558 (RMB) (HBP)

                          **ORDER**

ALBERTO BENBASSAT, et al.,

                Defendants.

------------------------------------------------------------x

## I.    Background

Presently before the Court are three securities fraud actions asserting claims under

Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j(b)

("Exchange Act"), Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and Section

20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against, among others, Bernard L. Madoff

("Madoff"), Bernard L. Madoff Investment Securities ("BMIS"), Bank Medici S.A. ("Medici"),

Sonja Kohn, Peter Scheithauer, Herald USA Fund and Herald Luxemburg Fund (collectively,

"Herald Funds"), Primeo Select Funds ("Primeo Funds"), Thema International Fund plc

("Thema Fund"), Pioneer Alternative Investments ("Pioneer"), Bank Austria Creditanstalt, and

Unicredit S.A. ("Unicredit") (collectively, "Defendants").[1] (Compl., No. 09 Civ. 289, dated Jan.

12, 2009 ("Repex Compl."); Am. Compl., No. 09 Civ. 289, dated Jan. 26, 2009 ("Repex Am.

Compl.), ¶¶ 1–29; Compl., No. 09 Civ. 2032, dated Mar. 5, 2009 ("Leonhardt Compl."), ¶¶ 1–

46; Compl., No. 09 Civ. 2558, dated Mar. 19, 2009 ("Perrone Compl."), ¶¶ 1–67.) The Repex,

Leonhardt, and Perrone Complaints allege, among other things, that the Herald, Primeo, and

Thema Funds, respectively, "each sought funds directly from investors and delivered, or fed[,]

the investments they received to Madoff"; that Madoff and BMIS "had lost most, if not all, of the

investors' money in the largest Ponzi scheme in financial history"; that the managers of each of

the three different funds did not "inform their [respective] investors that they were acting as

feeder funds for Madoff"; and that "as a result of defendants' wrongful conduct, including the

failure to conduct due diligence into the legitimacy of BMIS, the Herald, Primeo, and Thema

Fund[s'] investments in BMIS have been wiped out." (Repex Am. Compl. ¶¶ 3–12; Leonhardt

Compl. ¶¶ 3–13; Perrone Compl. ¶¶ 3–9.)

The named plaintiff in Repex Ventures v. Madoff, et al., No. 09 Civ. 289 (the "Repex

action") purport to have invested in the Herald Funds. (Repex Am. Compl. ¶ 14.) The named

plaintiff in Leonhardt v. Madoff, et al., No. 09 Civ. 2032 (the "Leonhardt action") purport to

have invested in the Primeo Funds. (Leonhardt Compl. ¶ 15.) The named plaintiffs in Perrone,

---

[1]     Plaintiffs Fabian Perrone and Chia-Hung Kao also assert state law claims of negligent misrepresentation, breach of fiduciary duty, violation of New York General Business Law § 349, gross negligence, unjust enrichment, and aiding and abetting breach of fiduciary duty. (Perrone Compl. ¶¶ 124–54.)

et al. v. Benbassat, et al., No. 09 Civ. 2558 (the "Perrone action") purportedly purchased securities in the Thema or Primeo Funds. (Perrone Compl. ¶¶ 15–16.) The named Plaintiffs in each of the three actions purport to bring claims individually and on behalf of all those who purchased investments in the Herald, Primeo and Thema Funds. (Repex Am. Compl. ¶¶ 54, 59; Leonhardt Compl. ¶¶ 75, 80; Perrone Compl. ¶ 1.)

Six motions for consolidation and appointment of lead plaintiff and lead counsel were filed as follows: (i) Dr. Shmuel Cabilly ("Cabilly"), who allegedly "suffered a total loss of more than $3,665,200 from his investment in Primeo [Funds]"; (ii) the Repex Group, composed of Repex Ventures S.A. ("Repex Ventures"), which allegedly suffered a loss of $700,000 in the Herald Funds, and Radovan Fijember, who allegedly suffered a loss of $133,617.85 in the Primeo Funds; (iii) Repex Ventures, after the Repex Group described at (ii) above disbanded; (iv) Nürnberger Versicherung Aktiengesellschaft Österreich ("Nürnberger"), an Austrian insurance company, which allegedly "invested in Primeo [Funds and] incurred a loss of approximately $941,000"; (v) Peter Brandhofer ("Brandhofer"), who purchased shares of the Herald Funds and "suffered estimated losses of $363,313.24"; and (vi) the Foxton Group, composed of William Foxton, Neville Seymour Davis, and Chia-Hung Kao, which allegedly suffered collective losses of "approximately $4,211,441.20 to $4,451,441.20."[2] (See Mem. of Points and Authorities in Supp. of Cabilly's Mot., dated Mar. 13, 2009 ("Cabilly Mot."), at 1–2; Decl. of Catherine A. Torell, dated Mar. 13, 2009 ("Torell Decl."), Ex. B; Mem. of Law in Supp. of Repex Group's Mot., dated Mar. 13, 2009 ("Repex Group Mot."), at 8; Decl. of Timothy J. Burke ("Burke Decl."), Ex. B; Mem. of Law in Supp. of Repex Ventures's Mot., dated May 5, 2009 ("Repex Ventures Mot."), at 1; Repex Ventures's Reply Mem. in Supp. of its Mot., dated

