# **Exhibit 3**



# OPTIMAL
INVESTMENT SERVICES

## Memo

| | |
|---|---|
| **To** | Manuel Echeverría |
| **From** | Karine Courvoisier |
| **Re** | Meetings with Bernard Madoff and lawyers in New York – September 18-19, 2002 – |

## Introduction

The purpose of the meetings was to discuss the actual contractual arrangements between Bernard L. Madoff Investment Securities ("MIS") and Optimal Strategic US Equities Ltd and Optimal Arbitrage Ltd (together the "Funds") as they would appear to be extremely broad and may need to be revised for a number of reasons including:

(a) To reduce the current potential discretion which MIS has in respect to the assets of the Funds;

(b) To reduce any potential exposure of Optimal Investment Management Limited, Optimal Multiadvisors Ltd, the Funds, Optimal Investment Services S.A. and the reputation of the Santander Group generally;

(c) To ensure that in the event that the Funds and related funds are redomiciled to Ireland as funds of Optimal Multiadvisors Ireland Plc, the contractual arrangements between MIS and Optimal Multiadvisors Ireland Plc and the documentation relating thereto would be similar to the documentation for the revised arrangements for Optimal Multiadvisors Ltd (specifically the Funds) with MIS.

## Madoff and his Regulatory Status

MIS is a registered US broker-dealer regulated by the Securities and Exchanges Commission ("SEC") and the National Association of Securities Dealers ("NASD"). The Funds invest their assets with MIS, which operates to a defined investment strategy. He is not paid any kind of advisory, management or performance fee. The brokerage charges appear very small, and we assume he makes his income on these fees or a spread. Madoff insists he does not act as an investment adviser and therefore he/MIS is not a registered investment adviser with the SEC.

One of the more frequently relied upon - and more complex - exclusions from the investment adviser definition is for broker-dealers (Advisers Act § 202 (a)(11)(C)). It excludes from the investment adviser definition any broker-dealer registered as such under the Securities Exchange Act of 1934 (1934 Act), provided that it: (1) gives investment advice "solely incidental" to its brokerage business, *and* (2) receives no "special compensation" for this investment advice. Note that a broker-dealer must satisfy *both* elements to rely on the exclusion.

Optimal Investment Services S.A.
5-7, rue Ami-Lévrier, CP 1824, ch-1211 Geneva 1
Tel (41 22) 909 74 74 . Fax (41 22) 909 62 22

 Santander Central Hispano


# OPTIMAL
INVESTMENT SERVICES

The exception in Section 202 (a)(11)(C) was included in the Advisers Act because broker-dealers routinely give investment advice as part of their brokerage activities, yet are already subject to extensive regulation under the 1934 Act and possibly state law. As a consequence, Congress determined that if a broker-dealer did not give investment advice other than in the ordinary course of its brokerage business (determined by the "solely incidental" and "special compensation" elements), the additional regulation of the Advisers Act was unnecessary.

According to the above described exclusion, Madoff confirms that he/MIS is exempt from registering as investment adviser as its activity is incidental to its broker dealer activity. The focus of the "solely incidental" element is on the nature and amount of the investment advice the broker-dealer provides to clients in its brokerage capacity. While the requirements of this element have not been specifically defined, the SEC has indicated generally that investment advice offered as part of an overall financial plan for the client is not considered "solely incidental" to brokerage, whereas investment advice on individual securities transactions is.

He also confirms that he is not charging any "special compensation" which could be defined as any compensation to a broker-dealer for investment advice *other than* brokerage commissions. He is not receiving any compensation as a result of issuing or promulgating analyses or reports concerning securities.

As a preliminary comment from the lawyers' analysis, MIS is acting according to the law even if its activity as investment adviser being broker-dealer is less strict than if it were to be registered as investment adviser.

## Contractual Agreement with Madoff/MIS

In reviewing the Information Memorandum of Fairfield Sentry Ltd, Madoff explains that it is not correct to say that Fairfield has a "discretionary account" at MIS, as stated under the "Investment Policies" of this document. If this was the case, Madoff/MIS would choose what security to buy (as an investment adviser would do). However, if he only chooses the time when he trades, then he has no "discretion". The only decision/discretion he makes/has is on the timing and the price. In other words, Madoff/MIS only executes the investment strategy that the investment adviser gives him to implement.

