**<u>Exhibit 4</u>**

Dockets.Justia.com

DATED    30  May        , 1996

THEMA INTERNATIONAL FUND plc

- and -

BERMUDA TRUST (DUBLIN) LIMITED

---------------------------------------------------------

CUSTODIAN AGREEMENT

---------------------------------------------------------

Bermuda Trust (Dublin) Limited
Europa House
Harcourt Centre
Harcourt Street
Dublin 2
Ireland

DUB 404UM

THIS AGREEMENT is made this 30 day of May One Thousand Nine Hundred and Ninety-Six

B E T W E E N

THEMA INTERNATIONAL FUND plc a company incorporated in and under the laws of Ireland with registered number 248741 whose registered office is at First Floor, Europa House, Harcourt Centre, Harcourt Street, Dublin 2, Ireland (hereinafter together with any Subsidiary thereof called the "Company") of the one part and

BERMUDA TRUST (DUBLIN) LIMITED a company incorporated in and under the laws of Ireland with registered number 181767 whose registered office is at Europa House, Harcourt Centre, Harcourt Street, Dublin 2, Ireland (hereinafter called the "Custodian") of the other part.

W H E R E A S:-

(A)     The Company is incorporated in Ireland as an umbrella type investment company with variable capital and has been or is about to be authorised by the Central Bank pursuant to the UCITS Regulations.

(B)     The Company has requested the Custodian to provide custodial and other relevant services as set out herein.

(C)     The Investment Manager has been or is about to be appointed by the Company.

(D)     The Custodian has agreed to provide the Company with custodial and other relevant services as set out herein on the terms and conditions hereinafter contained.

NOW IT IS HEREBY AGREED as follows:-

1.      INTERPRETATION

(A)     In this Agreement and in all amendments hereto the following words and expressions shall, where not inconsistent with the context, have the following meanings respectively:-

"Articles", the Memorandum and Articles of Association of the Company for the time being in force.

"Auditor" , Coopers & Lybrand acting as the auditors of the Company or any other entity for the time being appointed as auditors of the Company.

"Central Bank", the Central Bank of Ireland.

"Directors", the board of directors of the Company, including duly authorised committees of the board of directors and where the context so requires, a director of the Company.

"Investment Manager" , Thema Asset Management Limited or such other person as may from time to time be appointed investment manager by the Company.

"Proper Instructions", written, facsimile, tested telex, SWIFT or agreed electronic instructions given by such person or persons as the Company has authorised to give such instructions in respect of any of the matters referred to in this Agreement.

"Securities", listed and unlisted equity and equity related securities including convertible bonds and warrants; shares or units in collective investment schemes; debt securities including government and corporate issues and warrants; uninvested cash and bank deposits (where the context so admits); certificates of deposit; and any other investments permitted by the UCITS Regulations.

"Securities System", a generally recognised book entry system or clearing agency which acts as a securities depository and with whom the Custodian may deposit or maintain securities owned by or held by the Company, pursuant to the provisions hereof.

"Sub-Fund", the fund established in respect of each class of share of the Company from time to time.

"Subsidiary", the meaning assigned to it by S.155 of the Companies Act 1963 as may be amended from time to time.

"UCITS Regulations", European Communities (Undertaking For Collective Investment in Transferable Securities) Regulations, 1989 (SI 78/89) as may be amended from time to time and any conditions imposed thereby which affect the Company.

(B)     Unless the context otherwise requires words and expressions contained in this Agreement shall bear the same meaning as in the Articles PROVIDED THAT any alteration or amendment of the Articles shall not be effective for the purposes of this Agreement unless the Custodian shall have assented thereto.

(C)     Unless the context otherwise requires words importing the singular number shall include the plural and vice versa, words importing masculine gender shall include the feminine and words importing persons shall include firms and companies and vice versa.

(D)     The division of this Agreement into sections, clauses and sub-clauses and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

2.     APPOINTMENT OF CUSTODIAN

The Company HEREBY APPOINTS the Custodian to be and the Custodian HEREBY AGREES to act as custodian of all the Securities in accordance with the Articles, the UCITS Regulations, the terms and conditions of this Agreement and subject to the procedures outlined in Annex 1 hereto as may be amended from time to time upon written notice from the Custodian. The Company agrees to deliver

or procure the delivery to the Custodian all Securities owned by it and all payments of income, payments of principal or capital distributions received by it with respect to the Securities, together with all information required from time to time by the Custodian for the fulfilment of its duties hereunder. Neither the Custodian nor any sub-custodian, agent or delegate appointed hereunder shall be liable in respect of any Securities or unless or until they have been properly delivered to and accepted by them or accepted under their control.

3.    NAMES, TITLES AND SIGNATURES

(A)    Immediately upon execution of this Agreement, the Company shall certify to the Custodian the names and signatures of the persons authorised to sign any Proper Instructions and generally to give instructions under this Agreement to the Custodian and shall deliver or procure the delivery to the Custodian of a certified copy of a resolution of the Directors containing any such authority and a certified copy of the Articles.

(B)    The Company shall promptly certify to the Custodian any changes that may be made from time to time in the persons so authorised. The Custodian shall continue to treat any person or persons as duly authorised in accordance with this clause until such time as the Custodian receives Proper Instructions from the Company that any such person is no longer authorised.

4.    DUTIES OF THE COMPANY

(A)    The Company shall provide the Custodian with any amendments to its Articles.

(B)    The Company shall deliver or procure the delivery at the Custodian's request within five business days (or such other time as is agreed between the parties to this Agreement) of each valuation of the net assets of the Company, a schedule of Securities comprised in the investment portfolio of each Sub-Fund of the Company as at the date of such valuation showing the type and amount of each investment and its value determined in accordance with the provisions of the Articles for the purpose of ascertaining the Subscription and Redemption Prices of each class of share of the Company and its Sub-Funds and giving details of all purchases and sales effected since the date of the last such schedule. All such schedules shall be certified as complete, true and correct by a responsible officer of the Company.

