UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| IN RE HERALD, PRIMEO AND THEMA | : | Master File No. 09 Civ. 289 |
| FUNDS SECURITIES LITIGATION | : | (RMB) (HBP) |
| | : | |
| This Document Relates to:  All Actions | : | ECF Case |
| | : | Electronically Filed |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO DISMISS
AND IN OPPOSITION TO PLAINTIFFS' MOTION
FOR LEAVE TO AMEND COMPLAINTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

GLOSSARY OF DEFINED TERMS .....................................................................xviii

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ............................................................................................................3

I.      THESE CASES DO NOT BELONG IN A UNITED STATES COURT...........................3

        A.      Plaintiffs Have Failed To Establish Personal Jurisdiction Over the Personal
                Jurisdiction Defendants...........................................................................3

                1.      The Complaints Must Allege Specific Facts Sufficient To Establish
                        Personal Jurisdiction Over Each Defendant.................................3

                2.      Plaintiffs Must Satisfy Both Jurisdictional Statutes and
                        Constitutional Due Process Principles..........................................3

                3.      The Complaints Do Not Suffice To Show That This Court Has
                        Personal Jurisdiction Over the Personal Jurisdiction Defendants.................4

                        (a)     The Director Defendants.....................................................6

                        (b)     Sonja Kohn .......................................................................7

                        (c)     PwC Ireland ......................................................................7

                        (d)     The Fund and Advisor Defendants ..................................8

                        (e)     The Holding Company Defendants ..................................9

                4.      Exercising Jurisdiction Would Contravene Fairness Principles ................10

        B.      Each Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds.........10

                1.      The Thema Action Belongs in Ireland, and the Primeo and Herald
                        Actions Belong in Luxembourg.................................................11

                        (a)     Ireland and Luxembourg Are Adequate Alternative Forums .........11

                        (b)     Ireland and Luxembourg Are the Most Appropriate Forums .........12

                2.      Plaintiffs' Choice of a U.S. Forum Deserves Little Deference ..................16

                3.      The Assertion of Claims Against U.S. Defendants Does Not Justify
                        Keeping Unrelated Foreign Defendants in an Inconvenient Forum ..........17

C.      This Court Should Abstain From Claims Asserted on Behalf of Herald Lux
        Investors ..................................................................................................................18

II.   PLAINTIFFS' CLAIMS ARE BARRED, IN WHOLE OR IN SIGNIFICANT
      PART, BY NUMEROUS LEGAL DOCTRINES ...........................................................18

      A.      All Common Law Claims Are Barred by SLUSA ...............................................18

              1.      SLUSA Preclusion Is Applied Broadly ....................................................19

              2.      Every Element of SLUSA Preclusion Is Satisfied Here ...........................19

      B.      Certain Common Law Claims Are Barred by the Martin Act ..............................20

      C.      Plaintiffs Lack Standing Under Governing Irish, Cayman Islands and
              Luxembourg Law ................................................................................................22

              1.      Irish and Cayman Islands Law .................................................................22

              2.      Luxembourg Law ....................................................................................24

      D.      The Thema Plaintiff's Derivative Claims Should Be Dismissed ..........................25

      E.      The Non-Fund Defendants Owed No Duties to Plaintiffs ...................................26

      F.      Many of Plaintiffs' Non-Fraud Claims Are Barred by Exculpation
              Provisions ...........................................................................................................27

      G.      Madoff's Intentional Criminal Act Was a Supervening Cause .............................27

      H.      Principles of Vicarious Liability Bar Claims Asserted Against Certain
              Defendants ..........................................................................................................29

III.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER FOREIGN OR NEW YORK
      LAW AGAINST ANY DEFENDANT ........................................................................30

      A.      Foreign Law Applies to Most of Plaintiffs' Claims, Including All Claims
              Asserted Against the Foreign Defendants ...........................................................30

      B.      Plaintiffs Fail To State a Claim Under New York Law ........................................31

              1.      Negligence, Professional Negligence, Gross Negligence and
                      Negligent Misrepresentation ...................................................................31

              2.      Common Law Fraud ...............................................................................33

              3.      Breach of Fiduciary Duty ........................................................................34

              4.      Aiding and Abetting Causes of Action .....................................................34

        5.     Breach of Contract and Third Party Breach of Contract ........................... 36

        6.     Unjust Enrichment and Constructive Trust ............................................... 36

        7.     Conversion ..................................................................................... 38

        8.     Civil Conspiracy ............................................................................ 39

IV.    THE HERALD COMPLAINT'S RICO CLAIMS SHOULD BE DISMISSED ............... 39

    A.     The RICO Claims Violate the PSLRA's Amendment to RICO ........................... 39

    B.     The RICO Claims Should Be Dismissed Because They Are Extraterritorial ......... 41

    C.     The Herald Plaintiffs Do Not Have RICO Standing ............................................. 42

    D.     The Herald Complaint Does Not State a Claim Under Section 1962(c) ................. 43

    E.     The Herald Complaint Does Not State a Claim Under Section 1962(d) ............... 44

CONCLUSION .................................................................................................... 45

# TABLE OF AUTHORITIES

## CASES

*ABF Capital Management v. Askin Capital Management, L.P.*,
  957 F. Supp. 1308 (S.D.N.Y. 1997) ................................................................ 23, 37

*Abercrombie v. Andrew College*,
  438 F. Supp. 2d 243 (S.D.N.Y. 2006) ............................................................ 34

*Abert Trading, Inc. v. Kipling Belgium N.V./S.A.*,
  00 Civ. 0478, 2002 WL 272408 (S.D.N.Y. Feb. 26, 2002) ............................. 13

*Acito v. IMCERA Group, Inc.*,
  47 F.3d 47 (2d Cir. 1995) ............................................................................. 33

*In re Agape Litigation*,
  681 F. Supp. 2d 352 (E.D.N.Y. 2010) ........................................................... 44

*In re Agape Litigation*,
  09-CV-1782, 2011 WL 1136173 (E.D.N.Y. Mar. 29, 2011) ........................... 35

*A.I.A. Holdings, S.A. v. Lehman Brothers, Inc.*,
  97 CIV. 4978, 1999 WL 47223 (S.D.N.Y. Feb. 3, 1999) ............................... 34

*In re Air Cargo Shipping Services Antitrust Litigation*,
  06-MD-1775, 2008 WL 5958061 (S.D.N.Y. 2008) ....................................... 14

*Alexander & Alexander of New York, Inc. v. Fritzen*,
  503 N.E.2d 102 (N.Y. 1986) ......................................................................... 39

*In re Allstate Insurance Co.*,
  613 N.E.2d 936 (N.Y. 1993) ......................................................................... 30

*In re Alstom S.A. Securities Litigation*,
  253 F.R.D. 266 (S.D.N.Y. 2008) ................................................................... 14

*In re Ames Department Stores, Inc.*,
  274 B.R. 600 (Bankr. S.D.N.Y. 2002) .......................................................... 38

*Anwar v. Fairfield Greenwich Ltd.*,
  728 F. Supp. 2d 354 (S.D.N.Y. 2010) ........................................................... 21

*Anza v. Ideal Steel Supply Corp.*,
  541 U.S. 451 (2006) ..................................................................................... 43

*Asahi Metal Industries Co. v. Superior Court of California*,
  480 U.S. 102 (1987) ..................................................................................... 10

*In re Asia Pulp & Paper Securities Litigation,*
    293 F. Supp. 2d 391 (S.D.N.Y. 2003) ...............................................................................29

*Assured Guaranty (UK) Ltd. v. J.P. Morgan Investment Management Inc.,*
    915 N.Y.S.2d 7 (1st Dep't 2010) ........................................................................................21

*In re AstraZeneca Securities Litigation,*
    559 F. Supp. 2d 453 (S.D.N.Y. 2008) ................................................................................6

*Atkins v. Apollo Real Estate Advisors, L.P.,*
    CV-05-4365, 2008 WL 1926684 (E.D.N.Y. Apr. 30, 2008)...............................................44

*Atuahene v. City of Hartford,*
    10 F. App'x 33 (2d Cir. 2001) ..............................................................................................2

*Backus v. Connecticut Community Bank, N.A.,*
    3:09-CV-1256, 2009 WL 5184360 (D. Conn. Dec. 23, 2009) ..........................................20

*Bald Eagle Area School District v. Keystone Financial, Inc.,*
    189 F.3d 321 (3rd Cir. 1999) ..............................................................................................40

*In re Banco Santander Securities-Optimal Litigation,*
    732 F. Supp. 2d 1305 (S.D. Fla. 2010) ........................................ 7, 8, 10, 12, 13, 14, 15, 16

*Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez,*
    171 F.3d 779 (2d Cir. 1999)..................................................................................................5

*In re Bank of America Corp. Securities, Derivative & ERISA Litigation,*
    09 MD 2058, 2010 WL 5248815 (S.D.N.Y. Dec. 14, 2010)..............................................25

*Barron v. Igolnikov,*
    09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010) .......................................20, 21

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)...........................................................................................................17

*In re Bayou Hedge Funds Investment Litigation,*
    472 F. Supp. 2d 528 (S.D.N.Y. 2007) ...............................................................................35

*In re Beacon Assocs. Litigation,*
    745 F. Supp. 2d 386 (S.D.N.Y. 2010) .........................................................................20, 21

*Bensusan Restaurant Corp. v. King,*
    126 F.3d 25 (2d Cir. 1997) ...................................................................................................3

*Berman v. Sugo LLC,*
    580 F. Supp. 2d 191 (S.D.N.Y. 2008) ...............................................................................34

*Bersch v. Drexel Firestone, Inc.*,
    519 F.2d 974 (2d Cir. 1975).................................................................8

*Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006)...............................................................37

*Boxer v. Gottlieb*,
    652 F. Supp. 1056 (S.D.N.Y. 1987) ....................................................30

*Breslin v. Corcoran*,
    [2003] I.R. 203 (Ir.) ..........................................................................28

*Calder v. Jones*,
    465 U.S. 783 (1984) ...........................................................................3

*Caraballo v. United States*,
    830 F.2d 19 (2d Cir. 1987) ................................................................28

*Castellano v. Young & Rubicam, Inc.*,
    257 F.3d 171 (2d Cir. 2001)...............................................................21

*Cedeño v. Intech Group, Inc.*,
    733 F. Supp. 2d 471 (S.D.N.Y. 2010) .................................................42

*Chemtex, LLC v. St. Anthony Enterprises*,
    490 F. Supp. 2d 536 (S.D.N.Y. 2007) .................................................35

*Chew v. Dietrich*,
    143 F. 3d 24 (2d Cir. 1998) ................................................................4

*Chiste v. Hotels.com L.P.*,
    08 Civ. 10676, 2011 WL 2150653 (S.D.N.Y. May 31, 2011)..............37

*Citadel Management Inc. v. Telesis Trust, Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000) .................................................43

*Clark-Fitzpatrick, Inc. v. Long Island Railroad Co.*,
    516 N.E.2d 190 (N.Y. 1987)...............................................................37

*CMMF, LLC v. J.P. Morgan Investment Management, Inc.*,
    915 N.Y.S.2d 2 (1st Dep't 2010) ........................................................21

*Coface v. Optique du Monde, Ltd.*,
    521 F. Supp. 500 (S.D.N.Y. 1980) ......................................................17

*Cohain v. Klimley*,
    08 Civ. 5047, 2010 WL 3701362 (S.D.N.Y. Sept. 20, 2010)..............40

*Colavito v. New York Organ Donor Network, Inc.*,
    860 N.E.2d 713 (N.Y. 2006)..................................................................38

*Cooney v. Osgood Machinery, Inc.*,
    612 N.E.2d 277 (N.Y. 1993)..................................................................31

*Credit Alliance Corp. v. Arthur Andersen & Co.*,
    483 N.E.2d 110 (N.Y. 1985)..................................................................32

*CRT Investments, Ltd. v. BDO Seidman, Ltd.*,
    --- N.Y.S.2d ----, 2011 WL 2225050 (1st Dep't June 9, 2011)......................7, 33

*D. Carlyle International LLC v. J.P. Morgan Chase & Co.*,
    10 Civ. 6039, 2011 WL 1676049 (S.D.N.Y. Apr. 26, 2011).............................1

*In re DaimlerChrysler AG Securities Litigation*,
    247 F. Supp. 2d 579 (D. Del. 2003) ..........................................................7

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
    352 F.3d 775 (2d Cir. 2003)...................................................................32

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)..............................................................43, 44

*Deutsche Bank Securities, Inc. v. Rhodes*,
    578 F. Supp. 2d 652 (S.D.N.Y. 2008) ........................................................32

*Deutsche Lufthansa AG v. Boeing Co.*,
    06 CV 7667, 2007 WL 403301 (S.D.N.Y. Feb. 2, 2007)..................................27

*Di Benedetto v. Pan Am World Service*,
    359 F.3d 627 (2d Cir. 2004)...................................................................31

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,
    02 Civ. 6164, 2007 WL 258177 (S.D.N.Y. Jan. 29, 2007) .................................23, 25, 30

*Duravest v. Viscardi, A.G.*,
    581 F. Supp. 2d 628 (S.D.N.Y. 2008) ......................................................6, 7

*Elsevier Inc. v. W.H.P.R. Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010) ........................................................45

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003)........................................................40

*Eugenia VI Venture Holdings, Ltd. v. Glaser*,
    370 F. App'x 197 (2d Cir. 2010) ..............................................................34

*European Community v. RJR Nabisco, Inc.*,
  02-CV-5771, 2011 WL 843957 (E.D.N.Y. Mar. 8, 2011) ...............................41

*Fezzani v. Bear, Stearns & Co.*,
  99 Civ. 0793, 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) ..............................40

*Fieger v. Pitney Bowes Credit Corp.*,
  251 F.3d 386 (2d Cir. 2000)...........................................................................30

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)...........................................................................44

*In re First Central Financial Corp.*,
  377 F.3d 209 (2d Cir. 2004)...........................................................................37

*Fischer & Mandell, LLP v. Citibank, N.A.*,
  632 F.3d 793 (2d Cir. 2011)...........................................................................36

*Forties B LLC v. America West Satellite, Inc.*,
  725 F. Supp. 2d 428 (S.D.N.Y. 2010) .............................................................4

*Foss v. Harbottle*,
  [1843] 2 Hare 461 ..........................................................................................25

*Gaines-Tabb v. ICI Explosives, USA, Inc.*,
  160 F.3d 613 (10th Cir. 1998).........................................................................28

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
  713 F. Supp.2d 215 (S.D.N.Y. 2010) ..............................................................38

*Global View Ltd. v. Great Central Basin Exploration, LLC*,
  288 F. Supp. 2d 473 (S.D.N.Y. 2003) .............................................................38

*GlobalNetFinancial.com v. Frank Crystal & Co.*,
  449 F.3d 377 (2d Cir. 2006)...........................................................................31

*Goldweber v. Harmony Partners, Ltd.*,
  09-61902-CIV., 2010 WL 3702508 (S.D. Fla. Sept. 16, 2010).......................28

*Grow Group, Inc. v. Jandernoa*,
  94 Civ. 5679, 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996) ..................................3

*Haiti v. Duvalier*,
  626 N.Y.S.2d 472 (1st Dep't 1995) .................................................................38

*Hemi Group, LLC v. City of New York*,
  130 S. Ct. 983 (2010) .....................................................................................43

*Hickey v. Travelers Insurance Co.*,
  558 N.Y.S.2d 554 (2d Dep't 1990) ............................................................................32

*High View Fund, LP v. Hall*,
  27 F. Supp. 2d 420 (S.D.N.Y. 1998) ........................................................................38

*Horvath v. Banco Comercial Portugues, S.A.*,
  10 Civ. 4697, 2011 WL 666410 (S.D.N.Y. Feb. 15, 2011) ....................................22

*Howard v. City Real Estate Corp.*,
  84 Civ. 5626, 1985 WL 438 (S.D.N.Y. Mar. 15, 1985) .......................................5, 7

*Howe v. Bank of New York Mellon*,
  09 Civ. 10470, 2011 WL 781940 (S.D.N.Y. Mar. 4, 2011) ....................................22

*HSA Residential Mortgage Services. v. Casuccio*,
  350 F. Supp. 2d 352 (E.D.N.Y. 2003) .....................................................................32

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) .........................................................................................32

*I. Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*,
  587 F. Supp. 844 (S.D.N.Y. 1984) .............................................................................6

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
  907 N.E.2d 268 (N.Y. 2009) .....................................................................................37

*Instituto de Prevision Militar v. Merrill Lynch*,
  546 F.3d 1340 (11th Cir. 2008) .................................................................................19

*International Customs Associates, Inc. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995) ...........................................................................5

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ....................................................................................................4

*Iragorri v. United Technologies Corp.*,
  274 F.3d 65 (2d Cir. 2001) ................................................................................. 10, 17

*J. McIntyre Machinery, Ltd. v. Nicastro*,
  --- S. Ct. ----, 2011 WL 2518811 (June 27, 2011) ...............................................4, 10

*Iroquois Master Fund, Ltd. v. CEL-SCI Corp.*,
  09 CV 8912, 2011 WL 1216688 (S.D.N.Y. Mar. 28, 2011) ...................................22

*Jackson v. American Plaza Corp.*,
  08 Civ. 8980, 2009 WL 1158829 (S.D.N.Y. Apr. 28, 2009)...................................30

*Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG,*
    160 F. Supp. 2d 722 (S.D.N.Y. 2001) ............................................................7

*Jain v. T&C Holding, Inc.,*
    10 Civ. 1006, 2011 WL 814659 (S.D.N.Y. Mar. 3, 2011)................................22

*Jazini v. Nissan Motor Co., Ltd.,*
    148 F.3d 181 (2d Cir. 1998)..........................................................................3, 9

*J.L.B. Equities, Inc. v. Ocwen Financial Corp.,*
    131 F. Supp. 2d 544 (S.D.N.Y. 2009) ............................................................9

*Joyce v. Morgan Stanley & Co.,*
    538 F.3d 797 (7th Cir. 2008) .......................................................................25

*In re J.P. Jeanneret Associates,*
    09 Civ. 3907, 2011 WL 335594 (S.D.N.Y. Jan 31, 2011) ........................20, 21

*Kahn Lucas Lancaster, Inc. v. Lark International, Ltd.,*
    956 F. Supp. 1131 (S.D.N.Y. 1997) ..............................................................5

*Kalisch-Jarcho, Inc. v. City of New York,*
    448 N.E.2d 413 (N.Y. 1983)..........................................................................27

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)..........................................................................33

*Kaye v. Grossman,*
    202 F.3d 611 (2d Cir. 2000)..........................................................................37

*In re Kingate Management Ltd. Litigation,*
    09 Civ. 5386, 2011 WL 1362106 (S.D.N.Y. Mar. 30, 2011) ..........................20

*Kirschner v. KPMG, LLP*
    938 N.E.2d 941 (N.Y. 2010)..........................................................................14

*Kolbeck v. LIT America, Inc.,*
    939 F. Supp. 240 (S.D.N.Y. 1996) ..........................................................35, 36

