UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                          :
IN RE HERALD, PRIMEO, and THEMA          :        09 Civ. 289 (RMB)
SECURITIES LITIGATION                     :
                                          :        <u>**DECISION & ORDER**</u>
--------------------------------------------------------------x

## I.    Background

By letter to the Court, dated June 7, 2011, counsel for Neville Seymour Davis ("Davis"),

who purports to represent a class of investors in Thema International Fund plc ("Thema") in this

consolidated securities fraud action, informed the Court that, on June 7, 2011, Davis had

executed a Stipulation and Agreement of Partial Settlement ("Proposed Partial Settlement") with

Defendants HSBC Institutional Trust Services (Ireland) Ltd. ("HTIE"), HSBC Securities

Services (Ireland) Ltd. ("HSSI"), and HSBC Holdings PLC ("HH"), and with proposed

defendant HSBC Bank USA, N.A. ("HSBC USA," and collectively, the "HSBC Defendants"),

which could "resolve and release all [of Davis's] claims against the HSBC Defendants in

exchange for a payment of $62.5 million."[1]  (Davis's Ltr. to the Ct., dated June 7, 2011, at 1.)

---

[1]       Davis is one of three lead Plaintiffs – the other two being Repex Ventures, S.A.
("Repex"), which purports to represent a class of investors in Herald USA Fund and Herald
Luxemburg Fund ("Herald"); and Dr. Shmuel Cabilly ("Cabilly"), who purports to represent a
class of investors in Primeo Select Funds ("Primeo") – who, in separate actions commenced in
2009, sued Thema, Herald, Primeo, Bernard L. Madoff ("Madoff"), Bernard L. Madoff
Investment Securities LLC ("BMIS"), HTIE, HSSI, and HH, among others (collectively,
"Defendants"), alleging, respectively, that Thema, Herald, and Primeo each "recruited investors
and delivered their investments directly to Madoff and BMIS" without disclosing to their
respective investors that they were "feeder funds for Madoff" and without "conduct[ing] . . . due
diligence or supervision over Madoff and BMIS."  (Davis's Am. Compl., filed Feb. 11, 2010
("Davis Am. Compl."), ¶¶ 2–15; see Repex's Second Am. Compl., filed Feb. 11, 2010, ¶¶ 2–17;
Cabilly's Am. Compl., filed Feb. 11, 2010, ¶¶ 2–14.)

Davis seeks to add HSBC USA as a defendant in his proposed second amended
complaint, submitted along with Plaintiffs' joint motion, dated April 1, 2011, to further amend
their respective (amended) complaints.  (See Exs. G, I to Decl. of Albert Chang, dated Apr. 1,
2011 ("Chang Decl.") ("Based on recently-discovered information, [HSBC USA] participated in

The HSBC Defendants are alleged to have been the "administrator and custodian" of Thema, a fund incorporated in Ireland.  (Davis Am. Compl. ¶¶ 16, 28; Davis's Proposed Second Am. Compl., dated Apr. 1, 2011, ¶¶ 15, 27, attached as Ex. G to Chang Decl.)

On June 21, 2011, Davis filed a motion for preliminary approval of the Proposed Partial Settlement, arguing, among other things, that the Proposed Partial Settlement – "a product of over two years of litigation," reached following "a review and analysis of voluminous documents" and "a mediation facilitated by a respected retired judge [the Honorable Daniel Weinstein, formerly of the Superior Court of the State of California, County of San Francisco]" – "provides Thema investors with the best vehicle to recover their losses from . . . Madoff's Ponzi scheme."[2]  (Mem. of Law in Supp. of Davis's Mot. for Prelim. Approval, dated June 17, 2011 ("Davis Mem."), at 1, 6.)  Davis also argues that the Proposed Partial Settlement eliminates various "risks" to recovery by Thema investors, including the possibility that this Court will dismiss Davis's claims against the HSBC Defendants on grounds of "*forum non conveniens*," "[l]ack of standing," and/or "[l]ack of privity"; and the risk that any benefit Thema investors might potentially receive from litigation currently being pursued by Thema itself against HTIE in the Irish High Court in Dublin ("HTIE Litigation") may be limited or delayed by Thema's "massive exposure" to fraudulent transfer (i.e., "claw-back") claims totaling $692 million (which have been brought against Thema by Irving H. Picard, Esq., the trustee appointed for the

---

creating and marketing the structured financial products involving [Thema]" "which directed hundreds of millions of dollars into Madoff's Ponzi scheme.").)

[2]     While the cases have been pending since early 2009, Plaintiffs' service of process was not completed on all Defendants – some of whom appear to reside in Switzerland and other European countries – until May 18, 2011.  (See Certificate of Service as to Defendant Stéphane Benbassat, filed May 18, 2011.)

liquidation of BMIS ("Trustee")).[3]  (Davis Mem. at 10, 13–14.)  The Proposed Partial Settlement

would "remove[] these hurdles" and enable Thema investors "to recover cash much sooner than

they [otherwise] would."  (Davis Mem. at 10, 13.)  It should be noted that the HSBC Defendants

neither joined in nor opposed Davis's motion for preliminary approval.  (See Davis's Not. of

Mot., dated June 17, 2011; Davis Mem.)

On June 30, 2011, certain of the non-settling Defendants (collectively, the "Objecting

Defendants") filed an opposition to Davis's motion for preliminary approval of the Proposed

Partial Settlement, contending, among other things, that the Proposed Partial Settlement "is a

travesty and is a flagrant effort to sell-out the interests of Thema's shareholders and the rights of

[non-settling D]efendants."  (Obj. Mem. at 3.)  The Objecting Defendants argue that (i) the

Proposed Partial Settlement's irrevocable "assignment of absent class members' litigation rights

---

[3]      On June 29, 2011, Defendants (including the HSBC Defendants) filed a joint motion to
dismiss Plaintiffs' complaints on the basis of, among other things, *forum non conveniens* and
lack of standing (and they also opposed as "futile" Plaintiffs' April 1, 2011 motion to amend).
(Defs. Mem. of Law in Supp. of Defs. Jt. Mot. to Dismiss & in Opp'n to Pls. Mot. to Amend,
dated June 29, 2011 ("Defs. Dismissal Mem."), at 1 n.2, 10–18, 22–25 ("Plaintiffs are foreign
investors in foreign funds not open to American investors, while Defendants are primarily
foreign entities that provided services to the [f]unds in foreign countries. . . . [C]ases with such a
foreign focus should be dismissed under *forum non conveniens*.").)  Plaintiffs' reply is due on
September 30, 2011; Defendants' surreply is due on October 28, 2011.