---

[2]     Brandhofer withdrew his motion on or about March 27, 2009. (See Notice of Withdrawal, dated Mar. 27, 2009 ("Brandhofer Withdrawal"), at 2–3.)

June 1, 2009 ("Repex Ventures Reply"), at 1; Mem. of Law in Supp. of Nürnberger's Mot., dated Mar. 13, 2009 ("Nürnberger Mot."), at 3, 8; Decl. of Samuel H. Rudman ("Rudman Decl."), Ex. B; Mem. of Law in Supp. of Brandhofer's Mot., dated Mar. 13, 2009, at 10; Mem. of Law in Supp. of Foxton Group's Mot., dated May 4, 2009 ("Foxton Mot."), at 1–2.)

Six oppositions were filed in response to the motions and five replies were filed in further support of the motions. (See Mem. of Points and Authorities in Further Supp. of Cabilly's Mot. and Opp'n to Competing Mot., dated Mar. 30, 2009; Mem. of Law in Further Supp. of the Mot. of the Repex Group, dated Mar. 30, 2009; Mem. of Law in Further Supp. of Mot. of Nürnberger and Opp'n to Competing Mot., dated Mar. 30, 2009; Reply Mem. of Cabilly to Opp'n to His Mot., dated Apr. 9, 2009; Reply in Further Supp. of Repex Group Mot., dated Apr. 9, 2009; Mem. of Points and Authorities in Supp. of Repex Ventures Opp'n to Foxton Group's Mot., dated May 21, 2009 ("Repex Ventures Opp'n"); Mem. in Further Supp. of Mot., dated May 21, 2009 ("Supplemental Cabilly Mem."); Foxton Group Mem. of Law in Opp'n to Mots. of Cabilly and Repex Ventures, dated May 21, 2009 ("Foxton Opp'n"); Repex Ventures Reply; Foxton Group's Reply Mem. in Further Supp. of its Mot., dated June 1, 2009 ("Foxton Group Reply"); Reply Mem. of Cabilly in Further Supp. of His Mot. and Opp'n to Competing Mot., dated June 1, 2009 ("Second Cabilly Reply").)

Defendants did not file any briefs regarding consolidation or the appointment of lead plaintiff or selection of lead counsel. Oral argument was held on September 29, 2009. (See Transcript of Proceedings, dated September 29, 2009 ("Hr'g Tr."), at 5:24–7:16.)

**For the reasons stated below, the actions are consolidated for pretrial purposes only; Repex Ventures is appointed Lead Plaintiff and Stull, Stull & Brody is appointed Lead Counsel in the Repex action; Dr. Shmuel Cabilly is appointed Lead Plaintiff and Cohen Milstein Sellers & Toll PLLC is appointed Lead Counsel in the Leonhardt action;**

and Neville Seymour Davis is appointed Lead Plaintiff and Murray, Frank & Sailer LLP is appointed as Lead Counsel in the <u>Perrone</u> action.

## II. Legal Standard

### Consolidation

"[C]onsolidation of . . . suits during pretrial stages pursuant to Rule 42 [Fed.] R. Civ. P. may benefit both the court and the parties by expediting pretrial proceedings, avoiding duplication and harassment of parties and witnesses, and minimizing expenditure of time and money by all persons concerned." <u>Garber v. Randell</u>, 477 F.2d 711, 714 (2d Cir. 1973); <u>see also</u> <u>MacAlister v. Guterma</u>, 263 F.2d 65, 69 (2d Cir. 1958); <u>Firemen's Ins. Co. of Newark, N.J. v. Keating</u>, 753 F. Supp. 1137, 1141 (S.D.N.Y. 1990) ("Consolidation of actions in the pretrial stage will, under many circumstances, be a desirable administrative technique and is within the power of the court.") (quoting 9 Wright & Miller, Federal Practice and Procedure § 2382, at 257 (1971)).