Madoff then points out that we are aware of the investment strategy he uses, and which securities he can trade or not. He then says that by mandate he cannot do something different than what we have agreed with him and that it would constitute a breach of the agreement if he were to deviate from his strategy (ie buying/selling other securities than those stated).

The "Trading Authorization Limited to Purchases and Sales of Securities" (the "Trading Authorization") between Madoff/MIS and BPI Multiadvisors Ltd (now Optimal Multiadvisors Ltd) is a standard document he usually has with his customers.

Optimal Investment Services S.A.
5-7, rue Ami-Lèvrier, CP 1824, ch-1211 Geneva 1
Tel (41 22) 909 74 74 . Fax (41 22) 909 62 22

Santander Central Hispano



## OPTIMAL
INVESTMENT SERVICES

The document states the following: "The undersigned hereby authorizes <u>Bernard L. Madoff</u> (whose signature appears below) (*and not Bernard L. Madoff Investment Securities*) as his agent, and attorney in fact to buy, sell and trade in stocks, bonds and any other securities <u>in accordance with your terms and conditions</u> for the undersigned's account and risk and in the undersigned's name, or number on your books (…)".

According to Madoff, "your terms and conditions" mentioned above relates to the investment strategy he uses and that we know for many years. However, as his investment strategy is not in written form, he offered (after we suggested it would be helpful for us to have it) that the fund issues an "additional letter" attached to the Trading Authorization that describes the investment strategy he follows as a broker-dealer with a detailed list of the securities he can buy with ratios/weightings, ie only buying S&P 100, 30-35 largest caps, stocks,… (see attachment A).

This document will give substance to the Trading Authorization and will describe and limit his discretion as to what to buy. The document will give him latitude only for the <u>execution</u> of the strategy on a timely and pricing basis. He then promised to send us a model of such letter he has with Thema International Fund plc and agreed to sign it with the fund.

This document would constitute a great improvement in the contractual relationship we have with Madoff as it would reduce the current potential latitude which Madoff/MIS has in respect to the assets of Optimal SUS and the potential exposure of Optimal Investment Management Ltd, the Funds, Optimal Investment Services S.A. and the reputation of the Santander Central Hispano Group generally.

### Disclosure Issue

Our primary main concern was that Madoff did not permit any customer, including us, to disclose his/MIS's name in the Prospectus, financial statements, both as broker-dealer and as custodian of the assets.

According to the lawyers, under US law, we need to disclose all facts that are material to investors, such as who is making the decision of buying and selling. If it would be offered to US investors, not mentioning this fact would be seen as an omission.

However, as we have now clarified that Madoff only executes the investment strategy he is given, which is detailed in the letter above described - and as we do not have US investors -, we believe that it is not necessary to disclose his name in the fund documentation.

### Custody / Segregation of Assets

As mentioned above, Madoff "manages" the portfolio and controls it at the same time as he/MIS has the custody of the assets. It has to be noted that broker dealers can have custody of assets as opposed to investment advisers.

Optimal Investment Services S.A.
5-7, rue Ami-Lévrier, CP 1824, ch-1211 Geneva 1
Tel (41 22) 909 74 74 . Fax (41 22) 909 62 22

Santander Central Hispano



## OPTIMAL
INVESTMENT SERVICES

Madoff confirmed that there is no margin agreement with the Funds and that the assets of these funds under the control of MIS are segregated and held in the DTC ("Depository Trust Co") in the name of the Funds.

When asked why we could not custody the securities with an external custodian, Madoff replies that logistically it would be impossible for him to ensure errorless delivery. In executing sell orders he would need to have physical control of the assets, and if the assets were somewhere else, there could be delays (as he actively trades) and additional costs.

Another reason for being his own custodian is that he does not want anybody to know when he is in the market and to be able to copy his investment strategy. The fact that people would have this information could jeopardize the strategy.