(C)    The Company shall deliver promptly to the Custodian any letters relating to the Company which have been prepared by the Auditor.

(D)    The Company shall so far as it is within its power of procurement furnish to the Custodian all relevant documents and provide all relevant information which may reasonably be required by the Custodian for performing its duties hereunder.

5.    RECEIPT AND DISBURSEMENT OF CASH

(A)    The Custodian shall open and maintain a bank account or bank accounts in its books in respect of each Sub-Fund and if requested by Proper Instructions and subject to applicable laws, a separate bank account or accounts in the name of the Custodian for the benefit of any Sub-Fund outside Ireland with such bank or banks and in such place or places as may from time to time be agreed between it and the Company. The Custodian shall hold in such bank account or bank accounts, subject to the provisions of this Agreement, all cash received by it from or for the account of each such Sub-Fund. The Custodian shall make or procure the making of payments of cash out of such account or accounts of a Sub-Fund only:

(a)    upon the purchase of Securities for the account of the Sub-Fund and, where market practices permit, subject to the delivery of such Securities to or to the order of the Custodian or anyone nominated by the Custodian in accordance with Clause 10 or in proper form for transfer;

(b)    for the repurchase or redemption of the relevant class of shares of the Company pursuant to the Articles;

(c)    for the payment of taxes interest and dividends by any Sub-Fund;

(d)    for the payment by any Sub-Fund of management, custodian, secretarial and registrar and subscription and redemption agents fees or other operating expenses (including, without limitation thereto, fees for legal, accounting and auditing services, directors' remuneration, brokerage and commissions);

(e)    for payments in connection with the conversion, exchange or surrender of Securities owned or subscribed for on behalf of any Sub-Fund held by or to be delivered to the Custodian;

(f)    for the transfer of cash from one bank account as aforesaid to another bank account as aforesaid or for deposit;

(g)    for payments in connection with insuring Securities or in providing for the safekeeping thereof otherwise than in the vault of the Custodian;

(h)    for payments of interest and principal on all borrowing;

(i)    for payments in connection with any margin calls;

(j)    for payments in connection with any stock lending transactions entered into for the account of any Sub-Fund; and

(k)     for any other proper corporate purposes in accordance with the Articles.

Before making any such payment the Custodian shall receive and may rely upon, in the case of a payment permitted under the terms of paragraphs (a) to (j) inclusive of this sub-clause (A) Proper Instructions directing such payment, naming the person or persons to whom such payment is to be made and specifying the amount of, and the time by which, such payment is to be made and such other information as may be appropriate to allow the Custodian to effect the relevant payment in proper form, or, in the case of payment for a purpose permitted under the terms of item (k) of this sub-clause a copy of a resolution of the Directors certified by a Director setting forth the purpose for which such payment is to be made, declaring such purpose to be a proper corporate purpose, naming the person or persons to whom such payment is to be made, stating the amount of and the time by which, such payment is to be made and stating all relevant information as aforesaid.

(B)     The Custodian is hereby authorised to endorse and collect all cheques, drafts or other orders for the payment of money received by the Custodian for the account of each Sub-Fund.

6.     RECEIPT OF SECURITIES

(A)     Except as provided in sub-clause (B) below, the Custodian shall record and hold in a separate account in its books all Securities received by it from time to time in respect of each Sub-Fund and shall arrange for all Securities to be deposited in the Custodian's vault or otherwise held by or to the order of the Custodian as it may think proper for the purpose of providing for the safekeeping thereof. The Custodian shall not be liable for any loss or the acts or omissions or any loss directly or indirectly caused by any bank, where cash is passed to such bank in the normal course of the bank's business and in the case of Securities (excluding cash) is passed as security for borrowings to such bank, pursuant to specific Proper Instructions. Any expenses of whatever nature properly incurred by the Custodian in providing safe custody (other than in the vault of the Custodian) or in the settlement of Securities transactions or the collection of dividends, interest or any other rights attaching to such Securities shall be payable by the Company.

(B)     The Custodian shall upon receipt of Proper Instructions, open accounts with brokers or other intermediaries in its name on behalf of any Sub-Fund or in the name of the relevant Sub-Fund and may make such arrangements concerning the trading authorisations and other forms of authority with respect to such account or accounts as it deems advisable. The Custodian shall not be responsible to the extent permitted by law for the safekeeping of Securities or cash deposited as margin with or remaining in any such account or accounts with brokers or other intermediaries beyond the control of the Custodian

and will not be liable for any loss occasioned by reason of the liquidation, bankruptcy or insolvency of such broker or other intermediary.

(C)     If the Custodian, at the Company's request, appoints a broker or agent to effect any transaction on behalf of any Sub-Fund, the Custodian shall have no liability whatsoever in respect of such broker's or agent's duties or its actions, omissions or solvency.

(D)     The Company shall give the Custodian sufficient notification of its intention to invest in markets in which it has not previously invested so as to enable the Custodian to make arrangements for safekeeping of Securities in such markets.

Where the Custodian is of the opinion that:-

(a)     an acquisition of Securities by the Investment Manager necessarily involves documents of title or documents evidencing title being kept in the custody of a person other than the Custodian or one of its sub-custodians; and

(b)     the Custodian cannot reasonably be expected to accept the responsibility which would otherwise be placed upon him under the Regulations in respect of the safe-keeping of such property;

the Custodian may require the Investment Manager to cancel a transaction or make a corresponding disposal and in order to minimise the necessity for such cancellation or disposal, the Company shall keep the Custodian notified of the markets in which it intends to make investments.