*In re Koreag, Controle et Revision SA,*
    961 F.2d 341 (2d Cir. 1992)..........................................................................34

*Kwon v. Yun,*
    05 Civ. 1142, 2006 WL 416375 (S.D.N.Y. Feb. 21, 2006)..........................9, 10

*Landoil Resources Corp. v. Alexander & Alexander Services, Inc.,*
    565 N.E.2d 488 (N.Y. 1990)......................................................................4, 7

*LaSala v. Bank of Cyprus Public Co.*,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) ....................................................... 12, 13

*Law Debenture v. Maverick Tube Corp.*,
    06 Civ. 14320, 2008 WL 4615896 (S.D.N.Y. Oct. 15, 2008) ...........................37

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003)......................................................................42

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)......................................................................35

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972).....................................................................................14

*Mandelbaum v. Fiserv, Inc.*,
    09-cv-00752, 2011 WL 1225549 (D. Colo. Mar. 29, 2011)...........................29

*Maung v. Merrill Lynch & Co.*,
    99 Civ. 9687, 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000)...........................30

*Meisel v. Grunberg*,
    651 F. Supp. 2d 98 (S.D.N.Y. 2009) ........................................................39

*Meridian Horizon Fund, L.P. v. Tremont Group Holdings, Inc.*,
    747 F. Supp. 2d 406 (S.D.N.Y. 2010) ......................................................21

*In re Merrill Lynch Auction Rate Secuities Litigation*,
    09 MD 2030, 2011 WL 536437 (S.D.N.Y. Feb. 9, 2011)...............................22

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ............................................................................ 18, 19

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ......................................................................10

*Michael S. Rulle Family Dynasty Trust v. AGL Life Assurance Co.*,
    10-231, 2010 WL 3522135 (E.D. Pa. Sept. 8, 2010).....................................28

*MLSMK Investment Co. v. JPMorgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2011) .............................................. 33, 35, 44

*Monegasque de Reassurances S.A.M. v. NAK Naftogaz of Ukraine*,
    311 F.3d 488 (2d Cir. 2002).............................................................. 11, 12

*Morrison v. National Australia Bank, Ltd.*,
    130 S. Ct. 2869 (2010) ...................................................................24, 41, 42

*Murray v. Xerox Corp.*,
    811 F.2d 118 (2d Cir. 1987) ............................................................................... 32

*Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009) ................................................................... 34, 36

*Nay v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    05 Civ. 10264, 2006 WL 2109467 (S.D.N.Y. July 25, 2006) ......................... 38

*Neiman Marcus Group, Inc. v. Dispatch Transportation Corp.*,
    09 CV 6861, 2011 WL 1142922 (S.D.N.Y. Mar. 17, 2011) ........................... 45

*Newman v. Family Management Corp.*,
    748 F. Supp. 2d 299 (S.D.N.Y. 2010) ..................................................... 20, 22

*Nigerian National Petroleum Corp. v. Citibank, N.A.*,
    98 Civ. 4960, 1999 WL 558141 (S.D.N.Y. July 30, 1999) .............................. 36

*Norex Petroleum Ltd. v. Access Industries, Inc.*,
    631 F.3d 29 (2d Cir. 2010) ...................................................................... 41, 42

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*,
    03 Civ. 0613, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) .............................. 29

*Overseas National Airways, Inc. v. Cargolus Airlines International, S.A.*,
    712 F.2d 11 (2d Cir. 1983) ............................................................................... 12

*Parrott v. Coopers & Lybrand, L.L.P.*,
    741 N.E.2d 506 (N.Y. 2000) ........................................................................... 32

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007) ........................................................................... 14

*Pollux Holding Ltd. v. Chase*,
    329 F.3d 64 (2d Cir. 2003) ...................................................................... 12, 17

*Premium Mortgage Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009) ..................................................................... 33, 36

*Presidential Realty Corp. v. Michael Square West*,
    376 N.E.2d 198 (N.Y. 1978) .............................................................................. 5

*Priestly v. Comrie*,
    07 CV 1361, 2007 WL 4208592 (S.D.N.Y. Nov. 27, 2007) ........................... 26

*PT United Can Co. v. Crown Cork & Seal Co.*,
    138 F.3d 65 (2d Cir. 1998) ............................................................................... 11

*RCM Securities Fund, Inc. v. Stanton*,
    928 F.2d 1318 (2d Cir. 1991)..............................................................................25

*Reading International, Inc. v. Oaktree Capital Management LLC*,
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) ...............................................................37

*Rechberger v. Hurlburt*,
    07-CV-00061A(F), 2010 WL 742198 (W.D.N.Y. Jan. 12, 2010).....................40

*Reed Construction Data Inc. v. McGraw-Hill Companies*,
    745 F. Supp. 2d 343, (S.D.N.Y. 2010) ..............................................................44

*Reers v. Deutsche Bahn AG*,
    320 F. Supp. 2d 140 (S.D.N.Y. 2004) ...............................................................10

*Renner v. Chase Manhattan Bank*,
    98 CIV. 926, 2000 WL 781081 (S.D.N.Y. June 16, 2000) ...............................36

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*,
    119 F.3d 935 (11th Cir. 1997)............................................................................12

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
    30 F.3d 339 (2d Cir. 1994).................................................................................44

*Romano v. Kazacos*,
    609 F.3d 512 (2d Cir. 2010)...............................................................................19

*Rosner v. Bank of China*,
    06 CV 13562, 2008 WL 5416380 (S.D.N.Y. Dec. 18, 2008)...........................35

*Royal & Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006) ................................................................................18

*RSM Production Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009) .................................................................6

*Rush v. Savchuk*,
    444 U.S. 320 (1980) .............................................................................................3

*Saltz v. First Frontier, LP*,
    10 Civ. 964, 2010 WL 5298225 (S.D.N.Y. Dec. 23, 2010) ........................27, 33

*Schmidt v. Fleet Bank*,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) .................................................................44

*Schnorr v. Schubert*,
    CIV-05-303-M, 2005 WL 2019878 (W.D. Okla. Aug. 18, 2005)....................19

*Schultz v. Boy Scouts of America, Inc.*,
    480 N.E.2d 679 (N.Y. 1985)................................................................................31

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
    81 F.3d 1224 (2d Cir. 1996)................................................................... 10, 17, 30

*SEC v. Cohmad Securities Corp.*,
    2010 WL 363844 (S.D.N.Y. Feb. 2, 2010) .............................................. 33, 34

*Seghers v. Thompson*,
    06 Civ. 308, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006)...................... 25, 26

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ..............................................................................................3

*Sharp International Corp. v. State Street Bank*,
    403 F.3d 43 (2d Cir. 2005) .................................................................................35

*Shields v. Citytrust Bancorp., Inc.*,
    25 F.3d 1124 (2d Cir. 1994)................................................................................33

*In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*,
    499 F. Supp. 2d 437 (S.D.N.Y. 2007) ...............................................................15

*Smith v. Copeland*,
    1:09-CV-1200, 2010 WL 2104667 (N.D. Ga. May 21, 2010) ...........................40

*Spool v. World Child International Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008)................................................................................44

*Star Energy Corp. v. RSM Top-Audit*,
    08 Civ. 00329, 2008 WL 5110919 (S.D.N.Y. Nov. 26, 2008).........................29

*Stechler v. Sidley, Austin Brown & Wood, L.L.P.*,
    382 F. Supp. 2d 580 (S.D.N.Y. 2005) ..............................................................40

*Steed Financial LDC v. Laser Advisers, Inc.*,
    258 F. Supp. 2d 272 (S.D.N.Y. 2003) ..............................................................35

*Stephenson v. Citco Group Ltd.*,
    09 Civ. 00716, 2010 WL 1244007 (S.D.N.Y. Apr. 1, 2010).............................21

*Stephenson v. PricewaterhouseCoopers, LLP*,
    09 CV 00716, 2011 WL 781936 (S.D.N.Y. Mar. 6, 2011) ...............................33

*Sykes v. RFD Third Avenue 1 Associates LLC*,
    938 N.E.2d 325 (N.Y. 2010)..............................................................................32

*Terwilliger v. Terwilliger,*
    206 F.3d 240 (2d Cir. 2000)................................................................29

*Thomas v. Ashcroft,*
    470 F.3d 491 (2d Cir. 2006).................................................................3

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,*
    612 F. Supp. 2d 267 (S.D.N.Y. 2009) ...............................................40

*Thompson v. County of Franklin,*
    15 F.3d 245 (2d Cir. 1994) .................................................................22

*Tkaczevski v. Ryder Truck Rental, Inc.,*
    22 F. Supp. 2d 169 (S.D.N.Y. 1998) .................................................30

*In re Toyota Motor Corp.,*
    8:10ML 02151, 2011 WL 1485479 (C.D. Cal. Apr. 8, 2011)............42

*In re Tremont Securities Law, State Law & Insurance Litigation,*
    703 F. Supp. 2d 362 (S.D.N.Y. 2010) .........................................21, 35

*Truesdell v. Donaldson, Lufkin & Jenrette Securities Corp.,*
    722 N.Y.S.2d 523 (1st Dep't 2001) .....................................................5

*United Feature Syndicate, Inc v. Miller Features, Inc.,*
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ...............................................18

*United States v. Altman,*
    48 F.3d 96 (2d Cir. 1995) ..................................................................44

*United States v. Phillip Morris USA, Inc.,*
    99-2496, 2011 WL 1113270 (D.D.C. Mar. 28, 2011) .......................42

*United States v. Viola,*
    35 F.3d 37 (2d Cir. 1994) ..................................................................45

*Van Valkenburgh v. Robinson,*
    639 N.Y.S.2d 149 (App. Div. 3d Dep't 1996).....................................28

*Vincel v. White Motor Corp.,*
    521 F2d 1113 (2d Cir. 1975)..............................................................25

*In re Vivendi Universal, S.A. Securities Litigation,*
    242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................14

*In re Wachovia Equity Securities Litigation,*
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...............................................22

*Wal-Mart Stores, Inc. v. Dukes*,
    --- S. Ct. ----, 2011 WL 2437013 (June 20, 2011)..........................................................17

*Water Street Leasehold LLC v. Deloitte & Touche LLP*,
    796 N.Y.S.2d 598 (1st Dep't 2005) .................................................................................32

*In re Weis Securities, Inc.*,
    605 F.2d 590 (2d Cir. 1978)..............................................................................................38

*Welsbach Electronics Corp. v. MasTech North America, Inc.*,
    859 N.E.2d 498 (N.Y. 2006)..............................................................................................30

*West Palm Beach Police Pension Fund v. Collins Capital Low Volatility*
    *Performance Fund II, Ltd.*,
    09-80846-CIV., 2010 WL 2949856 (S.D. Fla. July 26, 2010) .........................................26

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000) .........................................................................................4, 6

*Wolf Living Trust v. FM Multi-Strategy Investment Fund, L.P.*,
    09 Civ. 1540, 2010 WL 4457322 (S.D.N.Y. Nov. 2, 2010)..............................................20

*Wyndham Associates v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968)..............................................................................................17

*Yung v. Lee*,
    00 Civ. 3965, 2002 WL 31008970 (S.D.N.Y. Sept. 5, 2002)...........................................18

*Zito v. Leasecomm Corp.*,
    02 Civ. 8074, 2004 WL 2211650, (S.D.N.Y. Sept. 30, 2004)............................................3

*Zutty v. Rye Select Broad Market Prime Fund, L.P.*,
    113209/09, Slip. Op. (Sup. Ct. N.Y. County Apr. 15, 2011)......................................34, 39

## STATUTES AND RULES

15 U.S.C. § 78bb(f)(1) ........................................................................................................19

15 U.S.C. § 78bb(f)(5)(B)...................................................................................................20

15 U.S.C. § 78bb(f)(5)(E)...................................................................................................20

18 U.S.C. § 1962(c) ..............................................................................................39, 42, 43

18 U.S.C. § 1962(d) .............................................................................................39, 44, 45

18 U.S.C. § 1964(c) ..................................................................................................39, 42

18 U.S.C. § 1965 ..................................................................................................3

N.Y. C.P.L.R. 301 .............................................................................................3, 4

N.Y. C.P.L.R. 302 ..........................................................................................3, 5, 8

N.Y. C.P.L.R. 302(a) ..........................................................................................4

N.Y. Gen. Bus. Law §§ 352, et seq. ...................................................................21

Fed. R. Civ. P. 4(k)(1)(a) ....................................................................................3

Fed. R. Civ. P. 4(k)(2) ........................................................................................3

Fed. R. Civ. P. 9 ..................................................................................................1

Fed. R. Civ. P. 12 ................................................................................................1

Fed. R. Civ. P. 15 ................................................................................................1

Fed. R. Civ. P. 23.1 ...........................................................................................25

Fed. R. Civ. P. 44.1 ...........................................................................................31

EU Directive 95/46, 1995 O.J. (L 281) ............................................................15

## GLOSSARY OF DEFINED TERMS

| TERM | DEFINITION |
| --- | --- |
| Actions | The Primeo, Herald and Thema Actions |
| Advisors or Advisor Defendants | Thema Asset Management Ltd. and Genevalor, Benbasset & Cie |
| Bank Austria | Defendant UniCredit Bank Austria AG |
| BLMIS | Bernard L. Madoff Investment Securities LLC |
| BNY Mellon | Defendant The Bank of New York Mellon |
| C | An individual count or cause of action in a Complaint |
| Complaints | The Thema, Herald and Primeo Complaints |
| Defendants | Any or all defendants who have appeared in the Actions and who are identified in the notice of motion submitted herewith |
| Director Defendants | Nigel Fielding, Karl Kaniak, Alberto La Rocca, Declan Murray, Ursula Radel-Leszczynski, Franco Mugnai, Friedrich Pfeffer, Hannes Saleta, Alfred Simon, Johannes Spalek, Dr. Hans-Peter Tiefenbacher, Michael Wheaton, Alberto Benbassat, Stephane Benbassat, David T. Smith, Gerald J.P. Brady and Daniel Morrissey |
| EU | European Union |
| Exchange Act | Securities Exchange Act of 1934 |
| EY Cayman | Defendant Ernst & Young (Cayman) |
| EYG | Defendant Ernst & Young Global Limited |
| EY Lux | Defendant Ernst & Young S.A. |
| Foreign Defendants | Defendants other than BNY Mellon and the JPM Defendants |
| Funds | Herald, Primeo and Thema Funds |

| **TERM** | **DEFINITION** |
|---|---|
| Fund and Advisor Defendants | Thema Fund, Thema Asset Management Ltd., Genevalor, Benbasset & Cie, Herald Funds |
| Herald or the Herald Funds | Herald SPC and Herald Lux |
| Herald Action | The claims asserted by the Herald Plaintiffs in Civil Action No. 09 Civ. 289 |
| Herald Complaint or "HC" | The [Proposed] Third Amended Class Action Complaint filed in No. 09 Civ. 289 |
| Herald Lux | Defendant Herald (LUX) U.S. Absolute Return Fund |
| Herald Plaintiffs | Plaintiffs in the Herald Action |
| Herald SPC | Defendant Herald Fund SPC-Herald USA Segregated Portfolio One |
| Holding Company Defendants | PGAM, Bank Austria and HSBC Holdings PLC |
| HSBC Defendants | HSBC Holdings plc, HSSL, HSSI, HTIE, Bank of Bermuda (Luxembourg) S.A., Bank of Bermuda (Cayman) Limited ("BoB Cayman"), The Bank of Bermuda Limited ("BoB"), and HSBC Bank USA, N.A |
| HSSI | HSBC Securities Services (Ireland) Limited |
| HSSL | Defendant HSBC Securities Services (Luxembourg) S.A. |
| HTIE | Defendant HSBC Institutional Trust Services (Ireland) Limited |
| JPM or JPM Defendants | Defendant JPMorgan Chase & Co. and/or JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC and J.P. Morgan Securities Ltd. |
| Madoff Defendants | Defendants Peter Madoff, Andrew Madoff and the Estate of Mark Madoff |
| MSIL | Madoff Securities International Ltd. |
| Non-Fund Defendants | Defendants other than the Funds |
| Personal Jurisdiction Defendants | The Director Defendants; Sonja Kohn; PwC Ireland, the Fund and Advisor Defendants; and the Holding Company Defendants |

| **TERM** | **DEFINITION** |
|---|---|
| PGAM | Defendant Pioneer Global Asset Management S.p.A. |
| Plaintiffs | Any or all of the named plaintiffs in the Complaints |
| Primeo Action | The claims asserted by the Primeo Plaintiffs in Civil Action No. 09 Civ. 2032 |
| Primeo Complaint or "PC" | The [Proposed] Second Consolidated Amended Complaint filed in No. 09 Civ. 2032 |
| Primeo or the Primeo Funds | Defendants Primeo Select Fund and Primeo Executive Fund |
| Primeo Plaintiffs | Plaintiffs in the Primeo Complaint |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| PwC Bermuda | Defendant PricewaterhouseCoopers Bermuda |
| PwC Defendants | Defendants PwC Bermuda, PwCIL, PwC Ireland and PwC U.S. |
| PwCIL | Defendant PricewaterhouseCoopers International Ltd. |
| PwC Ireland | Defendant PricewaterhouseCoopers (Dublin) |
| PwC U.S. | Defendant PricewaterhouseCoopers LLP |
| RICO | Racketeering Influenced and Corrupt Organizations Act |
| RICO Defendants | Defendants Herald Funds, UCG, Sonja Kohn and Bank Austria |
| Rule | Federal Rule of Civil Procedure |
| SEC | Securities and Exchange Commission |
| SLUSA | Securities Litigation Uniform Standards Act of 1998 |
| Thema or Thema Fund | Defendant Thema International Fund plc |

| **TERM** | **DEFINITION** |
|---|---|
| Thema Action | The claims asserted by the Thema Plaintiffs in Civil Action No. 09 Civ. 2558 |
| Thema Complaint or "TC" | The [Proposed] Second Amended Class Action Complaint filed in No. 09 Civ. 2558 |
| Thema Plaintiff | Plaintiff in the Thema Complaint |
| UCG | Defendant UniCredit S.p.A. |
| UCITS | Undertakings for Collective Investment in Transferable Securities Directives 2001/107/EC and 2001/108/EC |

Defendants[1] respectfully submit this joint memorandum of law in support of their motion for an Order, pursuant to Rules 9(b), 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6), 15 and 44.1 of the Federal Rules of Civil Procedure and Title I of SLUSA, dismissing the consolidated amended complaints as against each of them and denying Plaintiffs' motion (Dkt. 191) for leave to file the Complaints.[2]

## PRELIMINARY STATEMENT

Plaintiffs are foreign investors in one or more of five foreign investment funds whose assets were held and purportedly invested by Bernard Madoff:  (1) Herald SPC, organized in the Cayman Islands; (2) Herald Lux, organized in Luxembourg as a UCITS fund regulated pursuant to an EU directive; (3) Primeo Select Fund, (4) Primeo Executive Fund, both sub-funds of Primeo Fund, a legal entity organized in the Cayman Islands; and (5) Thema Fund, a UCITS fund organized in Ireland.  As the world now knows, Madoff, the former chairman of the NASDAQ Exchange, stole the assets of those Funds in a sophisticated and long-concealed scheme.