On December 19, 2008, Thema initiated the HTIE Litigation against HTIE before Justice
Frank Clarke of the Irish High Court, seeking to recover approximately $1.2 billion in damages.
(See Kalix Fund Ltd. v. HTIE, [2009] I.E.H.C. 457 (H. Ct.) (Ir.) (Clarke, J.) (hereinafter, "HTIE
Litigation Order"), attached as Ex. E to Decl. of Michael E. Wiles, dated June 30, 2011 ("Wiles
Decl."), ¶ 3.3; see also Thema's Statement of Claim in the HTIE Litigation, dated March 16,
2009, attached as Ex. 2 to Thema's Ltr. to the Ct., dated Aug. 26, 2011, ¶ 17 (Thema alleging in
the HTIE Litigation that, "by virtue of the transfer by [HTIE] . . . of the assets of [Thema] to
BMIS, without *inter alia* carrying out any[] adequate or appropriate checks or due diligence,
examination or monitoring on an ongoing basis, BMIS was facilitated in depriving . . . [Thema]
of substantially all of the assets of [Thema] which had been entrusted to [HTIE]").)  Justice
Clarke has since consolidated the HTIE Litigation with 61 Thema shareholder lawsuits brought
against HTIE (and Thema) in the Irish High Court.  (HTIE Litigation Order ¶ 11.1; Objection by
Certain Defs. to Davis's Mot., dated June 30, 2011 ("Obj. Mem."), at 7.)  This Court has been in
contact with Justice Clarke, and has exchanged transcripts and orders pertaining to the U.S. and
Irish cases.

to Davis" (see Proposed Partial Settlement ¶ 2.14) "would set up a *de facto* class action for the

claims against the [n]on-[s]ettling Defendants" in another (likely foreign) court without

complying with the requirements of Fed. R. Civ. P. 23 and without continued supervision by this

Court; (ii) such assignment aims to "circumvent" the laws in most other countries, including

Ireland, which do not recognize class actions, and the "[m]ore than 60 . . . shareholder suits [that

have been filed] against HTIE in Ireland"; (iii) the Proposed Partial Settlement is "grossly

inadequate" because, after the proposed deduction of legal fees – which include a $10 million

litigation fund for future foreign litigation against the non-Settling Defendants (see Proposed

Partial Settlement ¶ 1.30), plus a fee for legal services in the instant case, "and a guaranty of

more [legal] work [for Davis's counsel] in the form of [the] forced assignment [to Davis]" –

"Thema's shareholders would receive less than $38 million"; and (iv) another proposed

assignment, to the HSBC Defendants, set forth in the Proposed Partial Settlement, i.e., of the

rights of settling Thema investors to receive distributions from Thema as a result of the HTIE

Litigation (see Proposed Partial Settlement ¶ 2.13), serves only to "facilitate the termination" of

the HTIE Litigation, "over which this Court has no jurisdiction and over which Davis has no

right to exercise control."  (Obj. Mem. at 1–3, 6, 13–16 (internal quotation marks omitted)); see

supra note 3.[4]

On July 11, 2011, Davis and the HSBC Defendants filed separate reply briefs, arguing,

among other things, that "non-settling defendants in a multiple-defendant litigation [generally]

have no standing to object to the fairness or adequacy of [a] settlement by other defendants."

---

[4]     The Objecting Defendants are Thema and its directors; Thema Asset Management
Limited; Genevalor Benbassat et Cie; PricewaterhouseCoopers Ireland; PricewaterhouseCoopers
(Bermuda); PricewaterhouseCoopers LLP; PricewaterhouseCoopers International Limited;
William Fry; JPMorgan Chase & Co.; and UniCredit S.p.A ("UniCredit").  UniCredit does not
join in that portion of the Objecting Defendants' brief which challenges the assignment to the
HSBC Defendants.  See supra argument (iv); (see Defs. Mem. at 1 n.1.)

(Davis's Reply, dated July 11, 2011 ("Davis Reply"), at 2; see HSBC Defs.' Reply, dated July

11, 2011 ("HSBC Reply"), at 10.)  "Assuming *arguendo* that the Objecting Defendants have

standing," the Settling Parties also argue that "assigned claims[, e.g., to Davis] are routinely

litigated in Europe despite the absence of a class action procedure"; that "the minority of

investors who have brought claims in Ireland are free to opt out of the [Proposed Partial]

Settlement"; and that "HSBC cannot be expected to both settle with the injured investors on

whose behalf Thema purports to act, and separately pay Thema (assuming HTIE lost the [HTIE

L]itigation), particularly since money paid to Thema would go not to investors but to the

. . . Trustee" to satisfy his claw-back claims.  (Davis Reply at 2, 6; HSBC Reply at 8, 10.)

        At a conference held on July 21, 2011, the Court described the concern it has over the

fact that the Proposed Partial Settlement is "conditional."  (Tr. of Proceedings, dated July 21,

2011 ("July 21, 2011 Tr."), at 3:14-19 ("[W]hat I am principally concerned about, and the reason

for my hesitation at this stage, are these conditions.  And I want to hear directly from the parties

to the settlement about fleshing these conditions out a little more and understanding them in

better detail, and also understanding whether they are still viable and how important they are.").)

The Proposed Partial Settlement is subject to several significant conditions, including, among

others, (i) a condition that the Irish High Court will render a ruling "satisfactory" to the Settling

Parties, following this Court's final approval of the Proposed Partial Settlement, concerning the

"recognition, enforcement, implementation and/or application" of the Proposed Partial

Settlement in Ireland (Proposed Partial Settlement ¶ 5.5); (ii) a condition that the Trustee is

found by United States District Judge Jed S. Rakoff in Picard v. HSBC Bank PLC, No. 11 Civ.

763 (S.D.N.Y.), to lack standing to pursue certain related common law claims against the HSBC

Defendants (see Proposed Partial Settlement ¶ 5.4); (iii) the condition, noted above, that a

"Reserve Amount" of $10 million be carved out of the proposed $62.5 million settlement fund

for legal fees which will be accrued in future litigation (presumably in Europe) by Davis against

non-settling Defendants (and for the payment of the opposing side's legal fees in such

litigation(s) in the event they are unsuccessful) (Proposed Partial Settlement ¶ 1.30); (iv) a

condition that attorneys' fees and expenses (presumably also other fees and expenses) "be

considered by th[is] Court separately from the Court's consideration of the fairness,

reasonableness, and adequacy" of the Proposed Partial Settlement (Proposed Partial Settlement

¶ 7.5); and (v) the condition, also noted, that settling Thema class members who affirmatively

elect to participate in the Proposed Partial Settlement by filing a combined (8-page) proof of

claim, release, and assignment form ("Proposed Proof of Claim and Assignment") "irrevocably"

assign to Davis their claims against non-settling Defendants (Proposed Partial Settlement ¶ 2.14;

see also July 21, 2011 Tr. at 4–8).[5]  At the July 21, 2011 conference, the Court also denied

Davis's letter application, dated June 17, 2011, to file a so-called "blow provision" contained in

the Proposed Partial Settlement under seal "because it contains the confidential agreement that

allows the [HSBC D]efendants to terminate the settlement when the number of opt-out class

members reaches a certain level."  (Davis's Ltr. to the Ct., dated June 17, 2011, at 1; see July 21,