### Lead Plaintiff

"Under the PSLRA, the selection of lead plaintiff proceeds in a two-stage inquiry." <u>Constance Sczesny Trust v. KPMG LLP</u>, 223 F.R.D. 319, 322–23 (S.D.N.Y. 2004). First, "this Court must determine which member of the putative class of plaintiffs is entitled to the statutory presumption of being the 'most adequate' lead plaintiff." <u>Id.</u> at 323. "A plaintiff is presumed to be the most adequate plaintiff if it: [i] has either filed the complaint or made a motion in response to the publication of notice; [ii] has the largest financial interest in the relief sought by the class; and [iii] otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." <u>Kaplan v. Gelfond</u>, 240 F.R.D. 88, 92 (S.D.N.Y. 2007); <u>see also</u> 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "[T]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination of lead plaintiff under the PSLRA." <u>Kaplan</u>, 240 F.R.D. at 94

(internal quotations omitted). Second, "other members of the purported class may try to rebut the presumption. . . ." Corwin v. Seizinger, Nos. 07 Civ. 6728, 07 Civ. 7016, 07 Civ. 7476, 2008 WL 123846, at *2 (S.D.N.Y. Jan. 8, 2008).

**Lead Counsel**

"The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v); see Kaplan, 240 F.R.D. at 92; In re Lucent Techs. Inc. Sec. Litig., 221 F. Supp. 2d 472, 488 (D.N.J. 2001).

### III. Analysis

**Standing**

The pending motions raise the issue of standing to sue. (See Repex Ventures Opp'n at 2–3 ("Investors who purchased one of the three funds do not have standing to sue the other two funds when they did not purchase any of those funds.")); see In re Initial Pub. Offering Sec. Litig., 341 F. Supp. 2d 328, 346 (S.D.N.Y. 2004) ("[W]hen the issue of standing is raised by a party, the Court must resolve this issue before considering the class certification requirement of Rule 23."); see also Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp., 369 F.3d 27, 32 (2d Cir. 2004) ("[A]llowing a cause of action for non-purchasers would lead to an unacceptable level of abusive litigation.").

As noted, in the Repex, Leonhardt, and Perrone Complaints, the named plaintiffs each purport to bring an action on behalf of investors in the Primeo, Herald, and Thema Funds. This appears inappropriate because the named plaintiff in the Repex action allegedly purchased shares of the Herald Funds, the named plaintiff in the Leonhardt action allegedly purchased shares of the Primeo Funds, and the (two) named plaintiffs in the Perrone action allegedly purchased shares of the Thema or Primeo Funds. (Repex Am. Compl. ¶¶ 14, 54, 59; Leonhardt Compl. ¶¶ 15, 75, 80; Perrone Compl. ¶¶ 1, 15–16.) "[Named] Plaintiffs in [each of these three actions]

cannot meet the injury requirement for claims relating to funds in which they have not purchased

shares because they cannot claim to be personally injured by the violations relating to those

funds." Hoffman v. UBS-AG, 591 F. Supp. 2d 522, 530–31 (S.D.N.Y. 2008); see also In re

Franklin Mut. Funds Fee Litig., 388 F. Supp. 2d 451, 461 (D.N.J. 2005) ("[S]tanding cannot be

predicated on an injury which the plaintiff has not suffered, nor can it 'be acquired through the

back door of a class action.'") (quoting Allee v. Medrano, 416 U.S. 802, 828–29 (1974)).

Accordingly, "[t]he named Plaintiffs do not have standing to sue on behalf of [the] funds in

which they do not own shares." In re AllianceBernstein Mut. Fund Excessive Fee Litig., No. 04

Civ. 4885, 2005 WL 2677753, at *9 (S.D.N.Y. Oct. 9, 2005); see also Nortel Networks Corp.,

369 F.3d at 31 ("[I]ndividuals who failed to purchase a stock due to a company's

misrepresentation of the value of its stock did not have standing to sue under Rule 10b-5 because

they were not purchasers or sellers of the security.") (citing Blue Chip Stamps v. Manor Drug

Stores, 421 U.S. 723, 754–55 (1975)); In re Flag Telecom Holdings, Ltd. Sec. Litig., 308 F.

Supp. 2d 249, 257 (S.D.N.Y. 2004).

Going forward, the named plaintiff in the Repex action may seek damages on behalf of

itself and other investors in the Herald Funds; the named plaintiff in the Leonhardt action may

seek damages on behalf of himself and other investors in Primeo Funds; and Fabian Perrone, a

named plaintiff in the Perrone action, may seek damages on behalf of himself and other investors

in the Thema Fund.[3] See Nortel Networks Corp., 369 F.3d at 31; Caiola v. Citibank, N.A., N.Y.,

---

[3]    The Court dismisses as duplicative the claims arising from the purchase and/or sale of
shares of the Primeo Funds alleged in the Perrone action. See Becker v. Schenley Indus., Inc.,
557 F.2d 346, 349 (2d Cir. 1977). Although one named plaintiff in the Perrone action may have
purchased Primeo Funds, similar claims are being litigated in the Leonhardt action and "it is in
the interests of the parties and the Court that [the virtually identical, latter-brought claims] should
be dismissed." Buller v. Owner Operator Indep. Driver Risk Retention Group, Inc., 461 F. Supp.
2d 757, 768 (S.D. Ill. 2006); see also Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000);

295 F.3d 312, 322 (2d Cir. 2002) (in actions brought pursuant to Rule 10b-5, "standing is limited to actual purchasers or sellers of securities"); see also In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003).