As mentioned above, Madoff is regulated by the NASD. Under NASD rules, MIS as broker-dealer has to segregate his clients' assets, in a customer account likely to be in the client's name. As a broker-dealer having the custody of assets, MIS has a fiduciary duty. He has a capital obligation, filing obligations and gets examined much more frequently than a registered investment adviser would do. With $400 million in firm capital -which according to our lawyers is extremely high for a broker dealer- Madoff/MIS currently ranks among the top 1% of US Broker-Dealer Securities firms. His financial and regulatory standing is good. Madoff has been chairman of the board of directors of the NASDAQ Stock Market as well as a member of the board of governors of the NASD and a member of numerous NASD committees.

It has to be noted that the custody of Optimal Multiadvisors Ltd (including the Funds) is in the process of being changed to Bermuda Trust (Dublin) Ltd (from the Bank of Bermuda Group). This entity has agreed to appear in the Prospectus as the official custodian of the fund above mentioned. This entity will then delegate its duties to MIS and appoint it as sub-custodian. The new custodian will keep all the exposure/responsibility in case of liquidation of the fund as neither Madoff nor any of the Santander entities will be disclosed in the Prospectus as custodian.

**Suggestions from the lawyers:**

Seward & Kissel (Steve Nadel)

- Check the filings for Madoff by the NASD and the SEC;
- Review the called "Bad Boy Provision";
- Request from Madoff's lawyers a certificate that he/MIS complies with the regulations;

Shearman & Sterling (Paul Schreiber, Richard Metsch)

- Request a legal opinion from Madoff's lawyers confirming that he/MIS is not required to be a registered investment adviser and that he/MIS meets all the requirements set by the law as a broker-dealer;
- Review SPIC insurance coverage;
- Review BD form from NASD;

Optimal Investment Services S.A.
5-7, rue Ami-Lévrier, CP 1824, ch-1211 Geneva 1
Tel (41 22) 909 74 74 . Fax (41 22) 909 62 22

 Santander Central Hispano

# OPTIMAL
INVESTMENT SERVICES

- Review Focus Reports from the SEC;
- Review OTC options status, counterparty risk would be eliminated if option transactions are "crossed" through the exchange.

## KMZ Rosenman (Fred Santo, Jonathan P. Hughes, Howard Schneider)

- Clarify if the Funds are held in a segregated omnibus account and if they are commingled with securities held for others;
- Review a transaction confirmation (ticket) for option transactions regarding the counterparty risk issue (see attachment B).

## **Conclusions**

The following are the principal issues we achieved as a result of our meetings in New York and the work we have done the last months as well as the principal queries for which we require US legal advice:

1. Madoff has sent us a draft of the "Trading Authorization Directive" described above and which will be attached to the Trading Authorization (see attachment A). We need to review it and have it signed by the Funds as soon as possible;

2. We have chosen KMZ Rosenman as the law firm to work with. We will work with them on the following issues:

   1) Legal opinion on the precise regulatory status of MIS/Madoff under US State and federal laws;
   2) Legal opinion on the compatibility of such regulatory status with the existing contractual arrangements between the Funds and MIS;
   3) Clarify the segregation of assets issue;
   4) Legal assistance on some of the lawyers' suggestions mentioned above such as reviewing the BD form from NASD, the Focus Reports from the SEC, the OTC options status and transaction confirmation;
   5) Legal assistance on some general issues such as redrafting the Offering Memorandum of Optimal Multiadvisors Ltd and,
   6) Any future issue related to our new business in New York.

3. We have decided to appoint Bermuda Trust (Dublin) Ltd (Bank of Bermuda Group) as custodian of Optimal Multiadvisors Ltd (the "Company"). Bermuda Trust is already the custodian of Optimal Multiadvisors Ireland plc since its inception. The Company will now have an independent custodian (including for the Funds) and the change will be effective as of 1st of December 2002. The name of the custodian will be disclosed in the Offering Memorandum and Madoff/MIS will be appointed as sub-custodian.

Optimal Investment Services S.A.
5-7, rue Ami-Lévrier, CP 1824, ch-1211 Geneva 1
Tel (41 22) 909 74 74 . Fax (41 22) 909 62 22

Santander Central Hispano