7.     TRANSFER OF SECURITIES AND OTHER FUNCTIONS

(A)     The Custodian shall transfer, exchange or deliver in the required form and manner Securities held by it for the account of a Sub-Fund hereunder only:-

(a)     upon sales of such Securities for the account of that Sub-Fund and, where market practices permit, receipt by the Custodian of payment therefor;

(b)     when such Securities are called, redeemed or retired or otherwise become payable;

(c)     for examination by any broker selling any such Securities in accordance with "street delivery" custom;

(d)     in exchange for or upon conversion into other Securities alone or other Securities and cash pursuant to any plan or merger, consolidation, reorganisation, recapitalisation or readjustment or otherwise;

(e)     upon conversion of such Securities pursuant to their terms into other Securities;

(f)     upon exercise of subscription, purchase or other similar rights represented by such Securities;

(g)     for the purpose of exchanging interim receipts or temporary Securities for definitive Securities;

(h)     for the purpose of repurchasing or redeeming in kind shares of that Sub-Fund;

(i)     for collecting all income and other payments with respect to Securities;

(j)     in connection with stock lending transactions entered into for the account of that Sub-Fund; and

(k)     for any other proper corporate purposes in accordance with the Articles.

Except as provided in Clause 9, before making any such transfer, exchange or delivery the Custodian shall receive and may rely upon in the case of a matter permitted under the terms of paragraphs (a) to (j) inclusive of this sub-clause (A) Proper Instructions directing such transfer, exchange or delivery, indicating the Securities in question, stating all relevant information to allow the Custodian to effect in the proper form and manner, as the case may be, such transfer, exchange or delivery or, in the case of a transfer, exchange or delivery permitted under the terms of paragraph (k) of this sub-clause a copy of a resolution of the Directors certified by a Director specifying the Securities in question, setting forth the purpose for which such transfer, exchange or delivery is to be made, declaring such purposes to be proper corporate purposes, naming the person or persons to whom transfer, exchange or delivery of such Securities shall be made and stating all relevant information as aforesaid.

(B)     Upon receipt of Proper Instructions, the Custodian shall:

(1)     receive and retain confirmations or other documents evidencing the purchase or writing of an option by any Sub-Fund;

(2)     deposit and maintain in a segregated account, either physically or by book-entry, Securities or other assets in connection with options transactions entered into by any Sub-Fund; and

(3)     pay, release and/or transfer such Securities or other assets held on account of a Sub-Fund only in accordance with a notice or other communication evidencing the expiration, termination or exercise of any such option furnished by the Securities or

options exchange on which such option is traded or such other organisation, party, broker or dealer as may be responsible for handling such options transactions.

(C)     Upon receipt of Proper Instructions, the Custodian shall:

    (1)     receive and retain confirmations evidencing the purchase or sale of a futures contract or an option on a futures contract by any Sub-Fund;

    (2)     deposit and maintain in a segregated account for the benefit of any futures commission merchant or pay to such futures commission merchant Securities or cash designated by any Sub-Fund as initial, maintenance or variation "margin" deposits intended to secure the performance by such Sub-Fund of its obligations under any futures contracts purchased or sold or any options on futures contracts written or purchased by such Sub-Fund, in accordance with the provisions of any agreement or agreements between the Company in respect of such Sub-Fund, the Custodian and such futures commission merchant designed to comply with the rules of any relevant regulatory body and/or any contract market, or any similar organisation or organisations, regarding such margin deposits; and

    (3)     pay, release and/or transfer Securities, cash or other assets into or out of such margin accounts only in accordance with any such agreements or rules.

(D)     Upon receipt of Proper Instructions, the Custodian shall deliver Securities of any Sub-Fund to lenders or their agents, or otherwise establish a segregated account as agreed to by the Company and the Custodian, in respect of a Sub-Fund, as collateral for borrowings effected by the Company on behalf of such Sub-Fund, but only against receipt of the amounts borrowed, provided always that the value of the Securities so delivered is the minimum amount required to secure or to continue the borrowings as appropriate.

(E)     Upon receipt of Proper Instructions, the Custodian shall enter into foreign exchange contracts or options to purchase and sell foreign currencies for spot and future delivery on behalf and for the account of any Sub-Fund with such currency brokers or financial institutions as may be specified pursuant to Proper Instructions. The Custodian shall be responsible for the transmission of cash and instructions to and from the currency broker or financial institution with which the contract or option is made, the safekeeping of all certificates and other documents and agreements evidencing or relating to such foreign exchange transactions and the maintenance of proper records with respect thereto.

(F)     Upon receipt of Proper Instructions, the Custodian shall establish and maintain on its books a segregated account or accounts for and on behalf of any Sub-Fund, into which account or accounts may be transferred Securities or other assets of any such Sub-Fund, including Securities maintained by the Custodian in a book-entry system or foreign depository.

(G)     Where the Custodian is for the time being subject to UCITS Regulations rights and obligations of the Custodian under the provisions of this Agreement shall be read and construed as subject to the UCITS Regulations.

8.     REGULATORY REQUIREMENTS

The Custodian shall:-

(a)     enquire into the conduct of the Company, in each annual accounting period and report thereon to the shareholders of the Company. The report of the Custodian shall be delivered to the Company in good time in order to enable it to include a copy of such report in the annual report to the shareholders. Such report should state whether in the opinion of the Custodian the Company has been managed in that period:

   (i)     in accordance with the limitations imposed on the investment and borrowing powers of the Company in the UCITS Regulations and the Articles; or

   (ii)    otherwise in accordance with the provisions of the UCITS Regulations and the Articles; and

   (iii)   if it has not been so managed in the terms set out in (i) and (ii) above, in what respect it has not been so managed and the steps which the Custodian has taken to rectify the situation in respect thereof.

(b)     ensure that the sale, issue, repurchase, redemption and cancellation of shares of any class effected by or on behalf of the Company are carried out in accordance with the UCITS Regulations and the Articles.

(c)     ensure that the value of the shares of each class of the Company is calculated in accordance with the UCITS Regulations and the Articles;

(d)     ensure, in connection with clause 7(A)(a) above, that such payment is received for the account of the Company within customary time limits in accordance with market practice in the context of a particular transaction.

(e)      ensure, in connection with clause 7(A)(i) above, that all such income shall be applied in accordance with the provisions of the Articles and the UCITS Regulations.

The Custodian shall not delegate any of these duties under this Clause 8.