Plaintiffs have sued the Funds, directors and service providers of the Funds, numerous direct and indirect parent companies and alleged affiliates of the Funds' service providers and certain companies that provided banking services to BLMIS, alleging that all of them (no matter how removed from Plaintiffs) owed duties to Plaintiffs.  Plaintiffs allege that Defendants should have identified purported "red flags," discerned from those flags that Madoff was running a Ponzi scheme

---

[1] Capitalized terms have been collected in a Glossary, which is attached hereto.  Various defendant groups are filing supplemental attorney declarations pursuant to the Court's June 8, 2011 directions.  When cited herein, such declarations (and declarations of fact or foreign law) are referred to as "[last name of declarant] Decl."

[2] Despite being instructed that the consolidated amended complaints filed on February 11, 2010, would be "final" (Tr. of 11/12/09, at *6), Plaintiffs moved for leave to file the Complaints.  While Defendants do not oppose Plaintiffs' motion to the limited extent that it seeks to withdraw claims under the Exchange Act, this memorandum and its accompanying declarations demonstrate that Plaintiffs' motion should be denied as futile because none of Plaintiffs' allegations states a claim for relief.  *See D. Carlyle Int'l LLC v. J.P. Morgan Chase & Co.*, 10 Civ. 6039, 2011 WL 1676049, at *3 (S.D.N.Y. Apr. 26, 2011) (Berman, J.).  (Alternatively, the Court may permit the Complaints to be filed pursuant to Rule 15(a)(2) and dismiss them under Rule 12.)

and caused the Funds to withdraw their assets.  Improperly lumping Defendants together, *see, e.g.*, *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001), Plaintiffs assert that all Defendants (including various "sister," "parent" and affiliated companies) are liable for the Funds' alleged losses.

In seeking to make Defendants scapegoats for Madoff's intentional criminal acts, Plaintiffs have manufactured claims that not only have no basis in fact, but also are defective as a matter of law and have no place in this U.S. Court.[3]  Plaintiffs' claims should be dismissed because, *inter alia*:

- This Court lacks personal jurisdiction over many Defendants, almost all of whom are foreign;

- Luxembourg is a more convenient forum for litigation concerning the Herald and Primeo Funds, and Ireland is a more convenient forum for litigation concerning the Thema Fund;

- Plaintiffs' common law claims are barred by SLUSA;

- Certain of Plaintiffs' common law claims are barred by the Martin Act;

- Plaintiffs lack standing to assert claims based on Madoff's theft of Fund assets, which claims properly belong to the Funds themselves;

- The directors, service providers and related Defendants owed no duties to Plaintiffs; they owed duties, if at all, only to the Funds;

- Plaintiffs cannot establish, as they must, that they suffered injuries proximately caused by Defendants, given that Madoff's intentional criminal act was a supervening cause of the Funds' alleged losses;

- Plaintiffs' common law allegations otherwise fail to state claims under any applicable law, whether the law of foreign governing jurisdictions or of New York; and

- The Herald Plaintiffs' RICO claims are impermissibly extraterritorial in nature and barred by the PSLRA.

Plaintiffs' common law claims can be dismissed as to all Defendants, without analysis of

---

[3] Although Plaintiffs assert sixty-six unique claims, they assert nineteen overlapping theories of recovery:  (1) Civil conspiracy; (2) Conversion; (3) Aiding and abetting conversion; (4) Breach of fiduciary duty; (5) Aiding and abetting breach of fiduciary duty; (6) Gross negligence; (7) Aiding and abetting gross negligence; (8) Negligence; (9) Aiding and abetting negligence; (10) Professional negligence; (11) Unjust enrichment; (12) Constructive trust; (13) Breach of contract; (14) Third party beneficiary breach of contract; (15) Fraud; (16) Aiding and abetting fraud; (17) Negligent misrepresentation; (18) Civil racketeering under RICO; and (19) Civil RICO conspiracy.

specific allegations against any one, on grounds of SLUSA preclusion and lack of standing.

**ARGUMENT**

I.     **THESE CASES DO NOT BELONG IN A UNITED STATES COURT**

    A.     **Plaintiffs Have Failed To Establish Personal**
           **Jurisdiction Over the Personal Jurisdiction Defendants**

        1.     **The Complaints Must Allege Specific Facts Sufficient**
              **To Establish Personal Jurisdiction Over Each Defendant**

Plaintiffs must "make a *prima facie* showing that jurisdiction exists," *Thomas v. Ashcroft*, 470

F.3d 491, 495 (2d Cir. 2006), "as to *each moving Defendant*." *Calder v. Jones*, 465 U.S. 783, 790

(1984) (emphasis added).  It defies Due Process to rely on broadly worded, vague allegations that do

not distinguish among various defendants – as Plaintiffs do here.  *See Grow Group, Inc. v. Jandernoa*,

94 Civ. 5679, 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (citing *Shaffer v. Heitner*, 433 U.S. 186

(1977)); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980).  "[C]onclusory, non-fact-specific

jurisdictional allegations" do not make a *prima facie* showing of jurisdiction.  *Jazini v. Nissan Motor*

*Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

        2.     **Plaintiffs Must Satisfy Both Jurisdictional**
              **Statutes and Constitutional Due Process Principles**

To establish jurisdiction, Plaintiffs must comply with the relevant statutory authority.  Rule

4(k)(2) and 18 U.S.C. § 1965 govern the putative RICO claims in the Herald Complaint.  Thereunder,

the Plaintiffs must satisfy Constitutional Due Process standards using contacts with the United States.[4]

*See, e.g.*, *Zito v. Leasecomm Corp.*, 02 Civ. 8074, 2004 WL 2211650, at *20 (S.D.N.Y. Sept. 30,

2004).  All Plaintiffs must satisfy New York CPLR 301 and 302 to the extent they assert state-law

claims.  *See* Fed. R. Civ. P. 4(k)(1)(A); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

    Under CPLR 301, a New York court lacks general jurisdiction over a foreign defendant unless

---

[4] The Herald Plaintiffs, however, only attempt to allege minimum contacts with New York.  (*E.g.*,
HC ¶ 58.)  Thus, the New York contacts analysis below applies equally to all moving defendants.

3

that defendant:  (1) consents to jurisdiction, (2) is physically present in the state or (3) engages in a "continuous and systematic course of doing business" here.  CPLR 301; *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 565 N.E.2d 488, 490 (N.Y. 1990).  Regarding the third ground, a defendant must do "business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'"  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citation omitted).  Under CPLR 302(a), New York's "long-arm statute," a court may not assert specific jurisdiction over a foreign defendant unless the defendant has sufficient contacts with New York ***and*** those contacts give rise to the plaintiff's cause(s) of action against the defendant.  *Forties B LLC v. Am. W. Satellite, Inc.*, 725 F. Supp. 2d 428, 432 (S.D.N.Y. 2010).

If any of the foregoing provisions warrants exercise of jurisdiction under New York or federal law, the Court must further consider whether each defendant has sufficient contacts with the forum that "maintenance of the suit [would] not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).  The Court's exercise of jurisdiction "requires some act by which the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *J. McIntyre Mach., Ltd. v. Nicastro*, --- S. Ct. ----, 2011 WL 2518811, at *1 (June 27, 2011) (citation omitted).  The relevant "question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."  *Id.* at *8.

### 3.  The Complaints Do Not Suffice To Show That This Court Has Personal Jurisdiction Over the Personal Jurisdiction Defendants

Plaintiffs fail to make a *prima facie* showing of general jurisdiction over the Personal Jurisdiction Defendants.  Plaintiffs appear to invoke CPLR 301's "doing business" prong, as none of these defendants consented to jurisdiction or was served while present in New York.  However, the Funds were organized under the laws of other countries and were not open to U.S. investors.  The

Director Defendants and Sonja Kohn, too, are citizens of foreign countries without continuous presences here. PwC Ireland, the Fund and Advisor Defendants and the Holding Companies all are organized under foreign laws; have their offices, employees, records and operations in other countries; and have no places of business in New York.

Specific jurisdiction likewise fails. Plaintiffs do not – and cannot – present any colorable claim that these Defendants committed tortious acts in New York or outside of New York that caused injury within New York. Attempting to rely on CPLR 302's "transacting business" prong to establish specific jurisdiction, Plaintiffs allege that the Funds maintained accounts with Madoff and that certain Defendants met with or communicated remotely with Madoff or BLMIS employees. Plaintiffs also seek to attribute the alleged contacts of some Defendants to others. However, it is well established that "[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York" do not constitute "transacting business" within New York. *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999); *see also Bank Brussels Lambert v. Fiddler, Gonzalez & Rodriguez*, 171 F.3d 779, 787-89 (2d Cir. 1999); *Truesdell v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 722 N.Y.S.2d 523, 524 (1st Dep't 2001). And "physical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302." *Presidential Realty Corp. v. Michael Square W. Ltd.*, 376 N.E.2d 198, 199 (N.Y. 1978).

Moreover, Plaintiffs' claims do not arise from the alleged New York meetings and communications. Nearly all activities relevant to Plaintiffs' claims – relating to the solicitation of investors and review and monitoring of investments – occurred overseas. The alleged sporadic visits and telephone calls with Madoff were not "'of substantive importance'" or "'essential to the ongoing relationship of the parties'" so as to have jurisdictional significance. *Howard v. City Real Estate Corp.*, 84 Civ. 5626, 1985 WL 438, at *2 (S.D.N.Y. Mar. 15, 1985) (citations omitted); *see also Kahn Lucas*

*Lancaster, Inc. v. Lark Int'l, Ltd.*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997) (no jurisdiction where meeting held to discuss existing contract); *I. Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*, 587 F. Supp. 844, 848-49 (S.D.N.Y. 1984) (no jurisdiction where meeting modified terms of existing contract). (*See also* Parts I(A)(3)(a), (b) and (d).)

### (a)     The Director Defendants

Plaintiffs do not allege that Defendants Fielding, Kaniak, La Rocca, Murray, Mugnai, Pfeffer, Saleta, Simon, Spalek, Tiefenbacher, Wheaton or Smith had any contacts with New York. (PC ¶¶ 26-30, 33, 35-36, 90; HC ¶ 580; TC ¶¶ 31-32.) Plaintiffs' allegations that Defendants Brady and Morrissey visited New York (TC ¶ 97) and that Radel-Leszczynski and Alberto and Stephane Benbassat visited Madoff on occasion and communicated remotely with him (PC ¶ 34; TC ¶¶ 93, 138, 216), fall short of demonstrating that those Defendants did business in the state with the "'permanence and continuity'" required to establish general jurisdiction.[5] *Wiwa*, 226 F.3d at 95 (citation omitted); *see also Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001) (multiple business trips per year insufficient) (collecting cases). Moreover, general jurisdiction cannot be asserted over a person not alleged to have "done business" in New York *in his or her individual capacity*. *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 400 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

Specific jurisdiction based on any Director Defendant's alleged New York meetings and communications also fails for the reasons discussed above. And while Plaintiffs attempt to impute to directors all contacts that a Fund had with New York (*see, e.g.*, PC ¶¶ 26-36, 38, 194-95; HC ¶ 61), an individual defendant's "status as a board member is not alone sufficient to establish jurisdiction[.]" *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008), *aff'd sub nom. State Univs. Ret.*

---

[5] Alberto Benbassat's MBA and Stephane Benbassat's former position at a U.S. law firm (TC ¶¶ 29-30) are irrelevant. *See Duravest, Inc. v. Viscardi, A.G.,* 581 F. Supp. 2d 628, 638 (S.D.N.Y. 2008) (jurisdiction determined at time of service).

*Sys. of Ill. V. AstraZeneca PLC*, 334 F. App'x 404 (2d Cir. 2009); *see also In Re DaimlerChrysler AG Sec. Litig.*, 247 F. Supp. 2d 579, 586 (D. Del. 2003).  Absent factual allegations that the entity acted "as the agent of the [director] (rather than vice-versa, as would usually be the case)," jurisdiction over the director fails.  *Duravest, Inc. v. Viscardi, A.G.,* 581 F. Supp. 2d 628, 634 (S.D.N.Y. 2008); *see also In re Banco Santander Secs.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1326 (S.D. Fla. 2010).

### (b)   Sonja Kohn

Plaintiffs' allegations that Sonja Kohn transacted business and resided in New York until 2006 (TC ¶ 21), do not support a finding of general jurisdiction.  *See Duravest*, 581 F. Supp. 2d at 638. And her alleged meetings and communications with Madoff in New York (HC ¶ 330; PC ¶ 19) do not establish specific jurisdiction.  *See Howard*, 1985 WL 438, at *2.  Nearly all conduct relevant to Plaintiffs' claims occurred overseas.

### (c)   PwC Ireland

Plaintiffs fail to plead a *prima facie* case that PwC Ireland is subject to general jurisdiction in New York.  PwC Ireland does not maintain an office in New York and has never been licensed to do business here.  (MacMahon Decl. ¶¶ 9-10.)  Plaintiffs' allegations that PwC Ireland personnel occasionally visit the United States (on matters unrelated to Thema audits) do not establish a "continuous and systematic course of 'doing business' here."  *Landoil*, 565 N.E.2d at 490.

For specific jurisdiction, Plaintiffs also fail to plead adequately that PwC Ireland "transacted business" in New York.[6]  PwC Ireland audited the financial statements of Thema in Dublin.  (Weldon Decl. ¶ 5.)  Another court, evaluating nearly identical allegations, found that "PwC Ireland . . . was not transacting business in New York; it was transacting business in Ireland on behalf of non-United

---

[6] Plaintiffs' allegation that PwC Ireland "traveled to New York to meet with Madoff" (TC ¶ 241) is false.  (Weldon Decl. ¶ 5.)  Moreover, an auditor's receipt of information from New York, for use in an audit conducted abroad, does not create personal jurisdiction in New York.  *See CRT Invs., Ltd. v. BDO Seidman, LLP*, --- N.Y.S.2d ----, 2011 WL 2225050, at *1 (1st Dep't June 9, 2011).

States clients." *Banco Santander*, 732 F. Supp. 2d at 1328-29.

Plaintiffs cannot establish jurisdiction through agency by alleging that PwC Bermuda and PwC U.S. met with Madoff in New York on two occasions with regard to the audit of another fund. (TC ¶¶ 114, 242-243, 287.)  Those allegations do not apply to the Thema audit.  (Weldon Decl. ¶ 7.) Moreover, PwC Bermuda's and PwC U.S.'s conduct cannot confer personal jurisdiction over PwC Ireland where, as here, there is no evidence "PwC Ireland []ever authorized the other PwC entities to act on its behalf" and "PwC Ireland did not exercise any control over any other PwC entity." *Banco Santander*, 732 F. Supp. 2d at 1328; (Weldon Decl. ¶ 6).

### (d)    The Fund and Advisor Defendants

Plaintiffs do not allege general jurisdiction over the Fund and Advisor Defendants.  Nor have Plaintiffs demonstrated that any of those defendants maintained sufficient "minimum contacts" with New York to satisfy either due process or CPLR 302.  The crux of Plaintiffs' jurisdictional allegations is that because the Funds purportedly maintained accounts with Madoff and the Advisors provided investment management services to the Funds, both must have been "transacting business" in New York that caused Plaintiffs' alleged losses.  (*See, e.g.*, TC ¶¶ 94-98; HC ¶¶ 61, 68, 242.)  But while having assets in an account with a licensed New York broker may constitute a form of investment activity, it does not constitute "transacting business" for personal jurisdiction purposes.  *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 998 (2d Cir. 1975) (analyzing predecessor statute to CPLR 301-02); *see also Banco Santander*, 732 F. Supp. 2d at 1320-25 (refusing to exercise jurisdiction over foreign administrators of funds whose assets were held and purportedly invested by Madoff).

Plaintiffs' claims do not arise out of the mere fact that the Funds (or their custodians) had accounts with Madoff, but instead are based on Defendants' alleged conduct in connection with the solicitation of investors or the monitoring of Fund investments.  Virtually all of that conduct occurred outside the United States.  This is particularly true of the Advisor Defendants, who did not themselves

have accounts with Madoff.  Plaintiffs cannot impute conduct of the Funds to the Advisor Defendants (*e.g.*, HC ¶ 68) because they have alleged no facts to show the Advisor Defendants controlled the Funds for their own purposes.  (*See* Part I(A)(3)(c).)

### (e)    The Holding Company Defendants

Plaintiffs allege that the Court has general jurisdiction over HSBC Holdings, PGAM and Bank Austria by virtue of the alleged presence in New York of certain subsidiaries.  (*See, e.g.*, TC ¶ 41; PC ¶ 24.)   In so doing, Plaintiffs do not differentiate between the HSBC Defendants, and provide no basis to ignore their separate legal identities.[7]  Like HSBC Holdings, PGAM is not licensed to do business in New York; and does not own, rent or possess any real property in the State.  (D'Aubney Decl. ¶¶ 5-10; Yates Decl. ¶ 3.)[8]  Nor can Plaintiffs rely on the existence, until 1996, of a local Bank Austria branch office and subsidiaries (HC ¶ 27; PC ¶ 22) to establish jurisdiction.  *See Kwon v. Yun*, 05 Civ. 1142, 2006 WL 416375, at *4 (S.D.N.Y. Feb. 21, 2006).[9]  Their allegations are otherwise deficient.

*First*, Plaintiffs have failed to establish an agency relationship such that "the subsidiary 'does all the business which [the parent company] could do were it here by its own officials.'"  *Jazini*, 148 F.3d at 184 (citation omitted).  Because a holding company's business is to invest in its own subsidiaries, a subsidiary with a different line of business – such as a bank that provides financial services – is not its parent's agent, and personal jurisdiction cannot be established in such a situation. *See J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 549 (S.D.N.Y. 2001).  *Second*,

---

[7] Plaintiffs' allegation that HSBC Holdings had an employee who acted on its behalf in New York is false.  (D'Aubney Decl. ¶ 4.)

[8] The allegation that PGAM operates an office in New York (PC ¶ 24) is false.  (Yates Decl. ¶ 5.)

[9] These allegations are also insufficient to establish specific jurisdiction.  None of the claims relate to services offered at the branch or subsidiaries, or to Bank Austria's alleged opening (and closing) of a proprietary BLMIS account in 1996, but rather stem from alleged activities outside the United States.  (*See* PC ¶ 22, 82-86; HC ¶¶ 193-196, 228-234, 236-250.)

Plaintiffs have failed to establish that the domestic subsidiaries are a "mere department" of HSBC Holdings, PGAM or Bank Austria such that "'the foreign parent's control is pervasive enough that the corporate separation is more formal than real.'" *Reers v. Deutsche Bahn AG*, 320 F. Supp. 2d 140, 150 (S.D.N.Y. 2004) (citation omitted).