2011 Tr. at 5:4-10 ("[T]he sealing application is being denied . . . .  [I]n this case the interest of

---

[5]      The proposed assignment to Davis (see Proposed Partial Settlement ¶ 2.14) and the
proposed assignment to the HSBC Defendants (see Proposed Partial Settlement ¶ 2.13) appear to
apply to class members who opt in to the Proposed Partial Settlement by filing the Proposed
Proof of Claim and Assignment.  **But, the assignment to the HSBC Defendants (unlike the
assignment to Davis) also applies to those class members who take no action in response to
the proposed class notices.**  (See Proposed Partial Settlement ¶¶ 2.13, 2.14; Tr. of Proceedings
in the HTIE Litigation before Justice Clarke, dated July 25, 2011, at 7:5-7 (THEMA'S
COUNSEL: "[A] very objectionable part of this [is that] . . . people who do nothing basically
lose everything under this settlement."); Obj. Mem. at 12 ("If the settlement were to be
approved, shareholders who receive a form notice from a US court, and who ignore it – as class
members frequently do, and as the foreign shareholders here undoubtedly would do – would find
to their horror that they not only could not share in what Davis has negotiated, but that they also
have lost other far more valuable rights that they had no reason to believe were at issue in the
Davis case.").)

the public's right to know and full disclosure overwhelms any interest in keeping the [blow] provision secret.").)[6]

By joint letter, dated August 11, 2011, the Settling Parties advised the Court that they were prepared to make two revisions to the Proposed Partial Settlement "to make it less conditional."  (Settling Parties' Ltr. to the Ct., dated Aug. 11, 2011 ("Settling Ltr."), at 1.)  That is, they would (i) modify the Irish High Court condition such that "the HSBC Defendants will apply to the Irish High Court for rulings on the prospective enforceability and effect of the [Proposed Partial] Settlement . . . _before_ this Court holds a fairness hearing and rules on final approval"; and (ii) "delete" from the Proposed Partial Settlement any condition based upon Judge Rakoff's ruling as to the Trustee's standing, "any appeal from [such] decision," or "any related rulings for example by [United States District] Judge [Colleen] McMahon in Picard v. JP Morgan Chase & Co., No. 11 Civ. 0913 [(S.D.N.Y.)]."  (Settling Ltr. at 1–2 (emphasis in original).)[7]  As to the other conditions, the Settling Parties refused to modify the Proposed Partial Settlement, asserting, for example, that "the [$10 million] Reserve Amount is necessary to address potential litigation" in Ireland should this case "be dismissed on _forum non conveniens_" grounds because of the "peculiar" Irish practices of "retain[ing] multiple levels of lawyers . . . on an hourly-fee basis" and of "having to reimburse [prevailing parties] for their legal fees and expenses"; "[t]he actual amount of fees sought will await further developments in this case,"

---

[6]     By Order, dated July 29, 2011, the Court requested that the Settling Parties advise the Court by joint letter as to whether they are "willing and able to revise [the Proposed Partial Settlement] so that it is considerably less conditional than currently."  (Order, dated July 29, 2011, at 1 (citing In re Drexel Burnham Lambert Grp. Inc., 995 F.2d 1138, 1146 (2d Cir. 1993); In re Sunrise Sec. Litig., 698 F. Supp. 1256, 1257 (E.D. Pa. 1998) ("[A]ny fairness hearing or class notification concerning the Proposed Partial Settlement would be premature prior to evaluation of the [issues] upon which the settlement is conditioned.")).)

[7]     In fact, by Opinion and Order, dated July 28, 2011, Judge Rakoff held that "the Trustee lacks standing to assert the common law claims" against the HSBC Defendants.  Picard v. HSBC Bank PLC, -- B.R. --, 2011 WL 3200298, at *2 (S.D.N.Y. 2011).

although "in no event" will it exceed 25% or $15.625 million of the $62.5 million settlement fund; and the assignment to Davis "is extremely valuable" to Thema investors "in the event they have to bring claims in jurisdictions outside the United States," i.e., in Ireland, "where they would have to commence individual actions absent this assignment."  (Settling Ltr. at 1–3; see also Proposed Not. of Pendency & Partial Settlement of Class Action, filed June 21, 2011 ("Proposed Notice"), attached as Ex. A-1 to Davis Mem., § II.G ("At a future date and after further notice to the [s]ettlement [c]lass, [Davis's counsel] will seek approval from the Court for payment of attorneys' fees of not more than twenty five percent (25%) of the [g]ross [s]ettlement [f]und plus actual costs and expenses incurred.").)[8]

During a telephone conference with the Settling Parties on August 12, 2011, the Court (again) expressed its concerns with the conditional aspects of the Proposed Partial Settlement, including "provisions . . . that ask [the Court] to approve and facilitate . . . [Davis's potential] future representations and . . . the assessment of [$10 million in] legal fees so that [Davis] can pursue [those] other litigations."  (Tr. of Proceedings, dated Aug. 12, 2011 ("Aug. 12, 2011 Tr."), at 2:24–3:25 ("I don't see it as my role nor do I think it is appropriate to approve, even preliminarily, those provisions which relate to what I think are inappropriate . . . legal fees and other lawsuits in other jurisdictions."), 11:11–13:7 ("I have never had a situation where anybody has asked me . . . to help circumvent the rules of in this case Ireland by giving them a war chest to go sue in Ireland people that they have already told the Court it is appropriate to sue here in New York. . . .  It is really the legal fees . . . which I am struggling with.").)  And, by Order, dated August 12, 2011, the Court invited supplemental written submissions from the parties as to preliminary approval of the Revised Proposed Partial Settlement.

---

[8]      The Settling Parties attached as exhibits to their August 11, 2011 letter an Amended and Restated Stipulation and Agreement of Partial Settlement, dated August 11, 2011 ("Revised Proposed Partial Settlement"), and revised proposed notices and orders.

On August 18, 19, and 22, 2011, the HSBC Defendants, Davis, and the Objecting Defendants submitted to the Court supplemental letters, expanding upon their earlier arguments. (See HSBC Defs.' Ltr. to the Ct., dated Aug. 18, 2011 ("HSBC Supp. Ltr."); Davis's Ltr. to the Ct., dated Aug. 19, 2011 ("Davis Supp. Ltr."); Thema's Ltr. to the Ct., dated Aug. 19, 2011 ("Thema Ltr."); PricewaterhouseCoopers Ireland's Ltr. to the Ct., dated Aug. 19, 2011 ("PwC Ltr."); HSBC Defs.' Ltr. to the Ct., dated Aug. 22, 2011.)