**(1) Consolidation**

All proposed lead plaintiffs argue, among other things, that "the [above-captioned actions] should be consolidated in the interests of judicial economy." (See Repex Ventures Mot. at 3–4; Cabilly Mot. at 3–4; Foxton Mot. at 3–4; Nürnberger Mot. at 5–6 ("[C]onsolidation is appropriate here, despite the fact that there is not a complete unity of defendants.").)

"If actions before the court involve a common question of law or fact, the court may [i] join for hearing or trial any or all matters at issue in the actions; [ii] consolidate the actions; or [iii] issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "Rule 42(a) also permits consolidation for pretrial purposes." Primavera Familienstiftung v. Askin, 173 F.R.D. 115, 129 (S.D.N.Y. 1997) (citing Katz v. Realty Equities Corp. of N.Y., 521 F.2d 1354, 1359 (2d Cir. 1975)).

The Court agrees with this result (at this stage of the litigation) and consolidates for general pretrial purposes the three above-captioned actions pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure. See Firemen's Ins. Co., 753 F. Supp. at 1141. Coordinating discovery with respect to the allegations common to all three complaints should result in a "substantial saving of judicial resources, . . . just, efficient and economical conduct of the litigations," and "the convenience of the parties or witnesses." Local Rule 15 of the United States District Courts for the Southern and Eastern Districts of New York.

---

Gould v. Berk & Michaels, P.C., No. 89 Civ. 5036, 1990 WL 41706, at *3 (S.D.N.Y. Apr. 5, 1990).

At the same time, the Court declines to consolidate the above-captioned actions for all purposes because, among other reasons, purchasers of each fund must "allege facts 'specific to the security [or fund] in question,' including 'who said what to whom concerning that particular security.'" Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 169 (2d Cir. 2005) (emphasis in original) (citation omitted). While claims arising from losses in the Herald, Primeo, and Thema Funds, respectively, share some factual allegations in common – such as control by Bank Medici and a failure diligently to investigate Madoff and BMIS, (Repex Am. Compl. ¶¶ 3–4; Leonhardt Compl. ¶¶ 2–5, 11, 13; Perrone Compl. ¶¶ 3–9) – and may benefit from coordinated discovery, plaintiffs do not allege that those claims "are based on the same public statements and reports." Werner v. Satterlee, Stephens, Burke & Burke, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992). Indeed, the Complaints quote alleged misstatements in the regulatory filings of the three "feeder funds," each of which "were managed by different defendants and were offered and sold by different issuers through different channels across the world." (Repex Am. Compl. ¶ 9(i); Foxton Group Opp'n at 9.) For example, the plaintiffs in the Perrone action allege that the Thema Fund issued a prospectus stating that it will achieve its objective "through careful selection of investment advisors" and lists as persons and entities liable for the alleged misstatement(s) and omission(s), among others, the Thema Fund, its owner, directors, administrator, custodian, and auditor. (See Perrone Compl. ¶¶ 55–65, 79.) The plaintiff in the Repex action alleges that the Herald Funds' public disclosures allegedly omitted that "100% of the Herald Funds were transferred to Madoff" and lists as persons and entities liable for the alleged misstatement(s) and omission(s), among others, the Herald Funds, their owner, custodian, and auditor. (See Repex Am. Compl. ¶¶ 20, 24, 26.) And, the plaintiff in the Leonhardt action also alleges that certain individuals and entities are responsible for misstatement(s) and omission(s) made in connection with the Primeo Funds but not with any of

the other Funds. (See Leonhardt Compl. ¶¶ 10(h) (citing misrepresentations in the "regulatory filings of the feeder funds"), 17 ("Unicredit . . . provided Medici with access to its subsidiary Pioneer's Prime Funds"), 26 ("Primeo Funds were . . . owned by [Defendant] Pioneer.").) And, while the three Complaints allege that the "Herald, Primeo, and Thema Funds, along with the Fund Managers, ignored many red flags that obligated them, as investment professionals, to conduct further and proper due diligence and/or alter their investment decisions," neither a fund nor its individual managers is necessarily obligated with respect to the purchasers and/or sellers of other funds. (Repex Am. Compl. ¶ 9; Leonhardt Compl. ¶ 10); see also Blue Chip Stamps, 421 U.S. at 754 (rejecting the argument that class members who are "neither 'purchasers' nor 'sellers,' as those terms are defined in the 1934 Act" have standing to sue).