9.      <u>ACTS OF CUSTODIAN WITHOUT INSTRUCTIONS</u>

Unless and until the Custodian receives Proper Instructions to the contrary, the Custodian shall:-

(a)      present for payment all Securities which are called, redeemed, retired or otherwise become payable and all coupons and other income items held by it for the account of any Sub-Fund which call for payment upon presentation;

(b)      hold for the account of each Sub-Fund hereunder all stock dividends, rights and similar securities issued with respect to any Securities held by it hereunder; and

(c)      exchange interim receipts or temporary securities for definitive securities.

10.      <u>REGISTRATION OF SECURITIES</u>

(A)      The Custodian shall register all Securities in respect of which registration shall be necessary in order to perfect the transfer thereof or title thereto as soon as practicable after receipt of the necessary documents by the Custodian, in the name of the Custodian or its nominee. The Custodian shall hold the Securities of each Sub-Fund:

(1)      by physical possession of the certificates or other instruments representing such Securities in registered or bearer form, or the broker's receipts or confirmations for futures contracts, options and similar investments; or

(2)      in dematerialised book entry form with a Securities System on such terms as any Securities System customarily operates and subject to the rules of such systems, provided always that subject to Clause 16(E) the Custodian shall not be liable for any loss directly or indirectly caused by the failure of such Securities System to effect a settlement howsoever such failure occurs and the Custodian shall have no responsibility for the selection or retention of any Securities Systems or for the performance of any Securities Systems.

The Custodian shall identify Securities held by it hereunder as being held for the account of the relevant Sub-Fund and shall require each agent, sub-custodian and delegate (referred to in Clause

16(B)) to identify Securities held by such agent, sub-custodian and delegate as being held by it, as custodian or fiduciary, for the account of the Custodian. Any expenses of whatever nature incurred by the Custodian in effecting such registration shall be payable by the Company.

(B)     The Company shall from time to time furnish to the Custodian appropriate instruments to enable the Custodian to hold or deliver in proper form for transfer or to register as provided in sub-clause (A) of this Clause any Securities belonging to any Sub-Fund of the Company.

(C)     The Custodian shall keep or cause to be kept such books, records and statements as may be necessary to give a complete record of all Securities held and transactions carried out by it on behalf of each Sub-Fund and shall permit the Company and its duly authorised agent(s) or delegate(s) to inspect such books, records and statements at any time during normal business hours on giving reasonable notice to the Custodian.

(D)     The Company authorises the Custodian or any delegate, agent or sub-custodian to hold Securities in fungible accounts and shall accept delivery of Securities of the same class and denomination as those deposited with the Custodian or any sub-custodian.

11.     VOTING AND OTHER ACTION

(A)     The Custodian shall deliver or cause to be delivered to the Company copies of all notices, proxies and proxy-soliciting materials received by it or its nominee or agent appointed hereunder in relation to any of the Securities held by any of them for the account of a Sub-Fund. The Custodian shall not and shall procure that no nominee of the Custodian shall, vote in respect of any of the Securities held by any of them for the account of a Sub-Fund, except in accordance with Proper Instructions. The Custodian shall promptly deliver, or cause to be delivered, to the Company all other documents and payments received by it or its nominee or agent affecting or relating to the Securities held by it or its nominee or agent.

(B)     The Company shall not exercise the Company's power to borrow without notice to the Custodian.

(C)     The Company shall not and shall procure that the Investment Manager shall not on behalf of any Sub-Fund enter into underwriting or sub-underwriting contracts in relation to the subscription or purchase of Securities without the prior notification of the Custodian and all commissions and fees payable under such contracts and all Securities acquired thereby shall form part of the assets of the Company.

(D)     The Custodian shall take no action with regard to any subscription and other rights issued with respect to Securities held by the Custodian PROVIDED that the Custodian shall notify as soon as is reasonably practicable the Company of such subscription or other rights and will act upon Proper Instructions received within a reasonable time prior to the expiration of such rights.

## 12.     TAXES

(A)     The Company shall pay or reimburse the Custodian from time to time on demand for any transfer taxes payable upon transfers, exchanges or deliveries of Securities made hereunder.

(B)     The Custodian shall execute such ownership and other certificates and affidavits as may be requested by Proper Instructions from time to time for fiscal, tax and other purposes in connection with Securities held by it under this Agreement and shall make such applications and reports as may be requested by Proper Instructions from time to time to the competent Irish and other authorities in order to apply for or secure any tax or other privileges and benefits to which the Company is or may be entitled in connection with such Securities.

(C)     The Company shall provide to the Custodian such documentation and information as the Custodian may require in connection with taxation and the Company hereby warrants that such information when given shall be true and correct in every respect, not misleading in any way, and contain all material information. The Company undertakes to notify the Custodian immediately if any information requires updating or correcting. The Company confirms that the Custodian is authorised to deduct from any cash received or credited to the Company's account, any amount of taxes or levies required by any revenue or governmental authority for whatever reason in respect of the Custodian's accounts.

## 13.     BANKING FACILITIES

(A)     During the continuance of its appointment, the Custodian shall provide banking facilities for each Sub-Fund and where any cash at the request of the Investment Manager is placed on deposit with the Custodian in the latter's capacity as a banker, interest shall be allowed thereon for the account of the relevant Sub-Fund in accordance with normal banking practice and as previously agreed with the Investment Manager, but subject thereto the Custodian shall be no further liability to pay interest on any cash.

(B)     In the event that the Company shall make, on behalf of any Sub-Fund, any arrangements for borrowing or overdraft facilities with the Custodian or any affiliated company of the Custodian, such

company shall be entitled to retain for its own use and benefit all profits and advantages which may be derived therefrom.

(C)   In the event that the Company incurs an unauthorised overdraft with the Custodian or if, as a result of settlement delays, electronic payment failures or other similar circumstances, a credit facility is made available to the Company without completion of the customary credit documents, the Custodian shall have a lien over sufficient assets of the Company (but only in relation to the amount outstanding under such unauthorised overdraft or credit facility) held in any account whatsoever by or to the order of the Custodian and the Custodian shall be entitled to set-off any and all claims it has on the Company against any counterclaim of the Company on the Custodian.