<h3 align="center">4.    <u>Exercising Jurisdiction Would Contravene Fairness Principles</u></h3>

Exercising jurisdiction would also run afoul of "'fair play and substantial justice.'" *J. McIntyre Mach.*, 2011 WL 2518811, at *5 (citation omitted); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573, 575 (2d Cir. 1996).  Defendants would be greatly burdened by having to defend themselves thousands of miles from home, where they have no presence.  *See, e.g.*, *Asahi Metal Indus. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987).  Further, as shown immediately below, Plaintiffs can obtain relief in more convenient fora.

<h3>B.    <u>Each Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds</u>[10]</h3>

Plaintiffs are foreign investors in foreign funds not open to American investors, while Defendants are primarily foreign entities that provided services to the Funds in foreign countries.  As the court held in *Banco Santander*, 732 F. Supp. 2d at 1343-44, cases with such a foreign focus should be dismissed under *forum non conveniens*, which considers:  (1) whether an adequate alternative forum exists; (2) whether private and public interest factors favor dismissal; and (3) the level of deference to accord plaintiff's choice of forum.  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc).  Private interest factors include:  (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) cost of obtaining attendance of willing witnesses; (4) enforceability of any judgment; and (5) all other practical issues that make trial easy, expeditious and inexpensive.  *Scottish Air Int'l, Inc. v. British Caledonian Group,*

---

[10] BNY Mellon, a defendant in the Thema Action, does not join this section.  To the extent any claim against it is not dismissed, BNY Mellon contends that New York is the appropriate forum because BNY Mellon's alleged conduct occurred in New York.

*PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).  Public interest factors include:  (1) administrative

difficulties associated with court congestion; (2) imposing jury duty on those whose community bears

no relationship to the litigation; (3) local interest in resolving local disputes; (4) problems in applying

foreign law; and (5) efficiency of combining related suits in a single forum.  *Monegasque de*

*Reassurances S.A.M. v. NAK Naftogaz of Ukraine*, 311 F.3d 488, 500 (2d Cir. 2002).

        1.     **The Thema Action Belongs in Ireland, and the**
                     **Primeo and Herald Actions Belong in Luxembourg**

            (a)     **Ireland and Luxembourg Are Adequate Alternative Forums**

Ireland and Luxembourg easily qualify as adequate alternative forums for the Thema Action

and the Primeo and Herald Actions, respectively.[11]  ***First***, Irish and Luxembourg courts are able to

exercise jurisdiction over the relevant Defendants.  The Thema Fund has an Irish administrator (HSSI)

and an Irish custodian (HTIE) (TC ¶¶ 27, 38-39), an Irish auditor (PwC Ireland) (*id.* ¶ 43) and Irish

legal counsel (William Fry) (*id.* ¶ 48).  In addition, two of its five directors (Gerald Brady and Daniel

Morrissey) are Irish residents.  (Weldon Decl. ¶ 14.)  Likewise, several Defendants in the Primeo and

Herald Actions are domiciled in Luxembourg, including Herald Lux, HSSL, EY Lux and one Fund

director.  (Prüm Decl. ¶ 20; PC ¶¶ 30, 42, 44; HC ¶¶ 15, 33, 37, 310.)  Most other Defendants in all

three actions are domiciled in Europe, and Irish and Luxembourg courts would have power to exercise

jurisdiction over them in a re-filed action based on their European domicile.  (*See* Sanfey Decl. ¶¶ 4.1-

4.4; Prüm Decl. ¶ 21.)  Moreover, subject to the dismissal of this action on *forum non conveniens*

grounds, each Defendant who has entered an appearance – except for JPM and BNY Mellon

(discussed in Part I(B)(3)) – consents to jurisdiction in Ireland to determine the validity of the Thema

Plaintiff's claims, and in Luxembourg to determine the validity of the Primeo and Herald Plaintiffs'

---

[11] The Court need not examine the adequacy of the alternative forum for Defendants whom it
dismisses on other grounds.  *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74
(2d Cir. 1998).

claims.[12]  That consent suffices.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75

(2d Cir. 2003); (Sanfey Decl. ¶ 4.5; Prüm Decl. ¶ 22).

> **Second**, Ireland and Luxembourg permit litigation of the subject matter of the dispute.  *See*

*Monegasque*, 311 F.3d at 499.  Irish law recognizes actions in tort and contract against investment

funds and their managers, promoters, directors, custodians, administrators, auditors and law firms.

(*See* Sanfey Decl. ¶ 5.1.)  Indeed, U.S. courts have repeatedly found Ireland to be an adequate

alternative forum, including in a similar case by foreign shareholders of an unrelated fund that

invested with Madoff.  *See Banco Santander*, 732 F. Supp. 2d at 1332-33 & n.16.  Likewise, U.S.

courts have found Luxembourg to be an adequate forum.  *See Republic of Panama v. BCCI Holdings*

*(Luxembourg) S.A.*, 119 F.3d 935, 951-52 (11th Cir. 1997); *Overseas Nat'l Airways, Inc. v. Cargolux*

*Airlines Int'l, S.A.*, 712 F.2d 11, 14 (2d Cir. 1983).  Luxembourg law also recognizes similar tort and

contract claims as asserted here.  (*See* Prüm Decl. ¶¶ 23-25.)  The adequacy of Irish and Luxembourg

courts to hear claims by the Funds' investors is further established by the fact that they are already

doing so in numerous Fund-related actions before the Irish High Court and Luxembourg District

Court, several of which involve the same Defendants as here.  (*See* Sanfey Decl. ¶ 5.2-5.3; Daly Decl.

¶¶ 4-8; Prüm Decl. ¶ 13-15; Delvaux Decl. ¶ 13.)

> **(b)      Ireland and Luxembourg Are the Most Appropriate Forums**

> Ireland and Luxembourg are also the most appropriate forums.  **First**, both jurisdictions have

an undeniably significant interest in policing conduct within their borders by investment funds and

financial institutions organized and regulated under their laws.  *See Pollux Holding*, 329 F.3d at 76;

*LaSala v. Bank of Cyprus Public Co.*, 510 F. Supp. 2d 246, 263 (S.D.N.Y. 2007); *Banco*

---

[12] Herald SPC and EY Cayman join in the argument that Luxembourg is an adequate and
appropriate alternative forum and agree that this case does not belong in New York.  However,
each believes that the Cayman Islands, the fund's jurisdiction of incorporation, also would be an
adequate forum (though certain Defendants may not be subject to jurisdiction there).

*Santander*, 732 F. Supp. 2d at 1312.  Thema is organized under Irish laws implementing a European

Union directive for investment funds known as UCITS (Sanfey Decl. ¶ 8.5; TC Ex. 2, at 2, 12); and

Thema, its Irish administrator (HSSI), its custodian (HTIE) and its auditor (PwC Ireland) are each

overseen by Irish regulators (MacMahon Decl. ¶ 4; Sanfey Decl. ¶ 8.2).  Herald Lux (a UCITS fund

organized under Luxembourg law), its Luxembourg administrator and custodian (HSSL) and its

auditor (EY Lux) are each overseen by Luxembourg regulators.  (Prüm Decl. ¶ 41.)  HSSL also was

administrator and custodian to Herald SPC and sub-administrator and custodian to Primeo.  (HC ¶ 75;

PC ¶ 44.)  The United States, by contrast, has no such interest, as none of the Funds' shareholders was

American, and the SEC does not regulate the Funds or their auditors, administrators or custodians.

(*E.g.*, TC Ex. 2, at 3.)

  **Second**, over 60 Thema investors who collectively claim interests in over 20% of Thema's

shares have already brought suit in Ireland against some of the Defendants named in this action, and

Thema itself has brought an action in Ireland against one or more of the Defendants named here.

(Daly Decl. ¶ 6; Wiles Decl. ¶¶ 12- 13.)  Those actions are currently in discovery in Ireland.  Similarly,

investors in Herald Lux, Herald SPC and Primeo have brought similar claims in Luxembourg arising

out of the same facts against an overlapping group of defendants.  (Prüm Decl. ¶¶ 13-15, 31.)

Therefore, "values of judicial economy and integrity in the administration of justice . . . militate

against plaintiffs' desire to keep the case in [the Southern District]."  *LaSala*, 510 F. Supp. 2d at 267;

*see also Abert Trading, Inc. v. Kipling Belgium N.V./S.A.*, 00 Civ. 0478, 2002 WL 272408, at *3

(S.D.N.Y. Feb. 26, 2002) (Berman, J.) (granting *forum non conveniens* dismissal because parallel

litigation was pending in Belgium).

  **Third**, the need to apply foreign law weighs in favor of dismissal.  *See Banco Santander*, 732

F. Supp. 2d at 1339-44; *Abert Trading*, 2002 WL 272408, at *6.  As demonstrated in Part III(A), if

this case were tried in New York, foreign law would govern Plaintiffs' claims against all the

Defendants except JPM and BNY Mellon.  If the Thema Action were re-filed in Ireland, Irish law would apply to most of the claims (Sanfey Decl. ¶¶ 10.1-14.1), while some, if not all, shareholders in Herald Lux and certain shareholders in Primeo agreed in their subscription agreements that "any dispute concerning our investment in [the Fund] . . . will be settled in Luxembourg according to Luxembourg Law."[13]  (Davis Decl. ¶ 3.)  As the *Banco Santander* court held, "it makes little sense for a United States court to try an action where choice of law rules dictate that foreign law will supply the rules of decision for the Plaintiffs' common law claims."  732 F. Supp. 2d at 1312; *see also id.* at 1333 n.15.  Moreover, the mandatory forum selection clause in certain of the Herald Lux and Primeo subscription agreements (Prüm Decl. 28) and in the contracts between Thema and PwC Ireland (Weldon Decl. ¶ 4) (the rights under which the Thema plaintiff is seeking to enforce derivatively) should be applied, and the actions dismissed in favor of the forums selected by the parties.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007); *see also Kirschner v. KPMG LLP*, 938 N.E.2d 941, 958-59 (N.Y. 2010).

**Fourth**, it is unlikely that a U.S.-style opt-out damages class action judgment or settlement would be recognized in Ireland (Sanfey Decl. ¶ 9.1),[14] Luxembourg (Prüm Decl. ¶¶ 43-44) or other countries where Fund shareholders reside.  *See In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 287 (S.D.N.Y. 2008); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 06-MD-1775, 2008 WL 5958061, at *28 (E.D.N.Y. Sept. 26, 2008).  The likelihood that a judgment in this Court would not ultimately

---

[13] Other shareholders in Primeo (who invested when a different subscription agreement was in place) agreed to the application of Cayman law, as did at least some investors in Herald SPC. However, Luxembourg courts have experience applying Cayman law in cases involving Madoff-related funds.  (*See* Prüm Decl. ¶¶ 29-30.)

[14] HSBC disagrees and believes that Ireland, which is the relevant jurisdiction where Irish-domiciled service providers to the Thema Fund HSSI and HTIE would be subject to jurisdiction, is highly likely to enforce a class action judgment, as would other common law jurisdictions such as the U.K.  *See In re Alstom S.A. Sec. Litig.*, 253 F.R.D. 266, 289 (S.D.N.Y. 2008); *In re Vivendi Universal, S.A. Securities Litigation*, 242 F.R.D. 76, 102-03 (S.D.N.Y. 2007).

resolve the claims classwide supports dismissal. *See Banco Santander*, 732 F. Supp. 2d at 1339; *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, 499 F. Supp. 2d 437, 451 (S.D.N.Y. 2007), *aff'd sub nom. Geier v. Omniglow Corp.*, 357 F. App'x 377 (2d Cir. 2009), *cert. denied*, 131 S. Ct. 1491 (2011).

*Fifth*, obtaining access to witnesses and pertinent documentary evidence, as well as the trial testimony of witnesses, will be far easier and less expensive in Ireland and Luxembourg.  Except for a handful of uniquely-situated Defendants, none of the Defendants or named Plaintiffs is located in New York.  (HC ¶¶ 8-52; PC ¶¶ 15-56; TC ¶¶ 15-61.)  Two of the five Thema Fund directors reside in Ireland.  (TC ¶¶ 29-37.)  All HSBC employees involved in the administration and custody of Thema's assets were based in HSSI's and HTIE's Dublin offices.  (Weldon Decl. ¶¶ 16-22.)  Almost all of PwC Ireland's partners and employees who worked on the Fund's audits still reside in Ireland, as do the William Fry partners and employees who provided legal services to Thema.  (*Id.* ¶¶ 1, 3, 10-12, 15.)  HSSI's documents relating to the administration of Thema are in Ireland, as are the documents belonging to HTIE, the Fund's custodian.[15]  (*Id.* ¶¶ 16, 19, 22.)  PwC Ireland's audit workpapers are located in Ireland.  (MacMahon Decl. ¶ 7.)  Additional evidence, such as documents related to Thema's organization, may be in the possession of William Fry.[16]  (TC ¶ 48.)

With respect to the Primeo and Herald Funds, the vast majority of witnesses and documents will be found in Luxembourg and Europe, where most of the parties and witnesses are located, including HSSL, the funds' custodian for several years.  (*See, e.g.*, HC ¶ 575.)  There are four

---

[15] Parties may be prohibited from transferring such documents to the United States by EU Directive 95/46, 1995 O.J. (L 281), which permits the transfer of personal data (broadly defined) to a non-EU country only if the country ensures an "adequate level of protection," *id.* art. 25 – which many European courts believe the United States does not provide.

[16] Some other Defendants (and their documents) may be located in Switzerland, the British Virgin Islands, Austria, Italy or Luxembourg (TC ¶¶ 16-26, 49-53, 179-186; Weldon Decl. ¶ 14); however, the location of documents (and witnesses) in these countries only confirms that New York is an inappropriate forum.

Luxembourg Defendants (Herald Lux, HSSL, EY Lux and Nigel Fielding) and at least *twenty* others in Europe.  (HC ¶¶ 23-26, 35, 38, 48; PC ¶¶ 18, 21, 22, 26-29, 34, 35, 39, 43, 54.)  While it is possible that some witnesses in each of the three actions will come from the United States, such as former employees of BLMIS, the American witnesses will be far fewer than those from Europe.  *See Banco Santander*, 732 F. Supp. 2d at 1337.  Further, the cost of obtaining the attendance of willing witnesses at trial will be considerably less if the actions are tried in Ireland and Luxembourg because the witnesses' travel costs and time would be considerably diminished.

**Sixth**, witnesses outside of Defendants' control are more likely accessible to Irish and Luxembourg courts than to New York's.  *See Banco Santander*, 732 F. Supp. 2d at 1337-38.  A number of material witnesses from HSSI, HTIE, PwC Ireland and William Fry are no longer employed by Defendants and reside outside the United States.  (Weldon Decl. ¶ 10-12, 22.)  The Irish High Court in Dublin has nationwide subpoena power and could compel these witnesses to appear live at a trial in Ireland.  (*See* Sanfey Decl. ¶ 7.1.)  Likewise, in Luxembourg courts may call witnesses from both inside and outside Luxembourg irrespective of nationality or residency, and often do.  (*See* Prüm Decl. ¶¶ 37-40.)

**Seventh**, it would unduly burden this Court and a New York jury to hold a trial involving foreign parties when very little of Defendants' alleged conduct took place here.

**Eighth**, this litigation is likely to proceed quickly in the Irish and Luxembourg courts.  If the Thema Action were dismissed to Ireland, and the Herald and Primeo Actions were dismissed to Luxembourg, they could proceed in a coordinated fashion with other Funds-related actions already pending in those jurisdictions.  (*See* Sanfey Decl. ¶¶ 6.6-6.11; Prüm Decl. ¶ 13.)

## 2.    <u>Plaintiffs' Choice of a U.S. Forum Deserves Little Deference</u>

None of the named Plaintiffs is from the United States.  (TC ¶ 15; PC ¶¶ 15-16; HC ¶ 8.)  There is no reason to believe that any putative class member is from the United States either, as shares

in the Herald, Primeo and Thema Funds could not be sold to U.S. citizens or residents.  (*See, e.g.*, TC Ex. 2, at 3; Bagnall Decl. Ex. E at 2.)  Plaintiffs have also proposed to dismiss their Section 10(b) claims to avoid an impermissible extraterritorial application of the U.S. securities laws.[17]  Plaintiffs therefore have no "bona fide connection to the United States" or this forum, *Iragorri*, 274 F.3d at 71, and their choice of forum is entitled to little deference.  *Pollux Holding*, 329 F.3d at 71.

### 3.     The Assertion of Claims Against U.S. Defendants Does Not Justify Keeping Unrelated Foreign Defendants in an Inconvenient Forum

As noted above, in the event this action is dismissed on *forum non conveniens* grounds, all Defendants who have appeared consent to jurisdiction in Ireland or Luxembourg to resolve Plaintiffs' claims, except for the JPM and BNY Mellon Defendants, who have no relationship to the Funds or their respective service providers.[18]  The claims against JPM and BNY Mellon do not relate to any services provided to the Funds.  Rather, they are sued for their alleged conduct with respect to BLMIS, unconnected to the Funds.  (*See* HC ¶¶ 36, 430-85; TC ¶¶ 312-68.)

Plaintiffs' inclusion of the JPM and BNY Mellon Defendants does not prevent *forum non conveniens* dismissal.  Since the claims against those Defendants – like the claims against all Defendants – are without merit, the Court may dismiss them and then the rest of the case for *forum non conveniens.  See Yung v. Lee*, 00 Civ. 3965, 2002 WL 31008970, at *3-4 (S.D.N.Y. Sept. 5, 2002), *aff'd*, 160 F. App'x 37 (2d Cir. 2005); *see also Scottish Air*, 81 F.3d at 1235 (litigants cannot "skew the

---

[17] The court should also consider the deficiencies in the merits of the class claims at an early stage. *See Wal-Mart Stores, Inc. v. Dukes*, --- S. Ct. ----, 2011 WL 2437013, at *10 n.6 (June 20, 2011). The fact is, Plaintiffs cannot assert a viable class action because they cannot establish common reliance.  Plaintiffs, for example, cannot rely on any "fraud on the market" theory to establish a rebuttable presumption of such reliance because the securities at issue were not traded in an open, efficient market. *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).

[18] The Madoff Defendants and BLMIS's auditor, Friehling & Horowitz, have not appeared.  The action against the Madoff Defendants should be severed because those claims have been stayed pending the outcome of the BLMIS bankruptcy (Dkt. 58).  *See Coface v. Optique du Monde, Ltd.*, 521 F. Supp. 500, 511 (S.D.N.Y. 1980).

[*forum non conveniens*] analysis by joining claims that lack merit").

### C.   This Court Should Abstain From Claims Asserted on Behalf of Herald Lux Investors

Abstention is generally required where a foreign bankruptcy proceeding is pending, and a plaintiff attempts to assert in federal court claims that "actually belong to [the bankrupt estate], and therefore concern property involved in the [foreign] bankruptcy proceeding." *United Feature Syndicate, Inc v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 213 (S.D.N.Y. 2002); *accord Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). In this instance, the Luxembourg District Court has appointed liquidators to represent Herald Lux and its shareholders and to bring litigation on their behalf (which the liquidators have done). (Burg Decl. ¶ 16.) In addition, considerations of comity, including "the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction," *Royal & Sun Alliance*, 466 F.3d at 94, all support abstention. (*See, e.g.*, Burg Decl. ¶ 16.)