On September 7, 2011, the Court heard additional oral argument from the Settling Parties as to Davis's motion for preliminary approval.  (See Tr. of Proceedings, dated Sept. 7, 2011 ("Sept. 7, 2011 Tr."), at 3:10–19:6.)  At the close of arguments, the Court respectfully denied the motion, concluding that the Revised Proposed Partial Settlement "is not fair, reasonable, or adequate even at this preliminary stage to members of the proposed class of investors in Thema." (Sept. 7, 2011 Tr. at 19:16–20:10 (citing In re Masters Mates & Pilots Pension Plan & IRAP Litig., 957 F.2d 1020, 1025 (2d Cir. 1992)); see also Decision & Order, dated Sept. 7, 2011 ("Sept. 7, 2011 Decision"), at 1.)[9]

**For the following reasons, Davis's motion for preliminary approval of the Revised Proposed Partial Settlement is respectfully denied.**

## II.    Legal Standard

"Preliminary approval of a Proposed Partial Settlement is appropriate where . . . there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval."  In re Gilat Satellite Networks,

---

[9]    The Court also said at the September 7, 2011 conference that "[t]he [C]ourt generally favors the voluntary settlement of matters before it, including the settlement of purported class actions, and the denial of Davis'[s] current motion is without prejudice.  The Court would be pleased to entertain future applications for preliminary approval if and when such applications arise."  (Sept. 7, 2011 Tr. at 20:16-21; Sept. 7, 2011 Decision at 1.)

Ltd., No. 02 Civ. 1510, Mem. Op. & Order at 30–31 (E.D.N.Y. Jan. 4, 2007) (citing Manual for

Complex Litig. § 30.41); see Fed. R. Civ. P. 23(e).

At the preliminary approval stage, "[c]ourts assess the reasonableness of attorneys' fees

to protect class members from unfair settlements," McNamara v. Bre-X Minerals Ltd., 214

F.R.D. 424, 431 (E.D. Tex. 2002), and require the party seeking such fees to "explain to th[e]

Court why . . . a large percentage of the [s]ettlement [f]und should be given to the . . . attorneys,"

Greer v. Shapiro & Kreisman, No. 00 Civ. 4647, 2001 WL 1632135, at *4 (E.D. Pa. Dec. 18,

2001).

"[W]hen a settlement is negotiated prior to class certification, as is the case here, it is

subject to a higher degree of scrutiny in assessing its fairness."  Am. Med. Ass'n v. United

Healthcare Corp., No. 00 Civ. 2800, 2009 WL 1437819, at *3–4 (S.D.N.Y. May 19, 2009)

(quoting D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001)).  And, "[w]hen a

settlement in a class action does not completely dispose of the action, the Court should scrutinize

it closely regarding its effects on the future course of the litigation and the remaining parties."

Fla. Power Corp. v. Granlund, 82 F.R.D. 690, 693 (M.D. Fla. 1979).

"The ultimate responsibility to ensure that the interests of class members are not

subordinated to the interests of either the class representatives or class counsel rests with the

district court." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995);

see Masters Mates & Pilots, 957 F.2d at 1025; Janus Films, Inc. v. Miller, 801 F.2d 578, 582–83

(2d Cir. 1986); In re Refco, Inc. Sec. Litig., No. 05 Civ. 8626, 2007 WL 57872, at *2 (S.D.N.Y.

Jan. 9, 2007); Zimmerman v. Zwicker & Assocs., P.C., No. 09 Civ. 3905, 2011 WL 65912, at *4

(D.N.J. Jan. 10, 2011).

III.    **Analysis**

The Court recognizes that the standards applied for preliminary approval of a class action

settlement "are not so stringent as those applied when the parties seek final approval."  United

Healthcare, 2009 WL 1437819, at *3 (quoting Karvaly v. eBay, Inc., 245 F.R.D. 71, 86

(E.D.N.Y. 2007)).  But, the Proposed Partial Settlement between Davis and the HSBC

Defendants, entered into on June 7, 2011 and amended on August 11, 2011, fails even to satisfy

this lower threshold.  See, e.g., Refco, 2007 WL 57872, at *2; Butler v. Am. Cable & Tel., LLC,

No. 09 Civ. 5336, 2011 WL 2708399, at *10–11 (N.D. Ill. July 12, 2011); Jaime v. Standard

Parking Corp., No. 08 Civ. 4407, 2010 WL 2757165, at *2 (C.D. Cal. July 12, 2010).  Having

thoroughly "assess[ed] the settlement as it stands, without modifying its terms," In re Global

Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (citing In re Warner

Commcn's Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986)), the Court concludes that the Revised

Proposed Partial Settlement is not "fair, adequate, [or] reasonable" – even at this preliminary

stage – to the putative class of investors in Thema, a "Madoff feeder fund" (Davis Am. Compl.

¶ 247), and cannot be approved in its current form.  Karvaly, 245 F.R.D. at 86 ("The purpose of

the Court's inquiry under Rule 23(e) is to 'protect unnamed class members from unjust or unfair

settlements . . . .'" (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997))); see

Zimmerman, 2011 WL 65912, at *3–4; In re Inter-Op Hip Prosthesis Liab. Litig., 204 F.R.D.

330, 338 (N.D. Ohio 2001) ("[I]t is certainly not the role of this Court to simply 'rubber-stamp' a

motion for . . . preliminary approval . . . .").

Among its other deficiencies, the Revised Proposed Partial Settlement unduly benefits

Davis, the settling Plaintiff, and his counsel (Chapin Fitzgerald Sullivan & Bottini LLP), as set

forth below.  See, e.g., Gilat, No. 02 Civ. 1510, Mem. Op. & Order at 30–31 (denial of

preliminary approval warranted where proposed settlement contains "obvious deficiencies (such

as unduly preferential treatment of class representatives . . . or excessive compensation for attorneys)"); <u>Jaime</u>, 2010 WL 2757165, at *2; <u>Greer</u>, 2001 WL 1632135, at *4.

**Attorneys' Fees & Expenses**

The Revised Proposed Partial Settlement lacks transparency in relation to, among other things, the (in)ability of the Court and the class to evaluate current and future legal, administrative, and other fees and expenses.  <u>See, e.g.</u>, <u>Greer</u>, 2001 WL 1632135, at *4; <u>Cope v. Duggins</u>, 203 F. Supp. 2d 650, 654 (E.D. La. 2002).

**Fees & Expenses in this Case**

Despite well-established principles that "a thorough judicial review of fee applications is required in all class action settlements," <u>Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768, 819 (3d Cir. 1995), and that, "[t]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees," <u>Strong v. BellSouth Telecomm., Inc.</u>, 137 F.3d 844, 844 (5th Cir. 1998), Davis's counsel has not included a specific fee and expense request – covering Davis's lead counsel, any other counsel, claims administrators, mediators, guardians ad litem, consultants, and any others – in the settlement papers it has submitted to the Court for preliminary approval. Notwithstanding the Court's concern about this (<u>see</u> Aug. 12, 2011 Tr. at 5:7-11 ("I am not disposed or inclined to approve a settlement, even preliminarily, unless the proposed legal fees and expenses are projected in the notice to class members so that they can be aired at the fairness hearing.")), and the fact that class members frequently object to proposed settlements on the basis of requested fees and expenses (<u>see</u> Aug. 12, 2011 Tr. at 5:12-14 ("I'm sure you're aware . . . that not infrequently many objections that are received prior to a fairness hearing relate at least as much to legal fees as anything else.")); <u>see, e.g.</u>, <u>In re Initial Pub. Offering Sec. Litig.</u>, 671 F. Supp. 2d 467, 503 (S.D.N.Y. 2009); <u>Dewey v. Volkswagen of Am.</u>, 728 F. Supp. 2d 546,

601 (D.N.J. 2010), the Revised Proposed Partial Settlement provides that "[t]he procedure for and the allowance or disallowance of any applications by [Davis's c]ounsel for attorneys' fees and expenses . . . , to be paid out of the [g]ross [s]ettlement [f]und, are not part of the [Revised Proposed Partial] Settlement . . . and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the [Revised Proposed Partial] Settlement" (Revised Proposed Partial Settlement ¶ 7.5; Sept. 7, 2011 Tr. at 6:5-7 (COURT: "[T]he fee application is not part of the [Revised P]roposed [P]artial [S]ettlement[?]" DAVIS'S COUNSEL: "Correct.")).