The Repex Group argues, unpersuasively, that the actions should be consolidated into one (presumably for all purposes) and that the "investors in the different fund families should have different lead plaintiffs appointed to represent their respective interests." (Repex Group Mot. at 2.) This overlooks the fact that the purchasers of each Fund may have purchased their shares from different issuers based upon different representations and have claims against different Defendants that are based on different events. (Foxton Opp'n at 12.) It also overlooks the requirement that "[a] securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007) (citation omitted). And, where, as here, a complaint alleges fraud against multiple defendants, it must "state the allegations specifically attributable to each individual defendant." Leemon v. Burns, 175 F. Supp. 2d 551, 556 (S.D.N.Y. 2001); (see also Hr'g Tr at 5:24–7:16.) Accordingly, statements and omissions by different funds and individuals should be tried separately. See Lentell, 396

10

F.3d at 169; (see also Hr'g Tr. at 3:14 (MS. SALTZSTEIN: "I think that from the consolidation point of view certainly a pretrial consolidation and perhaps to be revisited at a later time. We believe that's the most efficient way to proceed."), 5:11–9:15 (MR. TOLL: "[W]e have moved for [Cabilly] to be the lead plaintiff for the whole case." . . . THE COURT: "[G]ive me a case where someone like Dr. Cabilly could represent three different funds where he only purchased stock in one of them. . . ." MR. TOLL: "I am not sure there's another case like this, Your Honor." . . . THE COURT: If anybody else has such a case, I would love to hear it. [Pause] Silence.").)

## (2) Lead Plaintiff

The Court "shall appoint the most adequate plaintiff as lead plaintiff." Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc., 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(ii)); see also Barnet v. Elan Corp., 236 F.R.D. 158, 160 (S.D.N.Y. 2005).

### Repex Action

Repex Ventures is the presumptive lead plaintiff of the Repex action because it is the (only) proposed lead plaintiff that alleges that it purchased shares of the Herald Funds and which, as a member of the Repex Group, timely moved for appointment (on March 13, 2009).[4] See Fishbury, Ltd. v. Connetics Corp., No. 06 Civ. 11496, 2006 WL 3711566, at *3 (S.D.N.Y. Dec. 14, 2006); see also Varghese, 589 F. Supp. 2d at 394.[5] Repex Ventures also satisfies the

---

[4] The Court considers Repex Ventures individually and not as a member of the Repex Group because Radovan Fijember, the other member of the group, no longer moves for appointment as lead plaintiff. (See Repex Ventures Reply at 1 ("[T]he Repex Group disbanded. However, Repex [Ventures] is still seeking to be appointed. . . ."); see also Hr'g Tr. at 18:12–19.)

[5] "[N]otice of pendancy of the action was published over Business Wire on January 12, 2009." (Repex Group Mot. at 3; Burke Decl. Ex. A); see also 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ("[N]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."); Weiss v.

11

requirements of Rule 23 of the Federal Rules of Civil Procedure, 15 U.S.C. § 78u-

4(a)(3)(B)(iii)(I), in that its claims appear typical of purchasers of shares of the Herald Funds and

they "arise from the same course of events and make similar legal arguments to prove the

defendants' liability." In re Gen. Elec. Sec. Litig., No. 09 Civ. 1951, 2009 WL 2259502, at *5

(S.D.N.Y. July 29, 2009) (citations and quotations omitted). And, Repex Ventures "has made

the requisite showing of adequacy of representation," Fishbury, 2006 WL 3711566, at *3,

because, among other reasons, its alleged loss of $700,000 is sufficient to ensure that it will

"vigorously pursue its claims"; Constance Sczesny Trust, 223 F.R.D. at 324, "there is no

evidence" that it has any "interests antagonistic to that of other members of the putative class,"

id.; and it "has retained competent and experienced counsel," Martingano v. Am. Int'l Group,

Inc., Nos. 06 Civ. 1625, 06 Civ. 2014, 2006 WL 1912724, at *5 (E.D.N.Y. July 11, 2006). See

also Ferrari v. Impath, Inc., No. 03 Civ. 5667, 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004)

("At this stage in the litigation, one need only make a 'preliminary showing' that the Rule's

typicality and adequacy requirements have been satisfied.").

The members of the Foxton Group argue that their group should be appointed as lead

plaintiff because, among other reasons, the group "timely moved for appointment . . . , suffered

the largest statutory damages . . . , and will adequately represent the interests of the class."[6]

---

Friedman, Billings, Ramsey Group, Inc., No. 05 Civ. 4617, 2006 WL 197036, at *2 (S.D.N.Y. Jan. 25, 2006).