## 14.   DEALING BY CUSTODIAN

(A)   Nothing herein contained shall prevent the Custodian from becoming the owner of shares of any class in the Company and holding, disposing or otherwise dealing with the same rights which it would have had if the Custodian were not a party to this Agreement; and the Custodian may buy, hold and deal in any Securities upon its individual account or for the accounts of its own customers notwithstanding that such Securities or similar Securities may be held by or for the account of a Sub-Fund of the Company.

(B)   The Company hereby authorises the Custodian to act hereunder notwithstanding that the Custodian or any of its divisions, branches or affiliates may have a material interest in the transaction or that the circumstances are such that the Custodian may have a potential conflict of duty or interest including the fact that the Custodian or any of its divisions, branches, or affiliates may:-

(a)   act as a market maker in the Securities to which the Proper Instructions relate;

(b)   provide broking services to other customers;

(c)   act as financial adviser to the issuer of such Securities;

(d)   act in the same transaction as agent for more than one customer;

(e)   have a material interest in the issue of the Securities; or

(f)   earn profits from any of the activities listed above.

PROVIDED THAT:

    the Custodian shall not enter into any transaction unless such transaction is carried out as if effected on normal commercial terms negotiated at arms' length;

(i)     a person approved by the Custodian as independent and competent certifies that the price at which the transaction is effected is fair, or

(ii)    the execution of the transaction is on best terms on organised investment exchanges under their rules; or

(iii)   where the conditions set out in (i) and (ii) are not practical the transaction is executed on terms which the Custodian is satisfied conform with the principle set out in this proviso.

The Custodian shall be obliged to act on Proper Instructions notwithstanding that the Custodian or any of its divisions, branches or affiliates may be in possession of information showing or tending to show that the Proper Instructions may not be in the best interests of the Company and the Custodian shall not be under any duty to disclose any such information to the Company.

15.    REMUNERATION OF THE CUSTODIAN

(A)    The Custodian shall be paid by way of remuneration for its services pursuant to this Agreement fees, together with any value added tax applicable to such fees, at such rates and at such times as may be agreed from time to time between the Company and the Custodian.  Such fees shall be paid in Ireland in United States Dollars.

(B)    The Company shall reimburse the Custodian in addition to the fees referred to in sub-clause (A) of this Clause for all out-of-pocket expenses properly incurred by the Custodian in carrying out its duties hereunder.

(C)    The Custodian is authorised to deduct its remuneration, expenses and disbursements on account of the Company from any one or more of the Company's accounts.  The Company shall maintain or make available sufficient cleared funds in an account with the Custodian in order to cover the Custodian's fees, expenses and disbursements as aforesaid and to enable the Custodian to fulfil its duties under this Agreement.

(D)    If at any time the Company shall not have honoured any or all obligations to the Custodian for any unpaid sum due to the Custodian for or in connection with services rendered pursuant to this

Agreement when those services have been previously authorised by Proper Instructions from the Company, the Custodian shall have the right without notice to the Company to retain or set off against such obligations of the Company, any Securities or cash which the Custodian may hold directly or indirectly for the account of the Company, in any currency, including time deposits and all Securities held hereunder. The rights set out in this paragraph shall be in addition to and without prejudice to any rights existing at common law, in equity, by statute or by custom.

16.  CONCERNING THE CUSTODIAN

(A)    The Custodian shall not be required to take any legal action unless fully indemnified to its reasonable satisfaction for costs and liabilities by the Company. If the Company requires the Custodian as custodian to take any action which in the opinion of the Custodian might make the Custodian liable for the payment of money or liable in any other way the Custodian shall be kept indemnified against such payments and liabilities by the Company in any reasonable form as a pre-requisite to taking such action.

(B)    In performing its duties hereunder the Custodian may appoint such agents, sub-custodians and delegates as it might think fit to perform in whole or in part any of its duties and discretions (including in such appointment powers of sub-delegation) provided that the Custodian shall not delegate any of its duties referred to in Clause 8.    Notice of any such appointment shall promptly be given by the Custodian to the Company. The fees and other remuneration of any agent, sub-custodian or delegate appointed by the Custodian pursuant hereto shall be paid by the Company.

(C)    The Custodian shall deliver to the Company from time to time at such reasonable intervals as the Company may require a full account of all receipts and payments made and other action taken by the Custodian pursuant to this Agreement since the date of the last preceding such account together with a list as at the date of such account of all Securities  or other indebtedness or obligations held by the Custodian or its agent for or on behalf of each Sub-Fund or otherwise pursuant to the terms hereof PROVIDED THAT the Custodian shall not be obliged to maintain any records for a period of more than seven years.  The Company agrees that any account shall be binding on the Company thirty (30) business days after (a) in the case of any statement sent by mail, it has been mailed by first class post, postage prepaid or (b) in the case of any statement delivered by hand or transmitted or made available electronically, it has been transmitted or made available electronically to the Company unless the Company has previously notified the Custodian in writing of any error or discrepancy in such statement and in the absence of such notification, the Custodian shall not be liable (in the absence of negligence or wilful default) for such error or discrepancy. The Custodian shall provide such other reports and other information to the Company as may be agreed from time to time.

(D)     The Company as sole beneficial owner of all Securities delivered or to be delivered to the Custodian or its nominee pursuant to this Agreement hereby indemnifies and holds harmless the Custodian from and against all proper costs and expenses and liabilities resulting from the fact that such Securities are registered in the name of the Custodian or its nominee.

(E)     The Custodian shall exercise reasonable care in performing its obligations under this Agreement and the Custodian will look after the assets of the Company with the same degree of care it exercises for its own assets of a similar type in the relevant market.  The Custodian shall only be liable to the Company and its shareholders for any loss suffered by them as a result of its unjustifiable failure to perform its obligations or its improper performance of them or if it has been negligent or in wilful default of its duties as set out under this Agreement and the UCITS Regulations.