## II.   PLAINTIFFS' CLAIMS ARE BARRED, IN WHOLE OR IN SIGNIFICANT PART, BY NUMEROUS LEGAL DOCTRINES

### A.   All Common Law Claims Are Barred by SLUSA

Regardless of the jurisdiction in which they are heard, all of Plaintiffs' claims are meritless and should be dismissed. To begin with, all of their common law claims are barred by SLUSA. To curb the widespread abuse of the class action device in securities cases, Congress enacted the PSLRA in 1995. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (discussing legislative history). While the PSLRA succeeded in facilitating the summary disposition of meritless securities claims, it had the unintended consequence of encouraging plaintiffs to evade the requirements of the statute by recasting their federal claims as causes of action arising under state

law.  *See id.* at 82.  Congress responded in 1998 by enacting SLUSA, which provides in pertinent part:

> No covered class action based upon the statutory or common law of any State . . . may be maintained in any State or Federal Court by any private party alleging – (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1); *see also Romano v. Kazacos*, 609 F.3d 512, 517-18 (2d Cir. 2010).

### 1.     SLUSA Preclusion Is Applied Broadly

In *Dabit*, the Supreme Court held that SLUSA preclusion should be given a "broad construction."  547 U.S. at 85; *see also Romano*, 609 F.3d at 521-23.  The Court ruled that, consistent with the statute's remedial goals, SLUSA precludes class actions based on state law that allege deception in connection with the purchase or sale of covered securities even if the allegations otherwise fail to state a claim under Section 10(b) of the Exchange Act.  *See Dabit*, 547 U.S. at 84.  In this vein, the Court also held that claims based on the alleged *failure* to buy or sell covered securities fall squarely within SLUSA's ambit.  *See id.* at 88-89; *see also Instituto de Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1348-50 (11th Cir. 2008); *Schnorr v. Schubert*, CIV-05-303-M, 2005 WL 2019878, at *5-6 (W.D. Okla. Aug. 18, 2005).

In so holding, the Court explained that, while "one might have concluded that an alleged fraud is 'in connection with' a purchase or sale of securities only when the plaintiff himself was defrauded into purchasing or selling particular securities[, . . . u]nder our precedents, it is enough that the fraud alleged '*coincide*' with a securities transaction – whether by the plaintiff *or by someone else*."  *Dabit*, 547 U.S. at 85 (emphases added) (citations omitted); *see also Romano*, 609 F.3d at 522 (SLUSA's "in connection with" requirement is satisfied whenever alleged misstatements or transactions "necessarily involve," "necessarily allege" or "rest on" the purchase or sale of a covered security).

### 2.     Every Element of SLUSA Preclusion Is Satisfied Here

Virtually every attempt by an investor in an investment fund whose assets were held and

purportedly invested by Madoff to assert common law class action claims has been rejected under SLUSA. *See In re Kingate Mgmt. Ltd. Litig.*, 09 Civ. 5386, 2011 WL 1362106, at *6-9 (S.D.N.Y. Mar. 30, 2011); *In re J.P. Jeanneret Assocs.*, 09 Civ. 3907, 2011 WL 335594, at *33 (S.D.N.Y. Jan 31, 2011); *Wolf Living Trust v. FM Multi-Strategy Inv. Fund, L.P.*, 09 Civ. 1540, 2010 WL 4457322, at *2-3 (S.D.N.Y. Nov. 2, 2010); *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311-13 (S.D.N.Y. 2010); *In re Beacon Assocs., Litig.*, 745 F. Supp. 2d 386, 429-31 (S.D.N.Y. 2010); *Barron v. Igolnikov*, 09 Civ. 4471, 2010 WL 882890, at *3-5 (S.D.N.Y. Mar. 10, 2010); *Backus v. Conn. Cmty. Bank, N.A.*, 3:09-CV-1256, 2009 WL 5184360, at *4-10 (D. Conn. Dec. 23, 2009).

This case should be treated no differently, as each element of SLUSA preclusion is met. Plaintiffs: (1) seek to represent a covered class, 15 U.S.C. § 78bb(f)(5)(B), of more than fifty people and/or consisting of themselves and unnamed parties similarly situated (HC ¶¶ 640-41; PC ¶¶ 196-97; TC ¶¶ 409-10); (2) assert claims purportedly based on state law (HC ¶¶ 646-805; PC ¶¶ 202-406; TC ¶¶ 417-543); (3) contend that Defendants or others deceived them and/or made material misstatements or omissions;[19] and (4) claim that Defendants did so in connection with Madoff's fraudulent scheme by which he falsely claimed to purchase and sell "covered securities," 15 U.S.C. § 78bb(f)(5)(E), *i.e.*, "equity securities [and . . . o]ptions related to S&P 100 companies[.]" (PC ¶¶ 58-59; *see also, e.g.*, HC ¶¶ 488-500; PC ¶¶ 182-86; TC ¶¶ 319, 346.) Accordingly, Plaintiffs' putative common law class claims are barred by SLUSA and should be dismissed.

## B.   Certain Common Law Claims Are Barred by the Martin Act

As this Court and others have recognized, common law claims based on conduct allegedly

---

[19] (HC ¶¶ 3, 54, 231, 308, 324, 338, 378, 380, 381, 384-86, 388, 390, 394, 395, 396, 399, 404, 407, 408, 410, 411, 414-17, 420, 421, 424, 426, 427, 429, 568-87, 628, 637, 646, 648, 649, 651, 655, 661, 673, 682, 691, 698, 704, 712, 720, 728, 735, 747, 757, 767, 772, 777, 791, 796-98, 801, 803-06, 814, 816, 819; PC ¶¶ 13, 23, 56, 63-68, 95, 202, 214, 223, 232, 239, 245, 253, 267, 275, 279, 286, 296, 303, 310, 320, 326, 332, 337-55, 356, 357, 361-83, 387-92, 395-403; TC ¶¶ 228, 310, 313, 317, 319, 334, 335, 345, 352, 364, 390-95, 417, 426, 435, 449, 463, 469, 475, 481, 487, 491, 495, 499, 503, 511, 518, 522, 528, 534, 539.)

occurring in or from New York that do not require proof of scienter are preempted by New York's

Martin Act, N.Y. Gen. Bus. Law §§ 352 *et seq.*[20]  *See Castellano v. Young & Rubicam, Inc.*, 257 F.3d

171, 190 (2d Cir. 2001); *Jain v. T & C Holding, Inc.*, 10 Civ. 1006, 2011 WL 814659, at *6 (S.D.N.Y.

Mar. 3, 2011) (Berman, J.) ("Plaintiffs' claims of negligence, unjust enrichment, and breach of

fiduciary duty . . . ar[e] preempted by New York's Martin Act.").

Plaintiffs' common law claims alleged to be based on conduct within or from New York are

precisely the type of claims relating to investments with Madoff that, with just one exception, every

court in this District has held are preempted by the Martin Act under the Second Circuit's holding in

*Castellano*.  *See Jeanneret*, 2011 WL 335594, at *33 ("This Court, applying *Castellano*, holds that the

Martin Act preempts claims of the nature asserted by Plaintiffs"); *Beacon Assocs.*, 745 F. Supp. 2d at

431-34; *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 615-16 (S.D.N.Y. 2010) (dismissing

gross negligence and aiding and abetting claims and noting, "[t]his is not the only court dealing with

state law claims related to the Madoff fraud to recently so find"); *Meridian Horizon Fund, L.P. v.

Tremont Grp. Holdings, Inc.*, 747 F. Supp. 2d 406, 415-16 (S.D.N.Y. 2010); *In re Tremont Secs. Law,

State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 372-73 (S.D.N.Y. 2010);  *Barron*, 2010 WL 882890, at

*5-6; *but see Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 354, 371 (S.D.N.Y. 2010).[21]  To the

---

[20] "[A] transaction is 'within or from' New York for purposes of the Martin Act if a plaintiff alleges that a 'substantial portion' of the events giving rise to the claim occurred in New York." *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 617 (S.D.N.Y. 2010) (citation omitted).

[21] Plaintiffs may point to cases in which intermediate New York state courts have recently abandoned their own holdings with respect to Martin Act preemption.  *See Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 915 N.Y.S.2d 7 (1st Dep't 2010); *CMMF, LLC v. J.P. Morgan Inv. Mgmt., Inc.*, 915 N.Y.S.2d 2 (1st Dep't 2010).  But courts within this District are bound by the Second Circuit's determination in *Castellano* as to how the New York Court of Appeals would decide the issue, and thus these intermediate state court rulings are irrelevant.  *See Jeanneret*, 2011 WL 335594, at *33 ("Appellate Division opinions are not the last word on the subject, and the recent Appellate Divison opinions cited by Plaintiffs represent a shift from earlier pronouncements. . . . Until [a Court of Appeals] ruling comes down (and it is far from clear that it will), this Court is bound to apply the result in the only Second Circuit case that addresses the

*(cont'd)*

extent there is a sufficient territorial nexus to apply New York common law to any particular non-fraud claim (for example, against JPM or BNY Mellon), that claim should be dismissed.

### C.   Plaintiffs Lack Standing Under Governing Irish, Cayman Islands and Luxembourg Law

Each common law claim should also be dismissed for lack of standing.[22]  Plaintiffs fail to allege any injury distinct from the injuries suffered by the Funds.  Rather, Plaintiffs allege that as a result of Madoff's theft, each Fund's assets were greatly diminished or wiped out, resulting in a corresponding loss in value of Plaintiffs' shares.  (*E.g.*, TC ¶¶ 14-15, 18, 75, 433, 485; PC ¶¶ 7, 72-73; HC ¶¶ 1, 8-9, 83, 358, 574, 668.)  Because each shareholder suffered an alleged common injury in direct proportion to the number of shares owned, each injury is necessarily derivative of any injury to the Funds.  Under the governing laws of Ireland, the Cayman Islands and Luxembourg, claims to recover for this injury belong exclusively to the Funds.[23]

#### 1.   Irish and Cayman Islands Law

Under Irish and Cayman Islands law, a shareholder does not have standing to sue for investment losses that depend upon an injury to a company.  Such shareholder claims are barred by

---

*(cont'd from previous page)*

subject of Martin Act preemption."); *Jain*, 2011 WL 814659, at *6; *In re Wachovia Equity Secs. Litig.*, 753 F. Supp. 2d 326, 381 (S.D.N.Y. 2011); *Iroquois Master Fund, Ltd. v. CEL-SCI Corp.*, No. 09 CV 8912, 2011 WL 1216688, at *3 (S.D.N.Y. Mar. 28, 2011); *Horvath v. Banco Comercial Portugues, S.A.*, No. 10 Civ. 4697, 2011 WL 666410, at *7-8 (S.D.N.Y. Feb. 15, 2011); *In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030, 2011 WL 536437, at *12 n.6 (S.D.N.Y. Feb. 9, 2011).

[22] Plaintiffs have the burden of expressly and clearly establishing standing on the face of their complaints.  *See Thompson v. Cmty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994).

[23] Whether the shareholder Plaintiffs have standing to sue (or the claims asserted by them can only be pursued by the Funds themselves) is governed by the law of each Fund's place of incorporation.  *See Howe v. Bank of N.Y. Mellon*, 09 Civ. 10470, 2011 WL 781940, at *5 (S.D.N.Y. Mar. 4, 2011); *Newman*, 748 F. Supp. 2d at 314.  Underpinning this conclusion is the internal affairs doctrine, which requires that "questions relating to the internal affairs of corporations [be] decided in accordance with the law of the place of incorporation." *Scottish Air*, 81 F.3d at 1234.  That is Ireland for the Thema Fund, Luxembourg for Herald Lux, and the Cayman Islands for Herald SPC and Primeo.

22

the rule of reflective loss.  (*See* Sanfey Decl. ¶¶ 15.10-15.12; Bagnall Decl. ¶¶ 24-28.)  *See also Druck Corp. v. Macro Fund (U.S.) Ltd.*, 02 Civ. 6164, 2007 WL 258177, at *1 (S.D.N.Y. Jan. 29, 2007), *aff'd*, 290 F. App'x 441 (2d Cir. 2008); *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1332 (S.D.N.Y. 1997).  The seminal English case *Prudential Assurance Co. v. Newman Industries* lays out the governing principle of law:

> [A shareholder] cannot … recover damage merely because the company in which he is interested has suffered damage.  He cannot recover a sum equal to the diminution in the market value of his share, or equal to the likely diminution in dividend, because such a 'loss' is merely a reflection of the loss suffered by the company.  The shareholder does not suffer any personal loss.  His only 'loss' is through the company, in the diminution of the net assets of the company, in which he has (say) a 3% shareholding.

(Sanfey Decl. ¶ 15.10.)

The subsequent English House of Lords decision in *Johnson v. Gore Wood & Co.* made clear that "there is no discretion involved" in the application of this principle:

> If the shareholder is allowed to recover in respect of such loss, then either there will be double recovery at the expense of the defendant or the shareholder will recover at the expense of the company and its creditors or other shareholders.  Neither course can be permitted.

(Bagnall Decl. ¶ 25; Sanfey Decl. ¶ 15.11.)[24]  The courts of both Ireland and the Cayman Islands consistently apply this rule of reflective loss, requiring dismissal here.  (*See* Sanfey Decl. ¶ 15.10-15.12; Bagnall Decl. ¶ 28.)  In fact, in a recent decision, the Luxembourg Commercial Court dismissed a claim brought by a Herald SPC investor.  (*See* Prüm Decl. ¶ 29.)  The court applied Cayman law and, citing *Johnson*, found that the investor had no standing to pursue claims for damages that were merely reflective of the fund's loss.

---

[24] This principle is of heightened significance where, as in the case of Primeo, the company is in court-supervised liquidation since a direct shareholder suit could result in shareholders improperly receiving fund assets ahead of other creditors.  (*See* Bagnall Decl. ¶ 27.)

2.    **Luxembourg Law**

These claims fail for the same reasons under Luxembourg law.  As Luxembourg courts have already ruled, individual investors in Luxembourg funds that invested with Madoff have no standing to bring claims for losses suffered equally by all investors.  (*See* Prüm Decl. ¶¶ 51-56; Delvaux Decl. ¶¶ 6-7.)[25]  Such claims belong to the fund itself or its liquidators.  (*See* Prüm Decl. ¶ 51; Delvaux Decl. ¶¶ 6-14.)  Plaintiffs plead no applicable exceptions to this well-established rule.  (*See* Prüm Decl. ¶¶ 51-56.)  Moreover, for the Herald Lux Fund, which is in compulsory liquidation in Luxembourg, the court-appointed liquidators have expressly been given exclusive authority to represent the fund, fund creditors ***and*** *investors* for all alleged losses suffered by Herald Lux.  (Delvaux Decl. ¶ 12-14; Burg Decl. Ex. A.)  Pursuant to this authority, on March 17, 2010, the liquidators brought proceedings against parties including HSSL, Bank Medici AG, the Herald Lux directors and EY Lux in the Luxembourg District Court.  (Burg Decl. ¶ 16.)  Further, once the liquidators were appointed, a mandatory stay of all other proceedings relating to the fund went into effect.  (*Id.* ¶¶ 19-20; Delvaux Decl. ¶¶ 15-16.)  Plaintiffs' claims against Herald Lux violate the Luxembourg stay (Delvaux Decl. ¶¶ 15-16), and their claims against Herald Lux, the HSBC entities and the EY firms relating to that fund should be dismissed for lack of standing and comity (*see* Part I(C)).  Moreover, because class action judgments are not recognized in Luxembourg (*see* Prüm Decl. ¶¶ 43-44), there is a real risk that defendants in the Luxembourg proceedings would be exposed to double liability (*see* Delvaux Decl. ¶ 11) if this action were to proceed.  (Any U.S. class judgment would not bind investors or the liquidator in Luxembourg, who could obtain judgments for the same alleged losses.)  Such risks were a significant consideration in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), and

---

[25] This principle was recently applied in a case involving another Madoff-related fund in liquidation in Luxembourg, LuxAlpha. There, the Luxembourg Commercial Court rejected all claims that individual investors attempted to bring against EY Lux, UBS (LuxAlpha's custodian) and others.  (*See* Prüm Decl. ¶¶ 51-56; Delvaux Decl. ¶ 7.)

provide an additional basis for dismissal.

The result would be the same under New York law because Plaintiffs, as investors, lack standing to bring claims belonging to the Funds. *See, e.g., Druck Corp.*, 290 F. App'x. at 443-44; *Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975).

### D.   The Thema Plaintiff's Derivative Claims Should Be Dismissed

Recognizing that this Court may find that their claims are derivative and may not be pursued in a class action on behalf of shareholders, the Thema Plaintiffs purport to bring a separate set of derivative claims. (TC ¶¶ 396-397.)  These derivative claims fail for two reasons. *First*, Plaintiffs lack standing to bring derivative claims under Irish law by the rule of *Foss v. Harbottle* [1843] 2 Hare 461.  The Thema Complaint's assertion to the contrary notwithstanding (TC ¶¶ 398-408), Plaintiffs fail to satisfy the requirements for either of the two exceptions to the rule claimed by them. (*See* Sanfey Decl. ¶¶ 15.14-15.16.)  Plaintiffs cannot make out the "fraud on the minority" exception because they do not (and cannot) allege that the Thema directors hold a controlling interest in the shares of the Thema Fund.  Nor do Plaintiffs allege any *ultra vires* acts, outside the Thema directors' authority. (*See id.* ¶¶ 15.15-15.17.)  *See also Seghers v. Thompson*, 06 Civ. 308, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (Berman, J.).  *Second*, Plaintiffs face an impermissible conflict of interest in bringing claims against the Thema Fund on behalf of its investors while at the same time purporting to bring other claims on the Fund's behalf.  A "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders[.]" Fed. R. Civ. P. 23.1(a).[26]  "A plaintiff who maintains a direct claim against a corporation is not a fair and adequate representative of other shareholders in enforcing a right of the corporation derivatively." *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 09 MD 2058, 2010 WL 5248815, at *1 (S.D.N.Y.

---

[26] Rule 23.1 is a procedural rule.  *See RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1329-30 (2d Cir. 1991).  The requirement of fair and adequate representation thus applies in federal court regardless of the source of substantive law governing standing to bring derivative claims.