The Court rejects this approach and believes that class members should have an opportunity to raise objections and/or concerns about all current and projected legal and administrative fees and expenses prior to and during the fairness hearing.  See O'Brien v. Nat'l Property Analysts Partners, 739 F. Supp. 896, 901 (S.D.N.Y. 1990) ("[T]he [class] notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" (quoting Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982))).  "The Court's review of the attorneys' fees component of a settlement agreement is . . . an essential part of its role as guardian of the interests of its class members," even at the preliminary approval stage.  Cope, 203 F. Supp. 2d at 654 (quoting Strong, 137 F.3d at 850); (see July 21, 2011 Tr. at 7:21–8:2 (COURT: "I don't know why [a request for attorneys' fees] is not included in the consideration of this settlement agreement integrally with all the other provisions and why it wouldn't be fully included in the notice to class members . . . .").)

Counsel has not advised the purported class or the Court of the amount of (and/or the basis for) **all** fees and expenses (of counsel, administrators, mediators, guardians, etc.) it will seek to have subtracted from the proposed settlement fund.  Counsel's submission, dated August

19, 2011, appears on the one hand to discount the 25% legal fees limit set forth in the Proposed Notice, the Revised Proposed Notice, and the Settling Parties' August 11, 2011 letter (see Proposed Notice § II.G; Revised Proposed Notice § II.G; Settling Ltr. at 2–3), and indicates counsel's intention to amend the Revised Proposed Notice "to reflect that . . . we intend to apply . . . for an award of attorneys' fees of 18% of the [g]ross [s]ettlement [f]und, plus reimbursement of actual expenses" (Davis Supp. Ltr. at 5).  On the other hand, Davis's counsel also "reserve[s] the] right to seek the Court's approval of a supplemental or augmented award of attorneys' fees" after the fairness hearing.[10]  (Davis Supp. Ltr. at 5); see Van Gemert v. Boeing Co., 573 F.2d 733, 735–36 (2d Cir. 1978) ("Class actions, termed by some as 'lawyer's lawsuits,' have received a good deal of criticism, and much of this has been directed at the substantial fees awarded to class attorneys" from a "common [settlement] fund." (citation omitted)); Goldberger v. Integrated Res., Inc., 209 F.3d 43, 53 (2d Cir. 2000) ("[T]he perception among both commentators and the Congress [is] that plaintiffs in common fund cases are mere figureheads, and that the real reason for bringing such actions is the quest for attorney's fees.  This is why we continue to approach fee awards with an eye to moderation." (internal quotation marks omitted)).  Counsel's opaque approach to attorneys' (and other) fees and expenses "overlooks the class attorney's duty to be sure that the court, in passing on the [proposed settlement], has all the facts as well as [counsel's] fiduciary duty to the class not to overreach."  Allapattah Servs., Inc. v. Exxon Corp., 454 F. Supp. 2d 1185, 1226 (S.D. Fla. 2006) (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 216, 223 (2d Cir. 1987)); see Piambino v. Bailey, 757 F.2d 1112, 1139 (11th Cir. 1985) ("[T]he district judge has a heavy duty to ensure . . . that the fee awarded plaintiffs' counsel is entirely appropriate."); Karvaly, 245 F.R.D. at 86.

---

[10]     Davis's counsel estimates that the actual expenses incurred as of the date of the fairness hearing "should not exceed $500,000."  (Davis's Ltr. to the Ct., dated Aug. 19, 2011, at 5.) Davis does not estimate any expenses after the fairness hearing.

**Fees & Expenses of Future Litigations**

Equally of concern to the Court are the fees and expenses proposed to be paid to class counsel for future litigations.  See Greer, 2001 WL 1632135, at *4.  The Court is troubled by the proposed $10 million Reserve Amount which the Settling Parties seek to "set aside from" the $62.5 million settlement for "fees and expenses to be incurred as a result of the litigation of claims and causes of action outside the United States against the Non-Settling Defendants." (Revised Proposed Partial Settlement ¶ 1.30.)  According to Davis, this proposed $10 million war chest is "tie[d] together" with the proposed irrevocable assignment of class members' claims to Davis, see infra pages 19–23; (see Revised Proposed Partial Settlement ¶ 2.14; July 21, 2011 Tr. at 37:1), and is integral to the Revised Proposed Partial Settlement (see July 21, 2011 Tr. at 37:1, 39:17-21 (COURT: "[W]ould you enter into a settlement that didn't have these provisions, no $10 million legal war chest and no assignment of claim to [Davis]?"  DAVIS'S COUNSEL: "No, we would not.")).[11]

Davis has provided the Court with no precedent – and the Court is aware of none – supporting the unusual request to approve $10 million for the financing of future litigations, presumably in Ireland, to defray the assertedly "peculiar" and "unusual" legal fees and costs associated with such litigations.  (Settling Ltr. at 2; Davis Supp. Ltr. at 5; see Aug. 12, 2011 Tr. at 9:12-14 (COURT: "[D]o you have a case where that's ever happened before?  Any [j]udge, federal or state, gave you $10 million to go sue in a more convenient forum?"  DAVIS'S

---

[11]     In their letter to the Court, dated August 18, 2011, the HSBC Defendants "take no position on Mr. Davis's request to set aside an amount to fund [future foreign] litigation on class members' behalf."  (HSBC Supp. Ltr. at 3; see also Sept. 7, 2011 Tr. at 14:23–15:15 (COURT: "You earlier on . . . did not take any position with respect to the reserve fund."  HSBC DEFS.' COUNSEL: "We take no position with the allocation of the reserve fund.  We've paid an amount.  It's totally up to [Davis's counsel] the way they allocate it. . . .  They decided that that was what was in the interests of the class.  It's obviously your Honor's call whether you agree. . . .  We have no position on that question.").)