[6] Cabilly, members of the Repex Group, i.e., Radovan Fijember and Repex Ventures, Nürnberger, Brandhofer, and members of the Foxton Group, i.e., Willard Foxton, Chia-Hung Kao and Neville Seymour Davis, all move for appointment as lead plaintiff in the Repex action. (Cabilly Mot. at 1–2; Repex Group Mot. at 1; Repex Ventures Mot. at 7; Nürnberger Mot. at 3; Brandhofer Mot. at 1; Foxton Group Mot. at 1.) But, for reasons stated supra at note 4 and infra at pages 13–14, the Court considers only members of the Repex and Foxton Groups. It does not consider Brandhofer or Radovan Fijember because they no longer seek to be appointed as lead plaintiffs, nor Cabilly, Nürnberger, Chia-Hung Kao or Neville Seymour Davis because they have not purchased and/or sold shares of the Herald Funds. (Cabilly Mot. at 1–2; Repex Group Mot.

(Foxton Group Mot. at 1.) The Foxton Group allegedly "consists of three victims of Bernard

Madoff's scheme, Willard Foxton, Neville Seymour Davis and Chia-Hung Kao," who "joined

together" for purposes of this litigation. (Foxton Group Mot. at 6; Decl. of Gregory B. Linkh,

dated May 4, 2009 ("Linkh Decl."), Ex. C; Foxton Opp'n at 7.) But "[g]iven . . . that the

[Foxton] Group has no independent existence and its composite members have no prior

relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere

as well as could a single sophisticated entity." In re Razorfish, Inc. Sec. Litig., 143 F.Supp.2d

304, 309 (S.D.N.Y. 2001); see also In re Donnkenny Inc. Sec. Litig., 171 F.R.D. 156, 157–58

(S.D.N.Y. 1997). Accordingly, the Court "will consider each [member of the Foxton Group]

individually, and not as artificially grouped by its attorneys." In re Pfizer Inc. Sec. Litig., 233

F.R.D. 334, 337 (S.D.N.Y. 2005); see also Varghese v. China Shenghuo Pharm. Holdings, Inc.,

589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008) ("While the Court rejects the aggregated . . . Group's

motion as lead plaintiffs, the Court may consider . . . the largest shareholder of the . . . Group,

individually, as if he had moved to be appointed as lead plaintiff alone.") (citations omitted).

Willard Foxton alleges, in very general and conclusory terms, "that [his] father's

investments in the Herald [Funds] were between approximately $2.88 million . . . and $3.12

million," (Foxton Group Mot. Ex. A (Decl. of Willard Foxton) ("Foxton Decl."), ¶ 9), but

Foxton's motion to be appointed lead plaintiff is not timely because it was filed on May 4, 2009.[7]

(See Foxton Group Mot. at 11); see also In re NYSE Specialists Sec. Litig., 240 F.R.D. 128,

---

at 1; Repex Ventures Mot. at 7; Nürnberger Mot. at 3; Foxton Group Mot. at 1; see Hr'g Tr. at
16:20–23; 18:12–14 (**THE COURT: "[W]ith respect to Herald, does anybody disagree that
the competition is between Repex and Willard Foxton? Nobody seems to disagree with that
either.").)**

[7]     Other members of the Foxton Group, i.e., Chia-Hung Kao and Neville Seymour Davis,
are not considered for appointment as Lead Plaintiff in the Repex action because they did not
purchase or sell shares of the Herald Funds. See supra note 6.

143 (S.D.N.Y. 2007); <u>Carson v. Clarent Corp.</u>, No. C 01-03361, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001).[8]

### <u>Leonhardt</u> Action

Dr. Shmuel Cabilly is the presumptive lead plaintiff vis-à-vis the Primeo Funds. <u>See</u> <u>Fishbury</u>, 2006 WL 3711566, at *3. Cabilly timely moved for appointment as lead plaintiff on March 13, 2009, <u>see</u> 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), and has alleged the "largest financial interest in the relief sought by the class," <u>Corwin</u>, 2008 WL 123846, at *3, stating that he "suffered a total loss of more than $3,665,200 from his investments in Primeo [Funds]." (Cabilly Mot. at 10; Supplemental Cabilly Mem. at 6; Nürnberger Mot. at 3; Rudman Decl. Ex. B; Repex Group Mot. at 8; Burke Decl. Ex. B). Cabilly's "claims are typical of the claims of the class as a whole," <u>In re Fuwei Films Sec. Litig.</u>, 247 F.R.D. 432, 437 (S.D.N.Y. 2008); <u>see also</u> <u>Kaplan</u>, 240 F.R.D. at 94 ("The typicality threshold is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise.") (internal quotations and citations omitted); (<u>see also</u> Cabilly Mot. at 8–9.) And, Cabilly "has made the requisite showing of adequacy of representation," <u>Fishbury</u>, 2006 WL 3711566, at *3, because, among other reasons, there is no evidence that he has any "interests antagonistic to that of other members of the putative class"; his alleged loss of $3,665,200 is sufficient to ensure that he will "vigorously pursue [the putative class's] claims"; and his proposed counsel appear "qualified and capable of conducting this litigation on behalf of the putative class." <u>Constance Sczesny Trust</u>, 223 F.R.D.