(F)     The Custodian's liability shall not be affected by the fact that it has entrusted to a third party some or all of the assets in its safekeeping.

(G)     The Custodian shall exercise reasonable care in the selection and appointment of professional advisers and subject thereto shall be entitled to rely on, and may act upon the advice of professional advisers in relation to matters of law, regulation or market practice (which may be the professional advisers of the Company) and shall not be liable to the Company for any action reasonably taken or omitted pursuant to such advice, save to the extent that the Custodian is able to recover from such professional advisers in respect of negligent advice given.

(H)     The Custodian need not maintain any insurance cover for the benefit of the Company.

(I)     Subject to Clause 16(E), the Custodian accepts no liability whatsoever for any loss which results from:

        (a)     the general risks of investing; or

        (b)     investing or holding assets in a particular country, including but not limited to, losses arising from nationalisation, expropriation or other governmental actions; regulations of the banking or securities industries, including changes in market rules; currency restrictions, devaluations or fluctuations; market conditions affecting the orderly execution of securities transactions or affecting the value of assets.

(J)   The Custodian shall not be liable to the Company for any loss due to forces beyond its control including, but not limited to, strikes, work stoppages, acts of war or terrorism, insurrection, revolution, nuclear fusion, fission or radiation, acts of God or any other acts outside the control of the Custodian, provided that the Custodian shall use all reasonable efforts to minimise the effects of same.

(K)   Subject to Clause 16(E), the Custodian shall not be liable for acting on what it in good faith believes to be Proper Instructions, or in relation to notices, requests, waivers, consents, receipts or other documents which the Custodian in good faith believes to be genuine and to have been given or signed by the appropriate parties.

(L)   Subject to Clause 16(E), the Custodian shall not be liable to the Company for the collection, deposit or credit of invalid, fraudulent or forged Securities.

(M)   Subject to Clause 16(E), the Custodian shall not be liable for losses arising out of effecting delivery or payment against an expectation of receipt, save where such delivery or payment was contrary to local market practice.

(N)   Subject to Clause 16(E), the Company shall be solely responsible for compliance with any notification or other requirement of any jurisdiction relating to or affecting the Company's beneficial ownership of the Securities and the Custodian assumes no liability for non-compliance with such requirements.

(O)   Neither the Custodian nor any sub-custodian is under any duty to provide the Company with investment advice or to supervise its investments.

(P)   The Custodian may refuse to act upon Proper Instructions which it reasonably believes to be contrary to law, regulation or market practice and shall promptly notify the Company of any such refusal.

(Q)   The Custodian shall be obliged to deliver Securities in accordance with Proper Instructions.
The Custodian shall not be deemed to be affected with notice of or to be under any duty to disclose to the Company any fact or thing which may come to its knowledge or that of any of its servants or agents in the course of its rendering similar services to others in the course of its business or any other capacity or in any manner whatsoever otherwise than in the course of acting as custodian to the Company pursuant to this Agreement.

(R)  The Company hereby undertakes to hold harmless and indemnify the Custodian against all actions, proceedings, losses, claims, costs, demands and expenses which may be brought against or suffered or incurred by the Custodian by reason of its performance or non-performance of its obligations or functions pursuant to this Agreement provided that this indemnity shall not extend to any fraud, negligence or wilful default of the Custodian or loss arising to shareholders as a result of the unjustifiable failure of the Custodian to perform its obligations or its improper performance of them under this Agreement.

17.  REFUSAL TO ACT

Subject to notice having been given to the Company, the Custodian shall be entitled to refuse to effect any investment, realisation or other transaction required to be carried out by it on behalf of the Company pursuant to this Agreement if in the opinion of the Custodian:-

(a)  there are reasonable grounds for estimating that liabilities to be incurred in the case of such investment, realisation or other transaction may not be adequately covered by the assets of the Company held immediately prior to the time that such investment, realisation or other transaction is required to be effected; or

(b)  personal liability may be incurred by the Custodian pursuant to such investment, realisation or other transaction;

PROVIDED ALWAYS that the foregoing (save as aforesaid) shall not absolve the Custodian from performing the obligations expressly assumed by it under this Agreement.

18.  APPROVAL OF PUBLICATIONS

The Company shall deliver to the Custodian for approval prior to issue thereof a copy of all statements, notices, circulars and advertisements to be issued on behalf of or relating to the Company in which the name or any reference to the Custodian may appear and any such publication not approved by the Custodian shall not be published by or on behalf of the Company and the Company hereby undertakes that no such statement, notice, circular or advertisement will be published and that no moneys shall be raised nor any shares of the Company issued unless and until all necessary consents and permissions of whatever jurisdiction have been obtained in connection therewith.

19.  CONFIDENTIALITY

Neither party hereto shall unless compelled so to do by any court of competent jurisdiction or any relevant regulatory body either before or after the termination of this Agreement disclose to any

person not authorised by the relevant party to receive the same any information relating to such party or to the affairs of such party of which the party disclosing the same shall have become possessed during the period of this Agreement and each party shall use its best endeavours to prevent any such disclosure as aforesaid.

## 20. RIGHT TO USE DATA PROCESSING RECORDS

The Custodian is authorised to maintain all accounts, registers, corporate books and other documents relating to the Company or its affairs on computer records and to produce at any time during the course of legal proceedings, copies or reproductions of these documents made by photographic, photostatic or data processing procedures as juridical proof thereof.

## 21. TELEPHONE RECORDING

Each of the parties hereto agrees that the other party may record all telephone conversations between such party and the other party and any such tape recordings may be submitted in evidence in any proceedings relating to this Agreement.