Dec. 14, 2010).  This "'impermissible conflict of interest,'" *Priestly v. Comrie*, 07 CV 1361, 2007 WL 4208592, at *5 (S.D.N.Y. Nov. 27, 2007) (citation omitted), requires dismissal.[27]

### E.    The Non-Fund Defendants Owed No Duties to Plaintiffs[28]

Under governing Cayman, Luxembourg and Irish law, each of the Funds is a distinct legal entity separate and apart its shareholders.  (*See* Bagnall Decl. ¶ 11; Prüm Decl. ¶ 47; Sanfey Decl. ¶ 15.13.)  A direct corollary of that rule is the principle that officers, directors and service providers of investment funds generally owe duties, if at all, "'to the [funds], and not the individual stockholders.'"[29]  *Seghers*, 2006 WL 2807203, at *7 (citation omitted); *see also W. Palm Beach Police Pension Fund v. Collins Capital Low Volatility Performance Fund II, Ltd.*, 09-80846-CIV., 2010 WL 2949856, at *3 (S.D. Fla. July 26, 2010).  (*Accord* Bagnall Decl. ¶¶ 38-39; Ritchie Decl. ¶¶ 9-18; Prüm Decl. ¶¶ 47-51; Shipsey Decl. ¶¶ 16-18.)  These rules bar the duty-based claims (including breach of contract, breach of fiduciary duty and all forms of negligence) asserted by Plaintiffs against most, if not all, of the Non-Fund Defendants.  It is not enough for the Complaints to allege conclusorily that Defendants owed Plaintiffs duties.  *See Seghers*, 2006 WL 2807203, at *6-7; *accord Joyce v. Morgan Stanley & Co.*, 538 F.3d 797, 800-03 (7th Cir. 2008).  To establish potential liability to Fund shareholders, a complaint must allege facts sufficient to establish that each such Defendant voluntarily accepted duties to the shareholders above and beyond those owed to the Funds themselves. *See Joyce*, 538 F.3d at 802.  The Complaints do not and cannot satisfy that requirement.

---

[27] HSBC sees no conflict between being a class action plaintiff seeking to represent Thema's shareholders who suffered loss in their claims against potentially responsible parties and asserting on behalf of that same class the claims that Thema may have against its directors and service providers.  To the extent the text suggests otherwise, HSBC disagrees.

[28] Thema agrees that Plaintiffs have not alleged violations of duties owed to Plaintiffs (as opposed to the Funds) but otherwise does not join this section.  The Herald Funds do not join this section and reserve all rights with respect to the arguments made in it.

[29] *A fortiori*, no duties are owed to the Funds' shareholders by any parent company or alleged affiliate of any such officer, director or service provider, or anyone who might allegedly be directing such a party as an "agent."

26

**F.      Many of Plaintiffs' Non-Fraud Claims Are Barred by Exculpation Provisions**[30]

Even if the Complaints contained facts sufficient to establish that any non-Fund Defendant owed duties to Plaintiffs individually (which they do not), those duties would be shaped by the contracts under which Defendants served the Herald and Primeo Funds and the offering memoranda pursuant to which Plaintiffs invested.  (Prüm Decl. ¶¶ 59-63; Bagnall Decl. ¶ 40.)  In this regard, exculpatory clauses contained in the Herald and Primeo Funds' Articles of Association and Advisory Agreements, and in those Funds' Offering Memoranda, give notice of risks assumed and limit the liability of the Primeo and Herald Director Defendants, the Advisors and, depending on the Fund and the service provider, the HSBC Defendants, and bar numerous claims asserted by Plaintiffs.  Those provisions limit liability for the type of conduct alleged and are enforceable in Luxembourg and the Cayman Islands, whose laws govern the Herald and Primeo Funds' agreements.  (*See* Prüm Decl. ¶¶ 28, 46, 59-63; Bagnall Decl. ¶¶ 43-45 & Ex. G at 7-8.)  Those jurisdictions generally permit contractual provisions excluding liability except where such party engaged in fraud or willful default of its duties.  (*See* Prüm Decl. ¶ 46; Bagnall Decl. ¶ 44.)[31]  Many of Plaintiffs' claims do not allege fraud or willful default, and are therefore barred by the applicable exculpatory clauses.

**G.      Madoff's Intentional Criminal Act Was a Supervening Cause**[32]

All of Plaintiffs' common law claims should be dismissed for the additional reason that the

---

[30] The Herald Funds do not join in this section and reserve their rights with respect to the arguments made.  No defendant in the Thema Action has moved on this ground.

[31] New York likewise enforces contractual provisions that limit liability.  *See Kalisch-Jarcho, Inc. v. City of New York*, 448 N.E.2d 413, 416-17 (N.Y. 1983).  When the contract is between sophisticated parties, a defendant's "'conduct must evince a reckless disregard for the rights of others, or be of a kind that smacks of intentional wrongdoing.'"  *Deutsche Lufthansa AG v. Boeing Co.*, No. 06 CV 7667, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007) (citation omitted).  Merely conclusory allegations that a defendant has acted willfully or with gross negligence are insufficient.  *See Saltz v. First Frontier, LP*, 10 Civ. 964, 2010 WL 5298225, at *15 (S.D.N.Y. Dec. 23, 2010).

[32] Thema (for reasons stated in its separate submission) and the Herald Funds do not join this section and reserve their rights with respect to the arguments made in it.

Defendants here did not cause the Funds' alleged losses; Madoff did.  "It has long been the law that 'an intervening intentional . . . act will generally sever the liability of the original tort-feasor.'"  *Van Valkenburgh v. Robinson*, 639 N.Y.S.2d 149, 150 (3d Dep't 1996) (citation omitted).  This principle is equally true under Cayman, Luxembourg and Irish laws.  (*See* Bagnall Decl. ¶¶ 49-50; Trevisan Decl.¶¶ 31-33; Howard Decl. ¶¶ 14, 23.)  A defendant may be held liable for failing to prevent the intentional criminal act of another only when the criminal act was a "normal and foreseeable consequence" of defendant's own actions.[33]  *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987).  (*Accord* Bagnall Decl. ¶ 50; Howard Decl. ¶ 23.)

Under Section 448 of the RESTATEMENT (SECOND) OF TORTS, a crime is a normal and foreseeable consequence of a defendant's actions only where:  "(1) the situation [created by the defendant's actions] provides a temptation to which a 'recognizable percentage' of persons would yield, or (2) the temptation is created at a place where 'persons of a peculiarly vicious type are likely to be.'"  *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 621 (10th Cir. 1998) (citation omitted).  Neither requirement is implicated here, and neither has been alleged in the Complaints.  Consequently, Plaintiffs' common law claims should be dismissed.  *See Goldweber v. Harmony Partners, Ltd.*, 09-61902-CIV., 2010 WL 3702508, at *5 (S.D. Fla. Sept. 16, 2010), *reconsideration denied*, 09-61902-CIV, 2011 WL 900294 (S.D. Fla. Mar. 15, 2011); *Michael S. Rulle Family Dynasty Trust v. AGL Life Assurance Co.*, 10-231, 2010 WL 3522135, at *5 (E.D. Pa. Sept. 8, 2010) (each dismissing claims where Madoff's theft caused plaintiffs' alleged losses).

---

[33] This is governed by a *probability* standard.  *See Breslin v. Corcoran* [2003] I.R. 203 (Ir.) (surveying English and Irish law and concluding that a person is not liable for damage caused by the intervening intentional act of another person unless such intervening act and damage were "probable" consequences of the defendant's own negligence); *see also Van Valkenburgh*, 639 N.Y.S.2d at 151.

### H.   Principles of Vicarious Liability Bar
### Claims Asserted Against Certain Defendants

Plaintiffs bring only claims of vicarious liability against PwCIL and EYG.  These are coordinating entities for global accounting networks.  PwCIL and EYG do not provide any accounting or auditing services; such client services are provided by member firms (such as PwC Ireland and EY Cayman).  Courts consistently reject the theory that coordinating entities and member firms in an accounting network are "one firm" and that separate legal entities in a network are liable for one another's actions.  *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 396 (S.D.N.Y. 2003); *see also, e.g., Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, 03 Civ. 0613, 2004 WL 112948, at *3 (S.D.N.Y. Jan. 22, 2004).  Likewise, Plaintiffs' allegations of liability through agency are insufficient where Plaintiffs do not (and cannot) allege that PwCIL or EYG exercised control over member firms with respect to the audits at issue.  *See, e.g., Star Energy Corp. v. RSM Top-Audit*, 08 Civ. 00329, 2008 WL 5110919, at *5 (S.D.N.Y. Nov. 26, 2008).  The same principle applies to the member firms; thus EY Cayman and EY Lux, as well as PwC Ireland, PwC Bermuda and PwC U.S., cannot be held liable under an agency theory for work performed by each other, or any other member firm.

The same reasoning bars claims against the "parent" and "sister" defendants in these actions, including UCG, HSBC Holdings and PGAM.  For example, the Thema Plaintiffs fail to make any specific allegations of wrongdoing against UCG.  Instead, they rely entirely on conclusory allegations that UCG exercised "control" over Bank Medici through UCG's indirect, minority (25%) ownership position in that company.  (TC ¶¶ 25, 84-85.)  Similarly, Plaintiffs in all three actions do no more than allege that HSBC Holdings plc was a "control person" or agent or alter ego of the other HSBC defendants.  (TC ¶ 41; HC ¶ 39; PC ¶ 46.)  As one court recently held in another Madoff-related case, allegations like this are insufficient:  a parent company cannot be held liable for the acts of its subsidiary based solely on naked assertions of control.  *See Mandelbaum v. Fiserv, Inc.*, 09-cv-00752,

2011 WL 1225549, at *5 (D. Colo. Mar. 29, 2011); *accord Maung v. Merrill Lynch & Co.*, 99 Civ. 9687, 2000 WL 1159835, at *6, 11 (S.D.N.Y. Aug. 15, 2000) (rejecting conclusory allegations of control over subsidiary).

## III. PLAINTIFFS FAIL TO STATE A CLAIM UNDER FOREIGN OR NEW YORK LAW AGAINST ANY DEFENDANT

### A. Foreign Law Applies to Most of Plaintiffs' Claims, Including All Claims Asserted Against the Foreign Defendants

New York's choice-of-law rules focus on "the relative interests of the domicile and locus jurisdictions in having their laws apply." *Boxer v. Gottlieb*, 652 F. Supp. 1056, 1062 (S.D.N.Y. 1987). Choice-of-law provisions are valid and enforceable in New York to establish which law governs contract and other claims.[34] *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000); *Welsbach Elec. Corp. v. MasTech N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006); *see also Jackson v. Am. Plaza Corp.*, No. 08 Civ. 8980, 2009 WL 1158829, at *3 (S.D.N.Y. Apr. 28, 2009) (rule applicable to third-party beneficiary and quasi-contract claims). In the absence of such a provision, New York applies the "center of gravity" approach to determine which jurisdiction has the most "significant contacts" for contract and quasi-contract claims.[35] *In re Allstate Ins. Co.*, 613 N.E.2d 936, 938-39 (N.Y. 1993); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2000).

---

[34] The subscription agreements signed by some, if not all, shareholders of Herald Lux and certain shareholders of the Primeo Funds provide that "***any*** dispute concerning our investment in [the Fund] . . . will be settled in Luxembourg according to Luxembourg law." (Davis Decl. ¶ 3 (emphasis added).)

[35] This Court must separately analyze each claim for each Defendant because "[c]hoice of law is not determined *in toto* for an entire litigation." *Tkaczevski v. Ryder Truck Rental, Inc.*, 22 F. Supp. 2d 169, 172 (S.D.N.Y. 1998). The most relevant contacts will typically include "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *Allstate*, 613 N.E.2d at 936. For many defendants, this will be the location where they provided services to the Funds (generally, in the Funds' jurisdictions of organization). The law of the Funds' jurisdictions also governs issues of "internal affairs," *Scottish Air*, *supra*, 81 F.3d at 1234, including duties owed to shareholders. *See, e.g.*, *Druck Corp.*, 2007 WL 258177, at *2.

For tort claims, New York courts apply "[t]he law of the jurisdiction having the greatest interest in the litigation." *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985). Where, as here, the torts alleged are "conduct-regulating," *GlobalNetFinancial.com v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006), "the law of the jurisdiction where the [conduct] occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Machinery, Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993).

These actions involve claims by foreign plaintiffs against predominately foreign defendants relating to conduct that occurred mostly overseas. Under New York choice-of-law rules, therefore, foreign law applies to all of the claims, except those asserted in the Herald and Thema Actions against the JPM and BNY Mellon Defendants. (As the claims against those U.S. financial institutions arise from their dealings with BLMIS in New York, they are governed by New York law.)

Concurrently herewith, as directed by Rule 44.1 of the Federal Rules of Civil Procedure, Defendants are submitting declarations addressing the laws of Ireland, Luxembourg and the Cayman Islands applicable to the claims asserted against the Foreign Defendants, and the insufficiency of the Complaints' allegations to establish any such claims under each jurisdiction's laws.

### B.     Plaintiffs Fail To State a Claim Under New York Law

While Defendants (except for JPM and BNY Mellon) submit that each of the non-RICO claims against them is governed by foreign law, even if New York law applied to certain claims, none would be cognizable under New York law either.

### 1.     Negligence, Professional Negligence, Gross Negligence and Negligent Misrepresentation

To state a claim for negligence in New York, a plaintiff "must establish (1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." *Di Benedetto v. Pan Am World Serv.,*

31

*Inc.*, 359 F.3d 627, 630 (2d Cir. 2004).  Professional negligence is merely a "species" of negligence.[36]  *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000).  Further, "'there is no independent action for gross negligence against accountants'" or, under the same reasoning, other professional service providers.  *HSA Residential Mortg. Servs. of Tex. v. Casuccio*, 350 F. Supp. 2d 352, 363 (E.D.N.Y. 2003) (citation omitted).

Negligent misrepresentation requires, in addition to damages and a special relationship between plaintiff and defendant, (1) careless disregard for the truth of the information imparted, (2) knowledge that plaintiff sought the information for a serious purpose and intended to rely on it and (3) justifiable reliance.[37]  *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 788 (2d Cir. 2003).

The requisite duty for negligence claims must generally arise out of a relationship "approach[ing] that of privity[.]"  *Parrott v. Coopers & Lybrand, L.L.P.*, 741 N.E.2d 506, 509 (N.Y. 2000).  This "near privity" requirement was defined in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110 (N.Y. 1985), as requiring:  (1) that an accountant be "aware that [its] financial reports were to be used for a particular purpose"; (2) "in the furtherance of which a known party . . . was intended to rely"; and (3) "conduct on the part of the accountant[] linking [it] to the [third party]" and showing that it understood the third party would rely.  *Id.* at 118.  The three-part *Credit Alliance* test applies equally to defendants other than accountants, *see Sykes v. RFD Third Ave. 1 Assocs., LLC*, 938 N.E.2d 325, 326 (N.Y. 2010), and requires dismissal of the negligence-based claims against all

---

[36]  Moreover, New York courts have never held that financial institutions are "professionals" for purposes of a claim of professional negligence, rendering the claim inappropriate here.  *See Deutsche Bank Secs., Inc. v. Rhodes*, 578 F. Supp. 2d 652, 670 (S.D.N.Y. 2008).

[37]  Reliance – which Plaintiffs have not shown here – is also required for Plaintiffs' simple, gross and professional negligence claims because in a case of this kind Plaintiffs cannot establish causation without showing that they relied on the audit report or other document at issue.  *See Water Street Leasehold LLC v. Deloitte & Touche LLP*, 796 N.Y.S.2d 598, 600 (1st Dep't 2005); *Hickey v. Travelers Ins. Co.*, 558 N.Y.S.2d 554, 555 (2d Dep't 1990).  "Promises of future conduct are not actionable as negligent misrepresentations."  *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987).

the Non-Fund Defendants here (none of which shared a privity-like relationship with or made statements to Plaintiffs). *See, e.g., MLSMK Inv. Co. v. JPMorgan Chase & Co.*, 737 F. Supp. 2d 137, 146-47 (S.D.N.Y. 2010), *aff'd*, 10-3040-cv, 2011 WL 2176152, at *2 (2d Cir. June 6, 2011); *CRT Invs.*, 2011 WL 2225050, at *12. (*See also* Part II(E).)

## 2. Common Law Fraud

To state a claim for fraud in New York, a plaintiff must plead that each defendant made "'a misrepresentation or a material omission of fact which was false and known to be false by defendant,'" for the purpose of inducing plaintiff to rely thereon and on which plaintiff justifiably relied, causing injury. *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (citation omitted). The plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent," *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995), which may be pled "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness," *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

Most of the Defendants here made no statements to Plaintiffs and therefore cannot be liable for fraud. Further, alleging a desire to earn ordinary fees for ordinary business services does not sufficiently plead fraudulent intent. *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *see also Saltz v. First Frontier, LP*, 10 Civ. 964, 2010 WL 5298225, at *6 (S.D.N.Y. Dec. 23, 2010) (observing in Madoff-related case that "[t]he desire to maintain high compensation . . . does not constitute motive to defraud"). Nor is it adequate to allege merely that Defendants ignored "red flags" about another's conduct – particularly where Plaintiffs' allegations fail to establish that Defendants were even aware of the putative "red flags" (much less that they clearly evidenced Madoff's fraud). *See Stephenson*, 2011 WL 781936, at *10-13 (dismissing fraud claims because "red flags" that auditors of Madoff fund allegedly "***could*** have discovered" failed to plead scienter) (emphasis in

original); *SEC v. Cohmad Sec. Corp.*, 09 Civ. 5680, 2010 WL 363844, at *3 (S.D.N.Y. Feb. 2, 2010);

*Zutty v. Rye Select Broad Market Prime Fund, L.P.*, 113209/09, Slip Op. at 16-17 (Sup. Ct. N.Y.

County Apr. 15, 2011) (Schnabl Decl. Ex. E).  Because Plaintiffs' fraud and scienter allegations are

premised on Defendants' alleged desire to earn ordinary fees for the services they typically provided,

and on "red flags" that Plaintiffs cannot even establish each Defendant was aware of, all fraud counts

should be dismissed.

### 3.     Breach of Fiduciary Duty

To plead a breach of fiduciary duty under New York law, a plaintiff must allege:  (1) a

fiduciary duty owed by defendant to plaintiff, (2) violation of that duty and (3) proximate causation of

damages.  *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x 197, 199 (2d Cir. 2010).  "A

fiduciary relationship exists under New York law 'when one [person] is under a duty to act for or to

give advice for the benefit of another upon matters within the scope of relation.'"  *Berman v. Sugo

LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008) (quoting *Flickinger v. Harold C. Brown & Co.*, 947

F.2d 595, 599 (2d Cir. 1991)).  Such relationships require a fiduciary to "assume control and

responsibility" over a dependent party, or undertake to "act primarily for [its] benefit."  *Abercrombie v.

Andrew College*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006).  It is well-settled that "[p]urely

commercial transactions do not give rise to a fiduciary relationship."  *In re Koreag, Controle at

Revision S.A.*, 961 F.2d 341, 353 (2d Cir. 1992).  Plaintiffs do not – and cannot – plead the requisite

elements of such a claim against any of the moving Defendants (who would additionally be protected

by the "business judgment rule," among other defenses).[38]  *See, e.g.*, *Zutty*, *supra*, Slip Op. at *14-15.