COUNSEL: "We are not asking the Court to give us anything." . . .  COURT: "It seems so

unusual and so extreme and I do think that legal fees in the $10 million fund is something for me

to be concerned about."  DAVIS'S COUNSEL: "Well, your Honor, the preliminary approval

stage, as you know is a low threshold.").)[12]  If Davis is concerned that he erred by filing suit

against the HSBC Defendants and the non-settling Defendants in this Court (see Davis Mem. at

10 ("[T]his litigation faces unique challenges based on grounds that [D]efendants . . . assert

. . . in their motions to dismiss, including *forum non conveniens*." (citing In re Banco Santander

Sec.-Optimal Litig., 732 F. Supp. 2d 1305, 1344 (S.D. Fla. 2010)))), the risk of any such

miscalculation should fall on Davis, and not on the Thema investors he purports to represent.[13]

Davis asserts that "[d]istrict courts across the country have, for nearly three decades,

approved partial settlements where, as here, a portion of the settlement proceeds is set aside to

fund continuing litigation against non-settling defendants."  (Davis Supp. Ltr. at 3 (collecting

cases).)  But, the courts referred to have approved "litigation funds" for "continuing prosecution

of the [a]ction" – in the same (United States) court(s).  See, e.g., Teachers' Ret. Sys. of La. V.

A.C.L.N. Ltd., No. 01 Civ. 11814, 2004 WL 1087261, at *1, 5 (S.D.N.Y. May 14, 2004); In re

WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12,

---

[12]     If the Court correctly understands counsel's request, Davis proposes to "double count"
his attorneys' fees in this case by charging legal fees of 18% (or more) against the $10 million
Reserve Amount.  (See Obj. Defs. Mem. at 2 n.2; Revised Proposed Notice § II.G; Davis Supp.
Ltr. at 5); see also Gilat, No. 02 Civ. 1510, Mem. Op. & Order at 30–31; Orchano v. Adv.
Recovery, Inc., 107 F.3d 94, 96 (2d Cir. 1997) ("A reasonable attorney's fee is one that . . . does
not produce windfalls to attorneys." (alterations and internal quotation marks omitted)).

[13]     More than 60 Thema investors have commenced suit against HTIE and Thema in the
Irish High Court and, as Davis acknowledged at oral argument, "we would be a relatively late
entry into that litigation."  (Sept. 7, 2011 Tr. at 11:20); see supra note 3.  By letter to HTIE, dated
June 22, 2011, 50 of those investors, representing approximately 20% of outstanding Thema
shares, indicated that they "reject [the Proposed Partial Settlement] completely," questioning as
"doubtful in the extreme" "[t]he jurisdiction of a US court to make . . . an order [assigning the
rights of] parties in Irish proceedings."  (Wiles Decl. Ex. A, at 1–2.)

2004); (see Sept. 7, 2011 Tr. at 9:1-11 (COURT: "[W]here was the plaintiff going to pursue those other cases in Worldcom?"  DAVIS'S COUNSEL: "In the Southern District of New York, your Honor."  COURT: "Same forum?"  DAVIS'S COUNSEL: "Correct." . . .  COURT: "It's not exactly our case."  DAVIS'S COUNSEL: "It's not, your Honor.").)  Courts have not approved war chests, as counsel urges here, to finance yet-to-be-filed lawsuits in foreign jurisdictions (including, in this case, jurisdictions which may not allow for class actions) in the event that the litigation filed in the U.S. district court fails.  (See Aug. 12, 2011 Tr. at 10:13-15 (DAVIS'S COUNSEL: "[N]ot one penny of that [$10 million] fund is going to be used to litigate claims against the non-settling [D]efendants in the United States . . . ."); Davis Supp. Ltr. at 4–5; Revised Proposed Partial Settlement ¶ 1.30.)  It appears that the Court is being called upon to use its Rule 23(e) class settlement approval authority to advantage Davis and his counsel "so that [Davis] can pursue absent class members' claims in Ireland in a way that Irish procedures would normally not permit."  (PwC Ltr. at 3); see infra pages 22–23.  Davis also has failed to explain to the Court why the $10 million Reserve Amount is more valuable in counsel's war chest than in class members' pockets.  (See Aug. 12, 2011 Tr. at 11:17-20 (COURT: "I assume that if that $10 million didn't go into a legal war chest it would be available to the class right now?"  DAVIS'S COUNSEL: "That's right . . . .").)[14]

And, while Davis's counsel may believe what he said in Court, "Your Honor, with all due respect, I don't think it's your decision [but] the decision of the class members" whether "it is appropriate for [the Court to give Davis] a $10 million leg up to bring a lawsuit in Ireland" (Aug.

---

[14]    And, Davis does not explain what the consequences would be for class members if Davis's future litigation in Ireland were to cost more than the $10 million proposed to be set aside in the Revised Proposed Partial Settlement.  (See Sept. 7, 2011 Tr. at 10:18-23 (COURT: "[A]re [class members] on the hook for any excess of $10 million if there were a $20 million loss?"  DAVIS'S COUNSEL:  "I don't believe so, your Honor.  I'd have to go back and look."  COURT: "Well, 'believe so' is not, if I'm a class member, . . . going to be a lot of comfort.")); see infra page 21–22.

12, 2011 Tr. at 10:22–11:2), counsel overlooks the Court's "fiduciary duty" to the proposed

class.  Global Crossing, 225 F.R.D. at 455 ("[I]nherent in any class action is the potential for

conflicting interests among the class representatives, class counsel, and absent class members.");

see also Zimmerman, 2011 WL 65912, at *8 ("The fact that disgruntled class members may opt

out of the settlement class does not cure the deficiencies in the settlement." (quoting Acosta v.

Trans Union, LLC, 243 F.R.D. 377, 388 (C.D. Cal. 2007))); Goldberger, 209 F.3d at 53 ("[C]lass

members – the intended beneficiaries of the suit – rarely object" because "they have no real

incentive to mount a challenge that would result in only a minuscule *pro rata* gain from a fee

reduction"; "[A] fee award should be assessed based on . . . a jealous regard to the rights of those

who are interested in the fund." (internal quotation marks omitted)); Gen. Motors, 55 F.3d at

820; Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 524 (1st Cir. 1991) (noting "the

important nexus between judicial scrutiny and the avoidance of excessive or undeserved fee

awards in the class action environment," where there exists "the danger . . . that the [settling

plaintiff's] lawyers might urge a class settlement . . . on a less-than-optimal basis in exchange for

red-carpet treatment on fees."); Greer, 2001 WL 1632135, at *4; Cope, 203 F. Supp. 2d at 654.

### Proposed €30,000 Service Award to Davis

The Court is also concerned about a provision contained in the Revised Proposed Notice

that, "separate from and in addition to the share of the [n]et [s]ettlement [f]und that [Davis] may

receive as a [s]ettlement [c]lass [m]ember," "a service award totaling €30,000 [or over $40,000]

will be paid to [Davis] and deducted from the [$62.5 million s]ettlement [a]mount."  (Revised

Proposed Notice § II.F.)  While incentive awards are not prohibited, they are appropriately

subject to heightened judicial scrutiny at the preliminary approval stage.  See Butler, 2011 WL

2708399, at *9; Holmes v. Cont'l Can Co., 706 F.2d 1144, 1147 (11th Cir. 1983).  Davis's

submissions do not at this time demonstrate "a 'level of special circumstances warranting an

incentive award.'"   Beane v. Bank of N.Y. Mellon, No, 07 Civ. 9444, 2009 WL 874046, at *6

(S.D.N.Y. Mar. 31, 2009) (quoting Silverberg v. People's Bank, 23 F. App'x 46, 48 (2d Cir.