---

[8]     Willard Foxton alleges that "his father . . . originally possessed the investments at issue" and that he "has been authorized by his father's estate to pursue this claim." (Foxton Group Mot. at 7 n.3.) While Willard Foxton "estimates that [his father's] losses . . . are between $2.88 and $3.12 million," he appears unable to determine the precise amount because he and his family "have no idea where [his father] may have kept [his documents], despite repeated searches of the family home." (Foxton Decl. ¶ 9.)

at 324; see also Kaplan, 240 F.R.D. at 94; Garcia v. Intelligroup, Inc., Nos. 04-4980, 04-5129, 04-5133, 04-5498, 04-5922, 04-5923, 2005 WL 6074922, at *4 (D.N.J. Aug. 10, 2005).

Nürnberger, which allegedly "incurred a loss of approximately $941,000," and Chia-Hung Kao, who suffered alleged losses of $200,000, fail to rebut the presumption that Cabilly is the most adequate plaintiff. (Nürnberger Mot. at 8; Linkh Decl. Ex. A (Decl. of Chia-Hung Kao)); see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., 229 F.R.D. 395, 411 (S.D.N.Y. 2004). Nürnberger, while conceding that it has "the second largest loss in the Primeo [Fund]," argues, among other things, that Cabilly "failed to make the requisite showing that he is able to direct and control this complex action" and that Nürnberger, by contrast, "is a sophisticated institutional investor that is uniquely situated to litigate this action." (Hr'g Tr. at 14:18–21; Nürnberger Opp'n at 3.) Chia-Hung Kao of the Foxton Group alleges that he suffered losses of $200,000 and argues, among other things, that he "is willing to serve as a representative party" and has "selected and retained experienced and competent counsel." (Foxton Group Mot. at 6.)

Once the court "identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements." Id. (citations and quotations omitted). The possibility that "another plaintiff may be 'more typical' or 'more adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status. . . ." Vladimir v. Bioenvision, Inc., No. 07 Civ. 6416, 2007 WL 4526532, at *6 (S.D.N.Y. Dec. 21, 2007) (quoting In re Cavanaugh, 306 F.3d 726, 732 (9th Cir. 2002)).[9]

---

[9] Cabilly, members of the Repex Group, i.e., Radovan Fijember and Repex Ventures, Nürnberger, Brandhofer, and members of the Foxton Group, i.e., Willard Foxton, Chia-Hung Kao and Neville Seymour Davis, all move for appointment as lead plaintiff in the Leonhardt action. (Cabilly Mot. at 1–2; Repex Group Mot. at 1; Repex Ventures Mot. at 7; Nürnberger

And, in any event, "the PSLRA does not limit the presumption of most adequate plaintiff

to institutional investors." Steiner v. Aurora Foods Inc., No. 00 Civ. 602, 2000 WL 33911305, at

*3 (N.D.Cal. June 5, 2000) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). Also, Nürnberger's

claim that an Austrian company is better situated to participate in the litigation than a cancer

researcher who resides in Israel is similarly without merit. (See Hr'g Tr. at 14:17–15:17, 16:9–

12 (MR. TOLL: "I guess the theory is arguably he lives in Israel while their client is from

Austria?" THE COURT: "And that he is busy." MR. TOLL: "I don't think there is any proof

of that."); see also Metro Services Inc. v. Wiggins, 158 F.3d 162, 164 (2d Cir. 1998) (The

presumption of most adequate plaintiff may be rebutted "only upon proof by a member of the

purported plaintiff class that the presumptively most adequate plaintiff" will not, among other

things, "fairly and adequately protect the adequately protect the interests of the class.") (quoting

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

### Perrone Action

Neville Seymour Davis is the presumptive lead plaintiff of the Perrone action because he

allegedly suffered a loss of $1,131,441.20 and is the only proposed lead plaintiff who alleges to

have purchased or sold shares of the Thema Fund.[10] (See Foxton Group Mot. Ex. A (Decl. of