## 22. TERMINATION

(A)    This Agreement and the appointment of the Custodian hereunder shall continue in force until terminated by either the Company or the Custodian giving to the other not less than ninety days' notice in writing (or such shorter notice as such other party may agree to accept) expiring at any time provided that either the Company or the Custodian may forthwith terminate this Agreement by notice taking immediate or subsequent effect if any such other party ("Defaulting Party") shall at any time during the continance of this Agreement:-

(a)    commit any material breach of this Agreement or commit persistent breaches of this Agreement which is or are either incapable of remedy or have not been remedied within thirty (30) days of the other party serving notice upon the Defaulting Party requiring it to remedy same;

(b)    be unable to pay its debts as they fall due or otherwise become insolvent or enter into any composition or arrangement with or for the benefit of its creditors or any class thereof;

(c)    be the subject of any petition for the appointment of an examiner, administrator,

trustee, official assignee or similar officer to it or in respect of its affairs or asset;

    (d)    have a receiver appointed over all or any substantial part of its undertaking, assets or revenues;

    (e)    be the subject of an effective resolution for its winding up except in relation to a voluntary winding up for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the other parties.

(B)    The Custodian may terminate this Agreement forthwith if the initial issue of Participating Share in the Thema High Yield Fixed Income Fund has not taken place on or before 1 September 1996, provided the Central Bank agrees to revoke its authorisation of the Company.

(C)    The Company may terminate this Agreement if the Custodian's certificate issued pursuant to Section 39B of the Finance Act, 1980 (as amended) is revoked.

(D)    Save as otherwise provided in this Agreement, the Company may not terminate the appointment of the Custodian and the Custodian may not retire from such appointment unless and until a successor custodian shall have been appointed in accordance with the Articles.

(E)    If the Custodian shall have given to the Company notice of its desire to retire from its appointment and no successor shall have been appointed in accordance with the Articles within three months from the giving of such notice, the Custodian may require the Directors to convene a general meeting of the Company and propose at that meeting a resolution that the Company be wound up or upon receipt of written notice from the Custodian the Company shall forthwith redeem or repurchase all the Participating Shares and the Custodian's appointment hereunder shall terminate on the occurrence of such redemption or repurchase and on the revocation of Central Bank's authorisation of the Company.

(F)    Upon the termination of this Agreement the Custodian shall deliver the Securities, cash and any other property of the Company in its custody hereunder to such person as the Company may nominate as successor custodian; provided, however, that the Custodian shall not be required to make any such delivery or payment until full payment shall have been made by the Company of all liabilities constituting a charge on or against the properties held by the Custodian or on or against the Custodian, and until full payment shall have been made to the Custodian of all its fees, compensation, costs and expenses due to it under the provisions of this Agreement provided always that the Custodian

can not charge any fees in respect of any period after the termination date save with the approval of the Company.

23.    NOTICES

Any notice, instruction or other instrument required or permitted to be given hereunder may be delivered in person to the offices of the parties as set forth herein during normal business hours, or delivered prepaid registered mail or by telex or facsimile to the parties at the following addresses or such other address as may be notified by either party from time to time.

TO THE COMPANY:      THEMA INTERNATIONAL FUND plc
                     First Floor
                     Europa House
                     Harcourt Centre
                     Harcourt Street
                     DUBLIN 2

                     Attention:      The Secretary

                     Telex:          3233BOBD E1

                     Facsimile:      353-1-475-2467


CC:                  THEMA ASSET MANAGEMENT plc
                     Citco Building
                     Wickhams Cay
                     Road Town
                     Tortola
                     British Virgin Island

                     Attention:  The Secretary

                     Telex:

                     Facsimile:


TO THE CUSTODIAN:    BERMUDA TRUST (DUBLIN) LIMITED
                     Europa House
                     Harcourt Centre
                     Harcourt Street
                     Dublin 2
                     Ireland

                     Attention:  The Managing Director

                     Telex:      3233BOBD E1

                     Facsimile:  353-1-475-2467

Such notice, instruction or other instrument shall be deemed to have been served in the case of a registered letter at the expiration of five business days after posting and in the case of facsimile, immediately on despatch and if delivered outside normal business hours it shall be deemed to have been received at the next time after delivery when normal business hours commence and in the case of facsimile on the business day after the receipt thereof. Evidence that the notice was properly addressed, stamped and put into the post shall be conclusive evidence of posting.

24.     ASSIGNMENT

This Agreement may not be assigned by the Custodian without the consent of the Company and the Central Bank.

25.     AMENDMENT

No provision of this Agreement may be amended otherwise than by an instrument in writing signed by the parties hereto and with the approval of the Central Bank.

26.     COUNTERPART

This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts each of which when exectued and delivered shall constitute an original all such counterparts together constituting but one and the same instrument.

27.     SEVERANCE

Each of the provisions of this Agreement are separate and severable and enforceable accordingly and if at any time any provision is adjudged by any court of competent jurisdiction to be void or unenforceable the validity, legality and enforceability of the remaining provisions hereof shall not in any way be affected or impaired thereby.

28.     CONTINUING OBLIGATIONS

Termination of this Agreement shall be without prejudice to any claims or rights which either of the parties hereto may have by reason of any breach of the other party's obligations occuring on or prior to termination of this Agreement and without prejudice to the generality of the foregoing any indemnity provisions or provisions limiting the liabilities of either party shall survive termination of this Agreement.

29.    WAIVER

No provision of this Agreement may be waived otherwise than by an instrument in writing signed by the parties hereto.

30.    PARTNERSHIP

This Agreement shall not be deemed to create any partnership between the parties hereto in relation to the Company or otherwise.

31.    PROPER LAW

This Agreement shall be governed by and construed in accordance with the laws of Ireland and the Company agrees that the courts of Ireland shall have jurisdiction to resolve any disputes relating to the terms of this Agreement.   This clause shall not limit the right of either party to bring proceedings in any other jurisdiction.


In witness whereof this Agreement has been entered in to the day and year first above written.

SIGNED BY *Daniel Morrissey*
for and on behalf of
THEMA INTERNATIONAL FUND plc
in the presence of:

_____
Signature of Witness

Fergus Healy
_____
Name of Witness

Solicitor
_____
Occupation of Witness

Dublin 2
_____
Address of Witness

Director.