### 4.     Aiding and Abetting Causes of Action

To plead aiding and abetting in New York, plaintiffs must allege:  (1) the underlying tort; (2)

---

[38] The breach of fiduciary duty claims also fail to meet the particularity requirements of Rule 9(b) for pleadings based on fraud.  *See, e.g.*, *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 97 CIV. 4978, 1999 WL 47223, at *6 (S.D.N.Y. Feb. 3, 1999).

defendant's actual knowledge thereof; and (3) defendant's provision of substantial assistance in its commission. *See Steed Fin. LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 282 (S.D.N.Y. 2003) (aiding and abetting fraud); *Sharp Int'l Corp. v. State Street Bank*, 403 F.3d 43, 49 (2d Cir. 2005) (aiding and abetting breach of fiduciary duty); *In re Agape Litig.*, 09-CV-1782, 2011 WL 1136173, at *26 (E.D.N.Y. Mar. 29, 2011) (aiding and abetting conversion). New York law does not recognize a cause of action for aiding and abetting either negligence or gross negligence. *See, e.g.*, *In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007).

"The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one." *Chemtex, LLC v. St. Anthony Enters.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007) (internal quotation omitted). Actual, not constructive, knowledge must be pled, *see Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246-47 (S.D.N.Y. 1996), *aff'd*, 152 F.3d 918 (2d Cir. 1998), and supported by facts pled in non-conclusory terms, *see Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 24 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010). Moreover, where the underlying wrong with respect to an aiding and abetting claim is fraud, actual knowledge must be pled with particularity under Rule 9(b). *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006). Thus, allegations that lump defendants together, or allegations that defendants ignored "red flags" or "should have known" of the underlying tort are insufficient and "concede[] a lack of actual knowledge." *Rosner v. Bank of China*, 06 CV 13562, 2008 WL 5416380, at *6-7 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 349 F. App'x 637 (2d Cir. 2009). Because Plaintiffs' allegations of actual knowledge are premised on such "red flags," each aiding and abetting claim should be dismissed. *See, e.g.*, *In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 368, 371 (S.D.N.Y. 2010) (finding "red flags" insufficient to plead actual knowledge of Madoff's fraud); *Cohmad*, 2010 WL 363844, at *5-6 (same); *see also MLSMK Invs.*, 737 F. Supp. 2d at 144-45 (dismissing aiding and abetting claims based on failure to plead actual knowledge of Madoff's Ponzi

scheme).

To plead substantial assistance, a plaintiff must plead that "a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Musalli*, 261 F.R.D. at 25 (internal quotations omitted).  Failure to act constitutes substantial assistance only where the defendant owed the plaintiff a fiduciary duty.  *See Kolbeck*, 939 F. Supp. at 247.  Carrying out ordinary business functions, like maintaining a bank account and executing instructions for the account's authorized signatory, do not constitute substantial assistance. *See Renner v. Chase Manhattan*, 98 CIV. 926, 2000 WL 781081, at *12 (S.D.N.Y. June 16, 2000); *Nigerian Nat'l Petro. Corp. v. Citibank, N.A.*, 98 Civ. 4960, 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999).  Plaintiffs' aiding and abetting claims fail because they plead only ordinary business activities by each Defendant, which cannot constitute substantial assistance.

### 5.    Breach of Contract and Third Party Breach of Contract

"Under New York law, a breach of contract claim requires proof of:  (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).  To bring a claim for third-party breach of contract, the non-party must adequately plead that the contract's terms "'clearly evidence[ ] an intent to permit enforcement by the third party'" in question.  *Premium Mortg.*, 583 F.3d at 108. Plaintiffs' allegations neither identify any contractual obligations to plaintiffs disregarded by any defendant, nor any intent for services to be provided to plaintiffs personally, as opposed to the Funds in which they invested.

### 6.    Unjust Enrichment and Constructive Trust

"'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require

36

restitution.'" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573,

586-87 (2d Cir. 2006) (citation omitted).  The plaintiff in an unjust enrichment action must show that

the plaintiff itself directly bestowed a benefit on the defendant.  *See Kaye v. Grossman*, 202 F.3d 611,

616 (2d Cir. 2000).  For instance, in *ABF Capital Management v. Askin Capital Management, L.P.*,

957 F. Supp. 1308 (S.D.N.Y. 1997), after a hedge fund filed for bankruptcy, the investors sued the

fund's advisor (ACM) for unjust enrichment, seeking return of the fees and charges paid to ACM.  *See*

*id.* at 1314, 1333.  The court dismissed the unjust enrichment claim because the fund, not its investors,

paid the fees to ACM.  *Id.* at 1334.  Similarly, the claims here fail because Plaintiffs do not plead

contact, let alone a relationship, with any Non-Fund Defendant.  *See Reading Int'l, Inc. v. Oaktree*

*Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) ("'[A]n unjust enrichment claim,

which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship

with a defendant.'" (citation omitted)).

    In addition, "[t]he existence of a valid and enforceable written contract governing a particular

subject matter ordinarily precludes recovery in quasi contract for events arising out of the same

subject matter," *Clark-Fitzpatrick, Inc. v. LIRR Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *accord Chiste*

*v. Hotels.com L.P.*, 08 Civ. 10676, 2011 WL 2150653, at *2 (S.D.N.Y. May 31, 2011), regardless of

whether the plaintiff is a signatory to the governing agreement.  *See Law Debenture v. Maverick Tube*

*Corp.*, 06 Civ. 14320, 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008), *aff'd sub nom. Law*

*Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010).  Here, Plaintiffs

have invoked the quasi-contractual remedy of unjust enrichment in order to recover fees, commissions

and other monies that were paid to certain of the Defendants pursuant to written contracts (TC ¶¶ 539-

43; PC ¶¶ 232-38, 332-36; HC ¶¶ 691-97, 767-71, 772-76).  *See, e.g., IDT Corp. v. Morgan Stanley*

*Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009) (dismissing unjust enrichment claim).

    These agreements also require the dismissal of each Plaintiff's related – and derivative –

"claim" (TC ¶¶ 534-38; PC ¶¶ 239-44; HC ¶¶ 698-703) for the imposition of a constructive trust. *See In Re First Cent. Fin. Corp.*, 377 F.3d 209, 213 (2d Cir. 2004) ("[T]his principle – that the existence of a written agreement precludes a finding of unjust enrichment – also applies to constructive trust claims" under New York law); *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 222 (S.D.N.Y. 2010). Plaintiffs also have not shown the existence of a fiduciary or confidential relationship (as opposed to an arm's-length, commercial one) between themselves and the Defendants, which is generally required to impose a constructive trust in New York. *See In re Ames Dep't Stores, Inc.*, 274 B.R. 600, 625-29 (Bankr. S.D.N.Y. 2002). Finally, Plaintiffs have failed to identify the required *res* – a "segregated fund or property" – to which a constructive trust would attach. *See In re Weis Sec., Inc.*, 605 F.2d 590, 597 (2d Cir. 1978).

### 7.    Conversion

In New York, a "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006). Money cannot be the subject of a conversion action unless it is "specifically identifiable and . . . subject to an obligation to be returned or to be otherwise treated in a particular manner." *Haiti v. Duvalier,* 626 N.Y.S.2d 472, 475 (1st Dep't 1995). If the funds in question are "incapable of being described or identified in the same manner as a specific chattel," it is inappropriate for a plaintiff to seek those funds in a conversion action.[39] *High View Fund, LP v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998); *see also Global View Ltd. v. Great Cent. Basin Exploration, LLC*, 288 F. Supp. 2d 473 (S.D.N.Y. 2003). The Herald Complaint avers that certain Defendants "converted funds

---

[39] "'[F]unds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank,'" and "'[t]his rule also applies to funds invested with brokerages,'" unless held in a segregated account. *Nay v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 05 Civ. 10264, 2006 WL 2109467, at *5 (S.D.N.Y. July 25, 2006) (Berman, J.) (citations omitted).

belonging to Plaintiffs and the other members of the Class" by purportedly investing them with

BLMIS.  (HC ¶¶ 651-54.)  But Plaintiffs do not allege facts to show that those funds were

"specifically identifiable" and not intermingled with other funds held by said Defendants.

Accordingly, Count 2 of the Herald Complaint should be dismissed.

### 8.    Civil Conspiracy

The Herald Complaint also tries, but fails, to plead civil conspiracy (HC ¶¶ 646-50), which

New York does not recognize as a separate cause of action.  *See Alexander & Alexander of N.Y., Inc.

v. Fritzen*, 503 N.E.2d 102, 102-03 (N.Y. 1986); *Zutty*, *supra*, slip op. at 31 ("There is no such tort

under New York law.").  While conspiracy allegations may be used to connect defendants to an

independent tort, a plaintiff must adequately plead both the elements of that tort and:  "(1) an

agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the

parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or

injury."  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009).  Conclusory claims of

conspiracy not supported by well-pled facts should be dismissed.  *See id.* at 120.  Here, for the reasons

outlined above and in the supporting declarations, Plaintiffs have not even pled the existence of an

underlying tort, let alone that any Defendant named in this Count conspired to further its commission.

## IV.    THE HERALD COMPLAINT'S RICO CLAIMS SHOULD BE DISMISSED

### A.    The RICO Claims Violate the PSLRA's Amendment to RICO

Through a new Complaint, the Herald Plaintiffs propose eliminating their securities fraud

counts and pleading instead claims under sections 1962(c) and 1962(d) of RICO.  (HC ¶¶ 806-23.)

Plaintiffs' new pleading, however, remains full of allegations sounding in securities fraud.  This fact is

fatal under the PSLRA's amendment to RICO, which bars Plaintiffs from "rely[ing] upon any conduct

that would have been actionable as fraud in the purchase or sale of securities to establish a violation of

[RICO's] section 1962."  18 U.S.C. § 1964(c).

The "'great weight of precedent'" has interpreted the RICO amendment broadly.  *Cohain v. Klimley*, 08 Civ. 5047, 2010 WL 3701362, at *8 (S.D.N.Y. Sept. 20, 2010) (collecting cases) (citation omitted).  Most courts hold that the statutory text, on its face, "bar[s] reliance on ***any conduct*** [actionable as securities fraud], ***no matter whose conduct it is***."  *Fezzani v. Bear, Stearns & Co.*, 99 Civ. 0793, 2005 WL 500377, at *4 (S.D.N.Y. Mar. 2, 2005) (emphasis added).  Thus, there is no requirement that a RICO plaintiff have standing to sue under the securities laws, or that the actionable securities fraud "be that of the defendant" who is seeking to apply the RICO amendment.  *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281-82 (S.D.N.Y. 2009); *accord Cohain*, 2010 WL 3701362, at *8-9.  Similarly, courts have resisted efforts by plaintiffs to sidestep the RICO amendment by failing to include (or in this case dropping) an express cause of action under the federal securities laws.  *See Stechler v. Sidley, Austin Brown & Wood, L.L.P.*, 382 F. Supp. 2d 580, 593 (S.D.N.Y. 2005).  Applying these principles, courts routinely invoke the PSLRA to dismiss RICO claims arising from Ponzi schemes that involve securities, since almost "[a]ny conduct that sustains a securities fraud Ponzi scheme is intrinsically conduct undertaken 'in connection with the purchase or sale of securities.'"  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 284 F. Supp. 2d 511, 622 (S.D. Tex. 2003) (citation omitted).[40]

As in the foregoing cases, securities fraud is at the root of the Herald Plaintiffs' RICO claims.  For instance, Plaintiffs allege that UCG, Bank Austria and other Defendants "conceal[ed]," "obfuscat[ed]" and "disguis[ed]" the nature of each Fund's investments with Madoff (HC ¶¶ 302-08, 359, 428), and even devote a whole section of their Complaint to "Defendants' [Allegedly] Materially False and Misleading Statements."  (HC ¶¶ 568-87.)  Plaintiffs also rely extensively on allegations of

---

[40]  *See also, e.g.*, *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 330 (3d Cir. 1999); *Smith v. Copeland*, 1:09-CV-1200, 2010 WL 2104667, at *4 (N.D. Ga. May 21, 2010); *Rechberger v. Hurlburt*, 07-CV-00061A(F), 2010 WL 742198, at *9-12 (W.D.N.Y. Jan. 12, 2010).

fraud linked to Madoff.  Indeed, Plaintiffs' central RICO premise – that an enterprise helped "perpetuate[]" Madoff's Ponzi scheme (HC ¶ 1) – is a telltale sign, in itself, that Plaintiffs are relying on the fraudulent conduct of Madoff and his affiliates, BLMIS and MSIL, to establish RICO liability. Further, Plaintiffs accuse the RICO Defendants of committing wire fraud, mail fraud and other predicate offenses which require proof that each RICO Defendant possessed knowledge of the fraud in question, *e.g.*, Madoff's securities-based Ponzi scheme.  Plaintiffs also rely on purported fund transfers by Madoff, BLMIS and MSIL to plead numerous predicate acts detailed in their Complaint. (*See, e.g.*, HC ¶¶ 197-203, 378-81, 389-400.)  This allegedly fraudulent course of conduct, in turn, is used to plead RICO liability against all of the RICO Defendants.  (*See* HC ¶¶ 806, 815.)  Based on the foregoing, it is hard to imagine a more clear cut case for dismissal based on the PSLRA's amendment to RICO; the caption of this consolidated action – *In re Herald, Primeo and Thema Funds **Securities** Litigation* – says it all.

### B.      The RICO Claims Should Be Dismissed Because They Are Extraterritorial

In *Morrison v. National Australia Bank, Ltd.*, 130 S. Ct. 2869 (2010), the Supreme Court reaffirmed the common law presumption against extraterritoriality, holding that unless Congress manifests an express intention to the contrary, courts "must presume" that a statute "is primarily concerned with domestic conditions." *Id.* at 2877-78; *see also id.* at 2878 ("When a statute gives no clear indication of an extraterritorial application, it has none.").  In *Norex Petroleum Ltd. v. Access Industries, Inc.*, 631 F.3d 29 (2d Cir. 2010), *pet. for cert. filed*, 79 USLW 3636 (Apr. 18, 2011) (No. 10-310), the Second Circuit held, based on *Morrison*, that RICO may only be enforced domestically because it "'is silent as to any extraterritorial application.'"  *Id.* at 31 (citation omitted).  In considering whether a RICO claim is sufficiently domestic to satisfy this restriction, courts have concluded that: (1) "the focus of the [RICO] statute is on the enterprise" and (2) a "RICO 'enterprise' must be a 'domestic enterprise'" to avoid the presumption against extraterritoriality.  *European Cmty. v. RJR*

*Nabisco, Inc.*, 02-CV-5771, 2011 WL 843957, at *5 (E.D.N.Y. Mar. 8, 2011); *see also Cedeño v. Intech Group, Inc.*, 733 F. Supp. 2d 471, 473 (S.D.N.Y. 2010) (RICO "nowhere . . . evidence[s] any concern with foreign enterprises"); *United States v. Philip Morris USA, Inc.*, 99–2496, 2011 WL 1113270, at *4 (D.D.C. Mar. 28, 2011).

Plaintiffs here cannot meet this limitation because, as in the foregoing cases, the alleged enterprise is foreign – it involves foreign parties who allegedly recruited foreign investors to invest in foreign funds through offering documents that were distributed abroad.  (*E.g.*, HC ¶¶ 216, 220, 237, 247, 568-87.)  Indeed, if one excludes Kohn's New York businesses, which Plaintiffs dismiss as "sham" entities (HC ¶¶ 55, 197), the alleged corporate members of the putative enterprise are all headquartered overseas, in Austria, Italy, Luxembourg and the Cayman Islands.  (HC ¶ 10, 11, 15, 23, 24, 27.)  Moreover, Plaintiffs accuse the "enterprise" of recruiting roughly two dozen other foreign entities that engaged in "wrongdoing" as "Non-Defendant bad actors."  (HC ¶¶ 99, 101, 103-11, 116, 117, 128-33, 137, 140-43, 149-50).  These allegations point to an "enterprise" that is overwhelmingly foreign in composition and conduct.[41]

## C.   The Herald Plaintiffs Do Not Have RICO Standing

RICO grants standing to "[a]ny person injured in his business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  This requires a plaintiff to allege, *inter alia*, that the "defendant's injurious conduct [was] both the factual and the proximate cause of the injury alleged." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003) (citing *Holmes v. Sec. Investor Prot.*

---

[41]  Plaintiffs may argue that they have met *Norex* by pleading domestic activity, such as alleged fund transfers through New York.  But "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case."  *Morrison*, 130 S. Ct. at 2884; *see also Norex*, 631 F.3d at 31 (affirming dismissal despite allegations "that defendants committed numerous acts in the United States"); *In re Toyota Motor Corp.*, 8:10ML 02151, 2011 WL 1485479, at *16-18 (C.D. Cal. Apr. 8, 2011) (rejecting RICO claims although alleged cover-up of product defects took place in U.S.); *Cedeño*, 733 F. Supp. 2d at 472 (dismissing RICO claim despite use of "New York-based U.S. banks'").

*Corp.*, 503 U.S. 258, 268 (1992)).  Proximate cause "requires 'some ***direct relation*** between the injury asserted and the injurious conduct alleged.'"  *Hemi Group, LLC v. City of N.Y.*, 130 S. Ct. 983, 989 (2010) (citation omitted) (emphasis added); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006).  Further, an act that proximately causes injury in the RICO context "'is analytically distinct from one which further[s], facilitate[s], permit[s] or conceal[s] an injury which happened or could have happened independently of the act.'"  *Citadel Mgmt. Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 153 (S.D.N.Y. 2000) (citation omitted).

In this case, the pillar of Plaintiffs' proximate cause theory is that the so-called "feeder fund scheme" funneled investor funds to BLMIS and, in so doing, helped prolong the Madoff fraud.  (HC ¶¶ 1, 157.)  But as courts have made clear, a plaintiff cannot satisfy the direct relationship test merely by alleging that a defendant facilitated a Ponzi scheme committed by someone else.  *See Lerner*, 318 F.3d at 118-19, 123-24 (investors in lawyer's Ponzi scheme failed to plead proximate cause against bank, where bank's alleged misconduct – neglecting to report overdrafts on escrowed funds – merely facilitated fraud).

### D.    The Herald Complaint Does Not State a Claim Under Section 1962(c)

Under 18 U.S.C. § 1962(c), a plaintiff must allege:  "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)).  Crucially, these requirements "must be established ***as to each individual defendant***."  *Id.* (emphasis added).  And when a civil RICO claim is grounded in fraud, a plaintiff "'must meet [the] heightened pleading standard'" of Rule 9(b).  *MLSMK*, 737 F. Supp. 2d at 142 (citation omitted).

Here, Plaintiffs fail to show that either UCG or Bank Austria:  (1) committed predicate acts; (2) engaged in a pattern of racketeering; or (3) participated in the conduct of the alleged enterprise:

- All predicate acts attributed to UCG and Bank Austria require culpable knowledge, yet Plaintiffs fail to raise a strong (or even a plausible) inference that either Defendant acted with

scienter.  *See, e.g.*, *MLSMK*, 737 F. Supp. 2d at 143-44.