2001)).

### The Assignment(s) of Rights to Davis and to the HSBC Defendants

While the Revised Proposed Partial Settlement fails for the reasons stated above, it also

raises other concerns.  Among these are the provisions which assign to Davis and the HSBC

Defendants, respectively, certain rights held by the purported class members.  (See Revised

Proposed Partial Settlement ¶¶ 2.13, 2.14.)  Any class notice would at a minimum have to

describe these assignments "in plain, easily understood language," and clearly and precisely.

Fed. R. Civ. P. 23(c)(2)(B) ("[T]he court must direct to class members the best notice that is

practicable under the circumstances . . . ."); see In re Air Transp. Antitrust Litig., 141 F.R.D.

534, 553 (N.D. Ga. 1992) ("A notice that is confusing to class members is not the best

practicable under the circumstances." (citing In re Nissan Motor Corp. Antitrust Litig., 552 F.2d

1088, 1104 (5th Cir. 1977))); (Revised Proposed Notice § II.B); see supra note 14.

One provision "irrevocably convey[s] to [Davis] the right to pursue, on [settling class

members'] behalf and for their benefit, claims concerning or relating to investments in [Thema]

arising out of, based upon, or relating to the allegations, transactions, facts, matters, or

occurrences set forth or referred to in [Davis's] Amended Complaint or [Davis's] Proposed

Amended Complaint against all [n]on-[s]ettling Defendants, any of their affiliates, or any other

persons or entities in any domestic or foreign forum."  (Revised Proposed Partial Settlement

¶ 2.14.)[15]  The second provision "irrevocably assign[s] and convey[s] to the [HSBC Defendants]

---

[15]     This proposed assignment (to Davis) would appear to apply to those class members "who
elect to participate in the [Revised Proposed Partial] Settlement by filing" a Proposed Proof of
Claim and Assignment.  (Revised Proposed Partial Settlement ¶ 2.14); see supra note 5.

all of [the settling class members'] interest in any recovery by or benefit accruing to [Thema], or

any distribution or payment arising out of the same, on account of current or future [Thema]

litigation against the [HSBC Defendants] or any of their affiliates, including without limitation

the HTIE Litigation [currently pending in Ireland], and . . . delegate[s] to the [HSBC

Defendants], to the full extent permitted by applicable law, the power and right to act on [settling

class members'] behalf . . . in all matters relating to current **or future** litigation by [Thema]

against the [HSBC Defendants]."  (Revised Proposed Partial Settlement ¶ 2.13 (emphasis

added).)[16]

### Proposed Assignment to Davis

The Revised Proposed Notice to class members is inadequate because it says (only) the

following:

> Settlement [c]lass [m]embers who elect to participate in the [Revised Proposed
> Partial] Settlement by filing [the Proposed Proof of Claim and Assignment]
> . . . will assign to [Davis] the right to pursue, on their behalf and for their benefit,
> claims against all [n]on-[s]ettling Defendants or any of their affiliates . . . .  When
> a person 'assigns' claims, that means he or she has transferred their right to assert
> a cause of action to another party, in this case [Davis].

(Revised Proposed Partial Settlement § II.B.)  What it does not say is that, among other things,

(i) the proposed assignment is "irrevocabl[e]"; (ii) the claims to be assigned include all "claims

concerning or relating to investments in [Thema] arising out of, based upon, or relating to the

allegations, transactions, facts, matters, or occurrences set forth or referred to in [Davis's]

Amended Complaint or [Davis's] Proposed Amended Complaint against all [n]on-[s]ettling

Defendants, any of their affiliates, or any other persons or entities"; and (iii) the $10 million

---

[16]    This proposed assignment (to the HSBC Defendants) would appear to apply more broadly than the proposed assignment to Davis.  That is, it would include those class members who file a Proposed Proof of Claim and Assignment, and also **those class members who do nothing in response to the Revised Proposed Notice, i.e., "by operation of the [Court's entry of j]udgment" finally approving of the Revised Proposed Partial Settlement**.  (Revised Proposed Partial Settlement ¶ 2.13 (emphasis added)); see supra note 5.

Reserve Amount is being deducted from the $62.5 million settlement for the purpose of funding Davis's litigation of these assigned claims in foreign court(s).  (Revised Proposed Partial Settlement ¶¶ 1.30, 2.14.)

      Also, as set forth above at note 14, absent from the Revised Proposed Notice (and from the Revised Proposed Partial Settlement) is any information or discussion about any settling class members' potential liabilities that may attach to the assignment of rights to Davis.  (See Sept. 7, 2011 Tr. at 10:24–11:5 (COURT: "The real question is are there any liabilities attached to the assignment?  In the context of the assignment, are people potentially going to be liable or on the hook for money that they might not ever dream . . . would be their responsibility?" DAVIS'S COUNSEL:  "I'd have to look at the language of the assignment, your Honor.").) While it is clear from the Revised Proposed Notice that the proposed assignment to Davis "contain[s] a full and complete release for [Davis] from any and all claims relating to [Davis's] pursuit of the [a]ssigned [c]laims" (Revised Proposed Notice § II.C; see also Revised Proposed Partial Settlement ¶ 2.14), it is far from clear whether the settling class members would be responsible if, in litigation commenced by Davis in Ireland, Davis were to lose and be required under Irish law to pay damages and/or to reimburse the non-settling Defendants for legal fees and expenses in excess of the Reserve Amount.  See supra note 14.  In the absence of explicit assurances as to potential exposure, the Revised Proposed Notice does "not 'fairly apprise the [prospective] members of the class of the terms of the proposed settlement.'"  Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 660 F.2d 9, 21 (2d Cir. 1981) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 122 (8th Cir. 1975)); see Twigg v. Sears, Roebuck & Co., 153 F.2d 1222, 1227 (11th Cir. 1998); Nissan, 552 F.2d at 1103–05.

      The Proposed Proof of Claim and Assignment likewise fails clearly to advise the proposed class of the scope and effect of the proposed assignment to Davis.  The very first page

of the Proposed Proof of Claim and Assignment appears to suggest (erroneously it seems) that

class members who do nothing in response to the class notices will nevertheless be bound by the

assignment to Davis:

> IF YOU ARE A SETTLEMENT CLASS MEMBER AND DO NOT FILE A
> PROOF OF CLAIM, YOU WILL NOT RECEIVE ANY PAYMENT FROM
> THE NET SETTLEMENT FUND BUT YOU WILL NEVERTHELESS BE
> BOUND BY THE ORDER APPROVING THE SETTLEMENT AND THE
> JUDGMENT DISMISSING THIS ACTION AS AGAINST THE SETTLING
> DEFENDANTS, AND ALL ORDERS, RELEASES, **AND ASSIGNMENTS**,
> THEREIN, UNLESS YOU PROPERLY EXCLUDE YOURSELF FROM THE
> SETTLEMENT CLASS.