---

Mot. at 3; Brandhofer Mot. at 1; Foxton Group Mot. at 1.) The Court considers members of the Repex and Foxton Groups individually and does not consider Brandhofer or Radovan Fijember because they no longer seek appointment as lead plaintiff. See supra notes 4 and 6 and pages 13–14. And, the Court does not consider Repex Ventures, Willard Foxton or Neville Seymour Davis because they have not purchased and/or sold shares of the Primeo Funds. (See Repex Ventures Reply at 1; Repex Group Mot. at 1; Repex Ventures Mot. at 7; Foxton Group Mot. at 1; see Hr'g Tr. at 18:12–19 (THE COURT: "And then with respect to Primeo, competition is with respect [to] Cabilly, Nürnberger and one representative of the Foxton Group, is that right? Just so I get the universe. . . . So we have the universe.").)

[10] Cabilly, Repex Ventures, and the members of the Foxton Group – Willard Foxton, Chia-Hung Kao and Willard Foxton – move for appointment as lead plaintiff in the Perrone action. The Court only considers the motion of Neville Seymour Davis of the Foxton Group because he is the only proposed plaintiff who purchased and/or sold shares of the Thema Fund. (Cabilly

Neville S. Davis, dated May 3, 2009 ("Davis Decl.")), ¶ 7; see also Repex Ventures Mot. at 1

("the only member of the Foxton Group who can show he has suffered the most losses caused by

an issuer is Neville Seymour Davis")); Fishbury, 2006 WL 3711566, at *3. Since Davis's

motion to serve as lead plaintiff is uncontested and his financial interest has been put forth, the

second requirement, i.e., typicality and adequacy of representation, is deemed to be satisfied as

well. See Jolly Roger Offshore Fund LTD v. BKF Capital Group, Inc., No. 07 Civ. 3923, 2007

WL 2363610, at *3 (S.D.N.Y. Apr. 16, 2007); see also In re Symbol Techs. Inc. Sec. Litig., No.

05 Civ. 3923, 2006 WL 1120619, at *2 (E.D.N.Y. Apr. 26, 2006).

The Court believes that only one lead attorney is necessary for the Perrone action and

appoints Murray, Frank & Sailer LLP, one of the counsel selected by Davis as Lead Counsel.

See 15 U.S.C. § 78u-4(a)(3)(B)(v); see also In re Host Am. Corp. Sec. Litig., 236 F.R.D. 102,

109 (D. Conn. 2006) ("because [firm is local], the need for liaison or local counsel is eliminated,

thus alleviating any potential for duplicative billing and other inefficiencies").[11]

## IV. Conclusion and Order

For the foregoing reasons, the motions for consolidation and appointment of lead plaintiff

and lead counsel [## 15, 19, 23, 38, and 41] are granted in part and denied in part. The above-

captioned actions are consolidated for pretrial purposes only. The actions are consolidated under

the caption "In re Herald, Primeo and Thema Funds Securities Litigation," under File Number 09

Civ. 289 (RMB) (HBP). Repex Ventures is appointed Lead Plaintiff and Stull, Stull and Brody

---

Mot. at 1–2; Repex Ventures Mot. at 1; Foxton Group Mot. at 1; see also Hr'g Tr. 17:2–1; 18:6–
11 (THE COURT: **"[W]ith respect to the Thema Fund, does everybody here agree that
Davis is the only contender and has no competition?" MR. ALBA: "Yes, sir." THE
COURT: "Does anybody disagree with that?"**); see In re Pfizer Inc. Sec. Litig., 233 F.R.D. at
337; Varghese, 589 F. Supp. 2d at 394.

[11]     Davis shall advise the Court of any objection to this counsel appointment by October 12,
2009.

is appointed Lead Counsel of the <u>Repex</u> action; Cabilly is appointed Lead Plaintiff and Cohen Milstein is appointed Lead Counsel of the <u>Leonhardt</u> action; and Davis is appointed Lead Plaintiff and Murray, Frank & Sailer LLP is appointed Lead Counsel of the <u>Perrone</u> action.

Lead Counsel are directed to coordinate their efforts so as to avoid any duplication of effort and/or unnecessary expense. The three Lead Counsel are hereby notified that the Court will not approve any future award of fees and/or expenses that unreasonably reflects duplication or inefficiency. <u>See</u> <u>In re Sprint Corp. Sec. Litig.</u>, 164 F. Supp. 2d 1240, 1244 (D. Kan. 2001); <u>see also</u> 15 U.S.C. § 78u-4(a)(6).

Lead Counsel are directed to appear for a status conference before the Court on November 12, 2009 at 9:30 a.m. in Courtroom 21B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York.

Dated: New York, New York
      October 5, 2009

**RICHARD M. BERMAN, U.S.D.J.**