SIGNED BY Emer Clarke
for and on behalf of BERMUDA
TRUST (DUBLIN) LIMITED
in the presence of:

_____
Signature of Witness

David O'Donnell
_____
Name of Witness

Solicitor
_____
Occupation of Witness

Europa House, Harcourt Street, Dublin 2
_____
Address of Witness

Emer Clarke.

THEMA INTERNATIONAL FUND PLC

HSBC INSTITUTIONAL TRUST SERVICES (IRELAND) LIMITED

# SUPPLEMENTAL CUSTODIAN AGREEMENT

William Fry
Solicitors
Fitzwilton House
Wilton Place
Dublin 2
www.williamfry.ie

© William Fry 2006

013051.0002.TOR

THIS AGREEMENT is made on  21ˢᵗ August  2006

BETWEEN:

> THEMA INTERNATIONAL FUND PLC
> a company incorporated under the
> laws of Ireland having its registered office at
> HSBC House, Harcourt Centre
> Harcourt Street, Dublin 2, Ireland
> (the "Company")

> - and -

> HSBC INSTITUTIONAL TRUST
> SERVICES (IRELAND) LIMITED
> (formerly known as Bermuda Trust
> (Dublin) Limited)
> a company incorporated under the laws of Ireland
> having its head office at
> HSBC House, Harcourt Centre
> Harcourt Street, Dublin 2, Ireland
> (the "Custodian")

WHEREAS:

A.    The Company is an investment company with variable capital structured as an umbrella fund with segregated liability between Sub-funds incorporated under the laws of Ireland on 9 May 1996 and was authorised by the Irish Financial Services Regulatory Authority as a UCITS on 31 May 1996.

B.    Pursuant to the terms of a custodian agreement between the Company and the Custodian dated 30 May 1996 (the "Original Agreement"), the Company appointed the Custodian and the Custodian agreed to act as custodian of all of the assets of the Company.

C.    The parties hereto wish to amend the Original Agreement to reflect the Company's conversion to segregated liability between Funds which took place on 16 June 2006.

IT IS HEREBY AGREED as follows:

1.    **Interpretation**

Unless the context otherwise requires, words and expressions contained in this Agreement shall bear the same meanings as in the Original Agreement.

2.    **Amendment to Original Agreement**

The parties hereto agree that the terms and conditions of the Original Agreement shall be amended by:

2.1    the addition of the words "and with segregated liability between Funds" after all references to the Company being an "investment company with variable capital";

2.2    the replacement of the first sentence of Clause 15(C) with the following sentence:

"(c)    The Custodian is authorised to deduct its remuneration, expenses and disbursements on account of a Sub-fund ("Fund") from any one or more of that Fund's accounts";

2.3    the re-numbering of the current Clause 15(D) as Clause 15(D)(i) and the insertion of the following Clause 15(D)(ii):

"**15(D)(ii)**    As the Company is structured as an umbrella fund with segregated liability between its Sub-funds, (the "Funds") the right to retain or set-off described in Clause 15(D)(i) may be exercised by the Custodian only against any Securities or cash the Custodian may hold directly or indirectly for the account of the Company, in any currency including time deposits and all Securities held hereunder, where such Security cash is the property of the Fund which defaulted on its obligations or liabilities."; and

2.4    the insertion of the following Clause 32:

"**32.    SEGREGATED LIABILITY BETWEEN THE FUNDS**

The Company is an umbrella fund with segregated liability between Funds pursuant to the Companies Acts 1963 to 2005 and, notwithstanding any provision of this Agreement:

(a)    the Custodian shall not seek whether in any proceedings or by any other means whatsoever or wheresoever to have recourse to any assets of any Fund of the Company in the discharge in all or any part of the liability which was not incurred on behalf of that Fund;

(b)    if the Custodian shall succeed by any means whatsoever or wheresoever in having recourse to any assets of any Fund in the discharge in all or any part of a liability which was not incurred on behalf of that Fund, the Custodian shall be liable to the Company to a sum equal to the value of the benefit thereby obtained by the Custodian; and

(c)    if the Custodian shall succeed in siezing or attaching by any means, or otherwise levying execution against, any assets of a Fund in respect of a liability which was not incurred on behalf of that Fund, the Custodian shall hold those assets or the direct or indirect proceeds of the sale of such assets on trust for the Company and shall keep those assets or proceeds separately and identifiable as such property."

3.    **Continuing Obligations**

Save as the same are expressly varied in accordance with the terms of this Agreement, the provisions of the Original Agreement shall continue in full force and

effect. This Agreement and the Original Agreement shall henceforth be read and construed together as one document.

4.      **Governing Law**

This Agreement shall be governed by and construed in accordance with the laws of Ireland.

5.      **Counterparts**

This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when executed and delivered shall constitute an original all such counterparts together constituting but one and the same instrument.

IN WITNESS WHEREOF this Agreement has been entered into the day and year first above written.

SIGNED by
duly authorised on behalf of
THEMA INTERNATIONAL FUND PLC
in the presence of:

_____
Signature

_____
Witness (Signature)

_____
Print name

_____
Print address

SIGNED by *Ronnie Griffin*
duly authorised on behalf of
HSBC      INSTITUTIONAL      TRUST
SERVICES (IRELAND) LIMITED
in the presence of:

_____
Witness (Signature)

*Claudia Hocke*
_____
Print name

**HSBC House**
**Harcourt Centre**
**Harcourt Street**
Print address **Dublin 2**
**Ireland**

_____
Signature

SIGNED by
duly authorised on behalf of
THEMA INTERNATIONAL FUND PLC
in the presence of:

_____
Witness (Signature)

Françoise Grawehr
_____
Print name

GENEVALOR, Benbassat & Cie
7, rue Versonnex
1207 Genève
_____
Print address

_____
Signature


SIGNED by
duly authorised on behalf of
HSBC        INSTITUTIONAL        TRUST
SERVICES (IRELAND) LIMITED
in the presence of:

_____
Witness (Signature)

_____
Print name

_____
Print address

_____
Signature

WF-591753-v2

5