- With respect to the Complaint's allegations of mail fraud (asserted only against Bank Austria) and wire fraud (asserted against both), Plaintiffs fail to plead that either Defendant's alleged conduct was "'incident to an essential part of the scheme.'"  *United States v. Altman*, 48 F.3d 96, 102-03 (2d Cir. 1995) (citation omitted).

- The section 1962(c) claim against UCG relies on fund transfers allegedly sent and received by PGAM (HC ¶¶ 412-15), yet the Complaint does not plead a basis upon which to hold UCG liable for the alleged actions of its subsidiary.  *See Atkins v. Apollo Real Estate Advisors, L.P.*, CV-05-4365, 2008 WL 1926684, at *8-9, 11 n.12 (E.D.N.Y. Apr. 30, 2008).

- The Complaint is missing the *sine qua non* of a pattern – that the Defendants *each* engaged in predicate acts sufficient to demonstrate close-ended or open-ended continuity.  *See, e.g.*, *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180-82 (2d Cir. 2004).

- Plaintiffs do not allege the control necessary to infer that UCG or Bank Austria "played 'some part in *directing* [the enterprise's] affairs.'"  *In re Agape Litig.*, 681 F. Supp. 2d 352, 369-70 (E.D.N.Y. 2010) (dismissing RICO claims against bank for alleged role in customer's Ponzi scheme) (citations omitted).

- Plaintiffs do not plead that UCG and Bank Austria were central figures in the RICO enterprise, a prerequisite to the imposition of liability against corporate entities.  *See, e.g.*, *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 351-52 (S.D.N.Y. 1998).

(*See also* Schnabl Decl. ¶¶ 9-14; Velie Decl. ¶ 5.)  Thus, Plaintiffs' claim under section 1962(c) must be dismissed as to UCG and Bank Austria, which also compels dismissal against all other RICO Defendants for failure to plead an "enterprise" that is distinct from the "person" conducting the racketeering activities.  *See DeFalco*, 244 F.3d at 307.[42]

## E.    The Herald Complaint Does Not State a Claim Under Section 1962(d)

Because Plaintiffs cannot plead a violation of section 1962(c), their RICO conspiracy claim

---

[42]  As alleged by Plaintiffs, without UCG and Bank Austria as Defendants, the "enterprise" would consist of:  (1) Bank Medici; (2) Sonja Kohn, the alleged 75% owner of Bank Medici, and her husband; (3) Ms. Kohn's alleged "Sham New York Businesses"; (4) other companies allegedly owned or controlled by Ms. Kohn and/or her husband; and (5) officers, directors and/or employees of these companies.  (HC ¶¶ 10, 11, 12, 15, 16, 18, 20, 23, 25, 26, 28, 55, 259, 260, 263, 265.)  This grouping of alleged RICO "persons" fails the distinctness requirement.  *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994); *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 350 (S.D.N.Y. 2010).

under section 1962(d) necessarily fails. *See, e.g., Neiman Marcus Group, Inc. v. Dispatch Transp. Corp.*, 09 CV 6861, 2011 WL 1142922, at *9 (S.D.N.Y. Mar. 17, 2011). In any event, Plaintiffs do not allege facts sufficient to show that UCG or Bank Austria knew of and agreed to participate in an illegal conspiracy. *See United States v. Viola*, 35 F.3d 37, 44 (2d Cir. 1994); *Elsevier Inc. v. W.H.P.R. Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010).

## CONCLUSION

For the above reasons, leave to file the Complaints should be denied and Plaintiffs' predecessor pleadings should be dismissed in their entirety with prejudice.

Dated:   June 29, 2011
         New York, New York

Respectfully submitted,

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

*Susan L. Saltzstein*

Marco E. Schnabl
Susan L. Saltzstein
William J. O'Brien III
Jason C. Vigna
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
marco.schnabl@skadden.com
susan.saltzstein@skadden.com
wobrien@skadden.com
jason.vigna@skadden.com

*Attorneys for Defendants
UniCredit S.p.A., Pioneer Global Asset
Management S.p.A. and Pioneer Alternative
Investment Management Ltd.*

ORRICK HERRINGTON &
SUTCLIFFE LLP

_____
Richard A. Martin
Patryk J. Chudy
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
rmartin@orrick.com
pchudy@orrick.com

*Attorneys for Defendant*
*Ernst & Young S.A.*

CLEARY GOTTLIEB
  STEEN & HAMILTON LLP

_____
Evan A. Davis
1 Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2850
edavis@cgsh.com

*Attorneys for Defendants*
*HSBC Holdings plc, HSBC Securities Services*
*(Luxembourg) S.A., Bank of Bermuda*
*(Luxembourg) S.A., Bank of Bermuda*
*(Cayman) Limited, The Bank of Bermuda*
*Limited, HSBC Institutional Trust Services*
*(Ireland) Ltd., HSBC Securities Services*
*(Ireland) Limited, and HSBC Bank USA, N.A.*

46

ORRICK HERRINGTON &
 SUTCLIFFE LLP

_____

Richard A. Martin
Patryk J. Chudy
51 West 52nd Street
New York, New York  10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
rmartin@orrick.com
pchudy@orrick.com

*Attorneys for Defendant*
*Ernst & Young S.A.*

CLEARY GOTTLIEB
 STEEN & HAMILTON LLP

Evan A. Davis
1 Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2850
edavis@cgsh.com

*Attorneys for Defendants*
*HSBC Holdings plc, HSBC Securities Services*
*(Luxembourg) S.A., Bank of Bermuda*
*(Luxembourg) S.A., Bank of Bermuda*
*(Cayman) Limited, The Bank of Bermuda*
*Limited, HSBC Institutional Trust Services*
*(Ireland) Ltd., HSBC Securities Services*
*(Ireland) Limited, and Proposed Defendant*
*HSBC Bank USA, N.A.*

46

SULLIVAN & WORCESTER LLP

_____

Franklin B. Velie
Jonathan G. Kortmansky
Mitchell C. Stein
1290 Avenue of the Americas
29th Floor
New York, New York 10104
Telephone:  (212) 660-3000
fvelie@sandw.com
jkortmansky@sandw.com
mstein@sandw.com

*Attorneys for Defendant*
*UniCredit Bank Austria AG*

LATHAM & WATKINS LLP

_____

Maria A. Barton
Jeff G. Hammel
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
maria.barton@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants*
*Hannes Saleta, Karl E. Kaniak, Alfred Simon,*
*Johannes P. Spalek, Dr. Hans-Peter*
*Tiefenbacher, Declan Murray, Alberto La*
*Rocca, and Ursula Radel-Leszczynski*

47

SULLIVAN & WORCESTER LLP

_____

Franklin B. Velie
Jonathan G. Kortmansky
Mitchell C. Stein
1290 Avenue of the Americas
29th Floor
New York, New York 10104
Telephone: (212) 660-3000
fvelie@sandw.com
jkortmansky@sandw.com
mstein@sandw.com

*Attorneys for Defendant*
*UniCredit Bank Austria AG*

LATHAM & WATKINS LLP

*Maria A. Barton*
_____
Maria A. Barton
Jeff G. Hammel
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
maria.barton@lw.com
jeff.hammel@lw.com

*Attorneys for Defendants*
*Hannes Saleta, Karl E. Kaniak, Alfred Simon,*
*Johannes P. Spalek, Dr. Hans-Peter*
*Tiefenbacher, Declan Murray, Alberto La*
*Rocca, and Ursula Radel-Leszczynski*

KIRKLAND & ELLIS LLP

Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
David S. Flugman
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
david.flugman@kirkland.com

*Attorneys for Defendants*
*Herald Fund SPC, Franco Mugnai, and*
*Friedrich Pfeffer*

CRAVATH, SWAINE & MOORE LLP

Thomas G. Rafferty
Antony L. Ryan
Samira Shah
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
trafferty@cravath.com
aryan@cravath.com
sshah@cravath.com

*Attorneys for Defendant*
*PricewaterhouseCoopers Ireland*

NEUBERGER, QUINN, GIELEN,
 RUBIN & GIBBER, P.A.

Price O. Gielen
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8516

*Attorneys for Defendant Sonja Kohn*

48

KIRKLAND & ELLIS LLP

_____

Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
David S. Flugman
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
david.flugman@kirkland.com

*Attorneys for Defendants*
*Herald Fund SPC, Franco Mugnai, and*
*Friedrich Pfeffer*

CRAVATH, SWAINE & MOORE LLP

*Thomas G. Rafferty /sss*
_____
Thomas G. Rafferty
Antony L. Ryan
Samira Shah
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
trafferty@cravath.com
aryan@cravath.com
sshah@cravath.com

*Attorneys for Defendant*
*PricewaterhouseCoopers Ireland*

NEUBERGER, QUINN, GIELEN,
  RUBIN & GIBBER, P.A.

_____

Price O. Gielen
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8516

*Attorneys for Defendant Sonja Kohn*

48

KIRKLAND & ELLIS LLP

_____

Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
David S. Flugman
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
david.flugman@kirkland.com

*Attorneys for Defendants*
*Herald Fund SPC, Franco Mugnai, and*
*Friedrich Pfeffer*

CRAVATH, SWAINE & MOORE LLP

_____

Thomas G. Rafferty
Antony L. Ryan
Samira Shah
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
trafferty@cravath.com
aryan@cravath.com
sshah@cravath.com

*Attorneys for Defendant*
*PricewaterhouseCoopers Ireland*

NEUBERGER, QUINN, GIELEN,
  RUBIN & GIBBER, P.A.

_____
Price O. Gielen
One South Street, 27th Floor
Baltimore, Maryland 21202
Telephone: (410) 332-8516

*Attorneys for Defendant Sonja Kohn*

48

ALLEN & OVERY LLP

Patricia M. Hynes
Andrew Rhys Davies
Laura R. Hall
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
patricia.hynes@allenovery.com
andrew.rhys.davies@allenovery.com
laura.hall@allenovery.com

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC and J.P. Morgan Securities, Ltd.*


PORZIO, BROMBERG & NEWMAN, P.C.


Brett S. Moore
156 West 56th Street
Suite 803
New York, New York 10019-3800
Telephone: (212) 265-6888
Facsimile: (212) 957-3983
bsmoore@pbnlaw.com

*Attorneys for Ferdinand Burg and Carlo Reding,*
*Court-Appointed Liquidators for Defendant Herald (LUX) SICAV*

49

ALLEN & OVERY LLP

_____

Patricia M. Hynes
Andrew Rhys Davies
Laura R. Hall
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
patricia.hynes@allenovery.com
andrew.rhys.davies@allenovery.com
laura.hall@allenovery.com

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC and J.P. Morgan Securities, Ltd.*

PORZIO, BROMBERG & NEWMAN, P.C.

_____
Brett S. Moore
156 West 56th Street
Suite 803
New York, New York 10019-3800
Telephone: (212) 265-6888
Facsimile: (212) 957-3983
bsmoore@pbnlaw.com

*Attorneys for Ferdinand Burg and Carlo Reding,*
*Court-Appointed Liquidators for Defendant Herald (LUX) SICAV*

49

HOGAN LOVELLS US LLP

_____
Sanford M. Litvack
Dennis H. Tracey, III
Lisa J. Fried
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
sandy.litvack@hoganlovells.com
dennis.tracey@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendant*
*PricewaterhouseCoopers, Chartered*
*Accountants, a Bermuda partnership*

CLEARY GOTTLIEB
  STEEN & HAMILTON LLP

_____
Lewis J. Liman
Jeffrey A. Rosenthal
1 Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
lliman@cgsh.com
jrosenthal@cgsh.com

*Attorneys for Defendant*
*The Bank of New York Mellon Corporation*

ARNOLD & PORTER LLP

_____
Claudius O. Sokenu
John C. Massaro (admitted *pro hac vice*)
Arthur Luk
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 932-5999
claudius.sokenu@aporter.com
john.massaro@aporter.com
arthur.luk@aporter.com

*Attorneys for Defendant*
  *Ernst & Young Global Limited*

50

HOGAN LOVELLS US LLP

---

Sanford M. Litvack
Dennis H. Tracey, III
Lisa J. Fried
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
sandy.litvack@hoganlovells.com
dennis.tracey@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendant*
*PricewaterhouseCoopers, Chartered*
*Accountants, a Bermuda partnership*

CLEARY GOTTLIEB
 STEEN & HAMILTON LLP

---

Lewis J. Liman
Jeffrey A. Rosenthal
1 Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
lliman@cgsh.com
jrosenthal@cgsh.com

*Attorneys for Defendant*
*The Bank of New York Mellon Corporation*

ARNOLD & PORTER LLP

---

Claudius O. Sokenu
John C. Massaro (admitted *pro hac vice*)
Arthur Luk
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 932-5999
claudius.sokenu@aporter.com
john.massaro@aporter.com
arthur.luk@aporter.com

*Attorneys for Defendant*
 *Ernst & Young Global Limited*

50

HOGAN LOVELLS US LLP

---

Sanford M. Litvack
Dennis H. Tracey, III
Lisa J. Fried
875 Third Avenue
New York, New York 10022
Telephone: (212) 918-3000
sandy.litvack@hoganlovells.com
dennis.tracey@hoganlovells.com
lisa.fried@hoganlovells.com

*Attorneys for Defendant*
*PricewaterhouseCoopers, Chartered*
*Accountants, a Bermuda partnership*

CLEARY GOTTLIEB
  STEEN & HAMILTON LLP

---

Lewis J. Liman
Jeffrey A. Rosenthal
1 Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
lliman@cgsh.com
jrosenthal@cgsh.com

*Attorneys for Defendant*
*The Bank of New York Mellon Corporation*

ARNOLD & PORTER LLP

---

Claudius O. Sokenu
John C. Massaro (admitted *pro hac vice*)
Arthur Luk
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 932-5999
claudius.sokenu@aporter.com
john.massaro@aporter.com
arthur.luk@aporter.com

*Attorneys for Defendant*
  *Ernst & Young Global Limited*

50

WILMER CUTLER PICKERING
 HALE & DORR LLP

_Fraser L. Hunter_

Fraser L. Hunter, Jr.
Brad E. Konstandt
399 Park Avenue
New York, New York 10022
fraser.hunter@wilmerhale.com
brad.konstandt@wilmerhale.com
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendant*
*PricewaterhouseCoopers International Limited*

SEWARD & KISSEL LLP

Jack Yoskowitz
Mandy DeRoche
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Defendant Michael Wheaton*

WILLKIE FARR & GALLAGHER LLP

Mitchell J. Auslander
James C. Dugan
Emma-Ann L. Deacon
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
mauslander@willkie.com
jdugan@willkie.com
edeacon@willkie.com

*Attorneys for Defendant William Fry*

51

WILMER CUTLER PICKERING
HALE & DORR LLP

_____

Fraser L. Hunter, Jr.
Brad E. Konstandt
399 Park Avenue
New York, New York 10022
fraser.hunter@wilmerhale.com
brad.konstandt@wilmerhale.com
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendant*
*PricewaterhouseCoopers International Limited*

SEWARD & KISSEL LLP

_____

Jack Yoskowitz
Mandy DeRoche
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Defendant Michael Wheaton*

WILLKIE FARR & GALLAGHER LLP

_____

Mitchell J. Auslander
James C. Dugan
Emma-Ann L. Deacon
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
mauslander@willkie.com
jdugan@willkie.com
edeacon@willkie.com

*Attorneys for Defendant William Fry*

51

WILMER CUTLER PICKERING
 HALE & DORR LLP

_____

Fraser L. Hunter, Jr.
Brad E. Konstandt
399 Park Avenue
New York, New York 10022
fraser.hunter@wilmerhale.com
brad.konstandt@wilmerhale.com
Telephone: (212) 230-8800
Facsimile: (212) 230-8888

*Attorneys for Defendant*
*PricewaterhouseCoopers International Limited*

SEWARD & KISSEL LLP

_____

Jack Yoskowitz
Mandy DeRoche
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile: (212) 480-8421

*Attorneys for Defendant Michael Wheaton*

WILLKIE FARR & GALLAGHER LLP

_____

Mitchell J. Auslander
James C. Dugan
Emma-Ann L. Deacon
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
mauslander@willkie.com
jdugan@willkie.com
edeacon@willkie.com

*Attorneys for Defendant William Fry*

51

DAVIS POLK & WARDWELL LLP

Michael S. Flynn
Michael P. Carroll
James H.R. Windels
James W. Haldin
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
michael.carroll@davispolk.com
james.windels@davispolk.com
michael.flynn@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

HUGHES HUBBARD & REED LLP

William R. Maguire
Marc A. Weinstein
Gabrielle S. Marshall
Kathryn R. Vogel
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Attorneys for Defendant*
*Ernst & Young Ltd. (Cayman Islands)*

52

DAVIS POLK & WARDWELL LLP

---

Michael S. Flynn
Michael P. Carroll
James H.R. Windels
James W. Haldin
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:  (212) 701-5800
michael.carroll@davispolk.com
james.windels@davispolk.com
michael.flynn@davispolk.com
james.haldin@davispolk.com

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

HUGHES HUBBARD & REED LLP

---

William R. Maguire
Marc A. Weinstein
Gabrielle S. Marshall
Kathryn R. Vogel
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Attorneys for Defendant*
*Ernst & Young Ltd. (Cayman Islands)*

DEBEVOISE & PLIMPTON LLP

Joseph P. Moodhe
Michael E. Wiles
919 Third Avenue
New York, New York 10022
Tel. (212) 909-6000
mewiles@debevoise.com
jpmoodhe@debevoise.com

*Attorneys for Defendants*
*Alberto Benbassat, Stephane Benbassat,*
*Genevalor, Benbassat & Cie, Gerald J.P.*
*Brady, Daniel Morrissey, David T. Smith,*
*Thema Asset Management Limited and Thema*
*International Fund plc (for purposes of this*
*motion and other preliminary proceedings)*

BRUNE & RICHARD LLP

Susan E. Brune
David Elbaum
One Battery Park Plaza
New York, New York 10004
Tel: (212) 668-1900
Fax: (212) 668-0315
sbrune@bruneandrichard.com
delbaum@bruneandrichard.com

*Attorneys for Defendant*
*Nigel Fielding*

53

DEBEVOISE & PLIMPTON LLP

_____

Joseph P. Moodhe
Michael E. Wiles
919 Third Avenue
New York, New York 10022
Tel. (212) 909-6000
mewiles@debevoise.com
jpmoodhe@debevoise.com

*Attorneys for Defendants*
*Alberto Benbassat, Stephane Benbassat,*
*Genevalor, Benbassat & Cie, Gerald J.P.*
*Brady, Daniel Morrissey, David T. Smith,*
*Thema Asset Management Limited and Thema*
*International Fund plc (for purposes of this*
*motion and other preliminary proceedings)*

BRUNE & RICHARD LLP

_____

Susan E. Brune
David Elbaum
One Battery Park Plaza
New York, New York 10004
Tel: (212) 668-1900
Fax: (212) 668-0315
sbrune@bruneandrichard.com
delbaum@bruneandrichard.com

*Attorneys for Defendant*
*Nigel Fielding*

53