(Proposed Proof of Claim and Assignment at 1 (emphasis added).)[17]

And, while Davis seeks to "remove th[e] hurdles" created by the fact that "[t]here is no

class action mechanism in Ireland" (Davis Mem. at 13), principles of comity may require that we

respect Ireland's policies, see Gross v. British Broad. Corp., 386 F.3d 224, 235 (2d Cir. 2004),

and, in this instance, not facilitate a class action in Irish court, see id. ("We urge the district

courts to be cognizant of the prudential choices made by foreign nations and not to impose

conditions on parties that may be viewed as having the effect of undermining the considered

policies of the transferee forum."); In re Vioxx Prods. Liab. Litig., MDL No. 1657, 2009 WL

1636244, at *12 (E.D. La. Feb. 10, 2009) ("The mere fact that a foreign judicial system abides

by certain rules and procedures that differ from those of the United States cannot justify

---

[17]    In exercising its "responsibility to protect members of the class who have had no
opportunity to protect themselves," Super Spuds, 660 F.2d at 20, the Court would recommend
that the Settling Parties disseminate to prospective class members a bold-faced document,
separate from the Proposed Proof of Claim and Assignment, approved in form and substance by
New York and Irish counsel, and containing a clear description of the proposed assignment to
Davis.  The Court would suggest also that class members separately execute and notarize such a
document in order for the assignment to become effective.  "A primary purpose of the notice
requirement is to preserve absent class members' rights to pursue their own individual claims,
and to protect them from being bound by a judgment in an action of which they have been given
no, or inadequate, notice or opportunity to exclude themselves."  Mendez v. Radec Corp., 260
F.R.D. 38, 50–51 (W.D.N.Y. 2009) (collecting cases).

. . . undermin[ing] the foreign forum's policy judgments by substantially altering its rules or procedures to mirror our own."); see also Smith v. Bayer Corp., 131 S. Ct. 2368, 2381 & n.11 (2011) ("[A] properly conducted class action, with binding effect on nonparties, can come about . . . in just one way – through the procedure set out in Rule 23." (internal quotation marks omitted)); Granlund, 82 F.R.D. at 692–93.

### Proposed Assignment to the HSBC Defendants

Several hurdles would appear also to confront the proposed ("deemed") assignment to the HSBC Defendants of class members' interests in the HTIE Litigation.  (See Revised Proposed Partial Settlement ¶ 2.13; Obj. Mem. at 10–13; Thema Ltr. at 1–4.)  These may include arguments that the assignment (i) is not the subject of a clear, separate written document but rather  is "deemed" to occur upon final approval by this Court; (ii) allows a single shareholder (Davis) "to determine the terms on which HTIE's liability to Thema should be compromised and to use that shareholder settlement to undermine [Thema's] claim against HTIE in Ireland"; (iii) "reaches beyond the claims before this Court and is beyond this Court's authority under Rule 23"; and (iv) is "grossly inadequate" because of much greater potential recoveries in the HTIE Litigation.  (Obj. Mem. at 10–13; see also Thema Ltr. at 2 ("HSBC has cited cases in which a settling *defendant* voluntarily assigned rights, but it has cited no precedent for such an involuntary 'deemed' assignment of rights by absent class members – let alone for assignments whose real (and admitted) purpose is to undermine a separate action in another country." (citations omitted) (emphasis in original))); see also Super Spuds, 660 F.2d at 18 ("If a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either.").[18]

---

[18]     Thema, a co-Defendant of the HSBC Defendants here, contends that it "plainly has standing to object" to the proposed assignment to the HSBC Defendants because such

The Settling Parties respond that the proposed assignment to the HSBC Defendants (i) leaves Thema investors who "prefer the uncertain chance of recovery . . . from [the HTIE Litigation]" "free to opt out"; (ii) "has no impact whatsoever on whether a shareholder can maintain a direct action and does not assume in any way that a shareholder can"; (iii) "does not extinguish or create any [foreign] claim, but merely assigns an interest in a preexisting claim"; and (iv) forces class members to "giv[e] up nothing" because the substantial claw-back claims brought against Thema by the Trustee of the BMIS liquidation, Irving H. Picard, Esq., "would consume any recovery by Thema" in the HTIE Litigation, "leav[ing] nothing for investors." (HSBC Reply at 9–10; HSBC Ltr. at 2 (citing D'Amato, 236 F.3d 78; In re Initial Pub. Offering Sec. Litig., 226 F.R.D. 186 (S.D.N.Y. 2005)).)

### Additional Conditions of the Revised Proposed Partial Settlement

The Revised Proposed Partial Settlement contains additional contingencies which may militate against a grant of preliminary approval, see, e.g., Drexel Burnham, 995 F.2d at 1146; Sunrise, 698 F. Supp. at 1257, including, among others: (i) a ruling from the Irish High Court that is "in substantial conformity with the position of the [HSBC D]efendants," or is otherwise "satisfactory" to the Settling Parties, concerning the "enforceability in Ireland" of the Revised Proposed Partial Settlement (Revised Proposed Partial Settlement ¶ 5.5; HSBC Ltr. at 4); (ii) the Court granting Davis's April 1, 2011 motion to amend his March 19, 2009 complaint for the second time (which Defendants, including the HSBC Defendants, oppose and which will not be fully briefed until October 28, 2011) to add as a Defendant in Davis's case HSBC USA, a party to the Revised Proposed Partial Settlement, see supra page 1, note 1; see also City of N.Y. v. Exxon Corp., 697 F. Supp. 677, 688 (S.D.N.Y. 1988); and (iii) the so-called "blow provision"

---

assignment is "meant to limit Thema's ability to pursue its claims against HTIE" in Ireland. (Thema Ltr. at 2 n.2 (citing Zupnick v. Fogel, 989 F.2d 93, 98 (2d Cir. 1993)).) The Court does not resolve this issue here.

allowing the HSBC Defendants to "terminate the [Revised Proposed Partial] Settlement in its entirety in the event that [s]ettlement [c]lass [m]embers whose aggregate [n]et [l]osses exceed $60 million or [s]ettlement [c]lass [m]embers whose have suffered no [n]et [l]oss but whose aggregate account balances . . . exceed $10 million choose to exclude themselves from the [s]ettlement [c]lass" (Revised Proposed Partial Settlement ¶ 9.1); see Wainwright v. Kraftco Corp., 53 F.R.D. 78, 84 (N.D. Ga. 1971) ("Plaintiffs and Defendant . . . have offered for approval a settlement that is conditioned on various . . . rulings by the court; thus they have really offered no settlement at all, and there is nothing for the court to approve at this time.").

## IV.   Conclusion and Order

For the reasons set forth above, Davis's motion for preliminary approval of the (Revised) Proposed Partial Settlement [#234] is respectfully denied without prejudice.

Dated: New York, New York
          September 15, 2011

$\mathcal{RMB}$

**RICHARD M. BERMAN, U.S.D.J.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/15/11