UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――― x
In re HERALD, PRIMEO AND THEMA        :   Civil Action No. 09 Civ. 0289 (RMB)
FUNDS SECURITIES LITIGATION           :
                                      :
――――――――――――――――――――――――              :
                                      :
This Document Relates To:             :
ALL ACTIONS.                          :
                                      :
――――――――――――――――――――――――

# DECLARATION OF JARLATH RYAN

I, **JARLATH RYAN** declare as follows:

1. I am a barrister, having been called to the bar in Michaelmas 2004. I am a graduate of University College, Galway. I apprenticed in the law Firm McCann FitzGerald, being admitted to the roll of solicitors in 2001 and subsequently I trained and practiced as a lawyer (associate) in the international law firm Freshfields Bruckhaus Deringer in London and Frankfurt in the areas of international banking law. Since my call to the Bar of Ireland I have practiced in the areas of chancery, commercial, banking and private international law.

2. I have been instructed by ByrneWallace Solicitors, 2 Grand Canal Square, Dublin 2, Ireland, who in turn have been retained by the law firm Robbins Geller Rudman & Dowd, LLP, to act on behalf of the Lead Plaintiff in the class action suit herein Mr. Neville Seymour Davis ("Mr Davis") in Ireland specifically in the context of his joinder as Notice Party to Irish Commercial Court proceedings entitled Thema International Fund plc and HSBC Institutional Trust Services (Ireland) Limited and Thema Asset Management Limited and 2020 Medici AG, Record Number 2008/10983P.

3. I have been furnished with a copy of the claim documentation under which Mr Davis is seeking redress before the Federal Court of New York against various defendants including papers filed in the Joint Motion to Dismiss on behalf of a number of defendants in the within proceedings ("Joint Motion to Dismiss"). I have been asked to make this declaration in respect of certain issues pertaining to the Irish legal system and to Irish law to assist the Federal Court of New York in determining matters in the Joint Motion to Dismiss before that court.

4. The statements and conclusions contained in this declaration are to the best of my knowledge and belief true and accurate and are based on my knowledge of Irish law and the Irish legal system.

5129383.1

2

I.  **THE IRISH LEGAL SYSTEM**

5. The Irish legal system is common law in nature deriving from the English common law system which applied for much of its history.

II. **JURISDICTION**

6. Under Irish law, the basis of the exercise of jurisdiction *in personam* by the Irish Courts is:

    (a) Valid service of the proceedings in question upon the defendant as authorised by, and in the manner prescribed by statute or statutory order; and

    (b) Where a claim relates to a civil or commercial matter within the meaning of (a) Council Regulation (EC) 44/2001 or (b) the Brussels and Lugano Conventions ("the Judgments Regulations and Conventions") the Courts have jurisdiction to entertain claims *in personam* (a claim brought against a person compelling him to do something) solely in accordance with the provisions of the Judgments Regulations and Conventions.

7. Therefore in civil and commercial matters the Court will seise itself of the matter if it has authority to do so under the Judgments Regulations and Conventions and in accordance with the adjectival rules relating to service that apply in Ireland.

8. Therefore, after considering the Judgement Regulations and Conventions, the circumstances in which service may be duly effected within and outside of the territory as well as the mode of service are set out in the Rules of the Superior Courts 1986 as amended ("RSC").

9. At common law, any person within Irish territory may be made subject of jurisdiction where there has been personal service upon him or her of an originating summons in accordance with rules governing the issue and service of summons. The fact that a defendant is an Irish national does not render him or her *per se* amenable to the jurisdiction of the Irish Courts. In *Rainford v Newell-Roberts*,[1] Davitt P. held:

    > "*Personal jurisdiction in this country depends upon the right of a Court to summon the defendant. Apart from special powers conferred by statute it is obvious that, since the right to summon depends on the power to summon.*"

---

[1] [1962] IR 95.

5129383.1

3

10. Subject to the provisions of the Judgment Regulations and Conventions, a defendant may enter a conditional appearance and contest jurisdiction by arguing that Ireland is a *forum non conveniens*. The judicial jurisdictional discretion is of less significance now that the legislative regime involving the Judgment Regulations and Conventions apply. If there is a question relating to the jurisdiction of the court over a defendant who has no domicile within a Regulation State or Convention State, then jurisdiction is determined by the national law of the Court seised of the matter.

11. Some of the defendants appear to be domiciled in Ireland but others are domiciled outside the jurisdiction in EC States, EFTA States and in non-EC non EFTA States.

12. Under Order 11 rule1(h) of the RSC, the applicable test is whether if the person were within the jurisdiction he would be a proper person to be joined as a defendant.[2] The inclusion of the party "must not be a mere device to get a foreign party before the Irish courts" *i.e.*, there must be a substantial element in the claims against the both parties.[3] This will depend on the substance of the matter in the light of all the circumstances, and not on the mere form of the pleading and whether there is technically a cause of action.[4] The claim against the foreign domiciliary does not have to be the same as the claim against the Irish domiciliary.[5]

13. Factors relevant to an assessment of Ireland as *forum non conveniens* include:

   (a) Proceedings have been initiated in New York.

   (b) The defendants have entered an appearance to the New York proceedings and are contesting the Lead Plaintiff's claim on its merits. In Irish law, the New York Court is seised of the proceedings.

   (c) The matter before the New York court is not pending before the Irish Courts. For such proceedings to commence, the New York proceedings would have to be withdrawn or stayed pending the initiation of proceedings in Ireland.

---

[2] *Massey v. Heynes* (1888) 21 Q.B.D. 330 at p.338; *Witted v Galbraith* [1893] 1 QB 577, 579; *Short v Ireland* [1996] 2 IR 188, 216, *Analog Devises BV v Zurich Insurance Co* [2002] 1 IR 272; *McCarthy v Pillay* [2003] 1 IR 592; [2003] 2 ILRM 284.

[3] *Massey v. Heynes* (1888) 21 Q.B.D. 330 at p. 338.

[4] *Multinational v. Multinational Services* [1983] Ch. 258 *per* Dillon L.J. at p. 286 (quoted and approved by Fennelly J in *Analog Devises BV v Zurich Insurance Co* [2002] 1 IR 272, p.286.

[5] *International Commercial Bank plc v Insurance Corporation of Ireland plc* [1989] IR 452, 460; [1989] ILRM 788.

    (d)    Most of the relevant witnesses on the part of the Plaintiff are in New York which goes to the issue of comparative cost and convenience.

    (e)    With respect to choice of law (considered below), Irish law will apply to procedural aspects however, it may be that foreign law will be required to be proven if the current action were to be initiated before the Irish Courts. Although some of the defendants are corporate entities registered and regulated under Irish law, the constitution of the corporate defendants is not in issue.

    (f)    While individual actions have been commenced against Thema in Ireland, there can be no assessment as to the overlap or interaction between and among the causes of action in the Irish proceedings where pleadings filed are not public and advisors on behalf of the Lead Plaintiff have no right to access them.

    (g)    The link between the Lead Plaintiff's suit and those before the Irish Courts is arguably tangential in nature and there would be limited economical benefit in centralising the hearings at this point in time given the current stage of the foreign proceedings.

    (h)    The number of American witnesses required for the Irish proceedings will not necessarily be significantly fewer than for the foreign proceedings although where there are fewer claims brought, fewer proofs are required which may impact on witness numbers.

14.    There are therefore grounds upon which an Irish Court may decline jurisdiction on the basis of *forum non conveniens*. In addition, if a civil claim for damages or restitution which is based on an act giving rise to criminal proceedings, then the Court seised of the criminal proceedings may exercise special jurisdiction which is the providence of Irish Criminal law.

### III.    LIS ALIBI PENDENS

15.    Although Order 11A rule 2(2) of the RSC provides that for service to be effected thereunder, no proceedings between the parties concerning the same cause of action are pending between the parties in another Member State of the EU, Order 11A rule 2(2) of the RSC requires the Court to have the power to hear and determine the claim by virtue of Regulation 44/2001.

Article 27 and 28 of Regulation 44/2001 in effect provide for a defence of *lis alibi pendens* in respect of proceedings involving the same cause of action or related causes of action respectively. With regard to inter-related claims, Article 27 provides that where proceedings involving the same cause of action and between the same parties are brought in the courts of different Member States, any court other than the court first seised must of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established.[6]

16. Where it is established, any other court must decline jurisdiction in favour of that court under Article 27(2). Article 28 provides:

(a) Where related actions are pending in the courts of different Member States, any court other than the court first seised may stay its proceedings.

(b) Where these actions are pending at first instance, any court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the court first seised has jurisdiction over the actions in question and its law permits the consolidation thereof.

(c) For the purposes of this Article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

17. In circumstances where actions come within the exclusive jurisdiction of several courts, any court other than the court first seised must decline jurisdiction in favour of that court pursuant to Art.29. For the purposes of both Arts 27 and 28, a court is be deemed to be seised when:

"*1. at the time when the document instituting the proceedings or an equivalent document is lodged with the court, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have service effected on the defendant, or*

---

[6] See Droz, *Compétance Judiciaire et Effects des Judgments dans le Maché Commune* (Paris, 1972) at pp 164-169 who advocates a reflexive approach cited but not followed in *Goshawk Dedicated Ltd & Ors -v- Life Receivables Ireland Ltd* [2008] IEHC 90 (subsequently appealed to the Supreme Court which disagreed with High Court in its view that *Owusu* was determinative).

5129383.1

> 2.      *if the document has to be served before being lodged with the court, at the time when it is received by the authority responsible for service, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have the document lodged with the court..*"[7]

18. In short, the essence of *lis alibi pendens* means that with the exception of matters arising under Art.22 which do not arise here, the resolution of priority in conflicts is determined simply by a rule favouring the court first seised.[8]

19. It is submitted that even where the Irish Courts are shown to have jurisdiction under Regulation 44/2001 either through Article 5 or Article 23, the proceedings before the New York courts would give rise to a defence of *lis alibi pendens* following a reflexive application of the doctrine. Therefore the Irish Court would be required to decline jurisdiction or at the least stay any proceedings where the foreign proceedings are seised first over the matters raised by the claims (there are no proceedings as and between the Lead Plaintiff and the defendants initiated before the Irish Courts) and, as I have been instructed and am so advised, where the New York Court has already consolidated the foreign proceedings by means of using the class action procedure. Furthermore, it would not be open to the Irish Court to examine the forum clause as to do so would be to contest the basis upon which the first Court, *i.e.*, the New York Court, is seised.

**IV.    CHOICE OF LAW**

20. I have been asked to state the general law in relation to choice of law as it relates to tort. The law in relation to the governing law of a tort committed abroad now contained in EC Regulation No. 864/2007 on the law applicable to non-contractual obligations (the "Rome II" Regulation) came into force in Ireland on 11 January 2009. However, by virtue of Article 31 it applies only to "events giving rise to damage which occur after its entry into force." As the tortious acts giving rise to the liability in question occurred prior to that date, the Rome II Regulation is of no application to the determination of the choice of law and the old common

---

[7] Article 30 of Regulation 44/2001.

[8] See Harris, Jonathon, "The Brussels I Regulation and the Re-Emergence of the English Common Law" (2008) 4 European Legal Forum 181, 182.

5129383.1

7

law will apply. ***There would be a lack of clarity*** if the Rome II was to be retrospectively applied to non-contractual obligations and ***there is no precedent*** known to me where Rome II was applied to non-contractual obligations arising prior to the entry into force of the Rome II Regulation. This declaration does not deal with the choice of law rules in relation to other potential causes of actions.

## V.   RECOGNITION AND ENFORCEMENT

21. No affront to public morality or policy would arise if the Lead Plaintiff was to attempt to recognise and enforce a judgment obtained in the New York Courts. The situation as seen in *Venootschap de Faam v Dorset Manufacturing Co.*[9] would not arise as an order made pursuant to the settlement would not be in direct contradiction of an Irish legal instrument.

## VI.   MANNER OF PROCEEDING IN IRELAND – REPRESENTATIVE ACTIONS

22. Class actions, where an individual is deemed by a competent court to be the "Lead Plaintiff" and thereafter assumes a duty of care towards a putative class of affected plaintiffs with the same cause of action, is unknown in Irish law.

23. The law in this jurisdiction simply has not developed to that extent to sue out and determine matters in this way.

24. There is little similarity between the class action process, as I understand it, and the representative action process under Order 15 Rule 9. Under Irish law there is no entity known as a lead plaintiff with the rights and responsibilities of a lead plaintiff, as I understand them under US federal law, no potential to bind a class of putative plaintiffs into a determination or settlement of the proceedings and no duty of care owed by one leading plaintiff to any other.

25. Once a determination is made by a Court under the procedure set out and described in Order 15 Rule 9, then the Court might individually assess damages for each plaintiff.[10]

---

[9] [1949] I.R. 203.

[10] See *O'Cearbhaill v An Bord Telecom* H Ct, Lardner 1st April, 1993 and *Greene v Min for* Agriculture [1990] 2 IR 17

5129383.1

## VII.   DISCOVERY AND DISCLOSURE OF DOCUMENTS

26. In Irish law, discovery is not permitted for documents to prove the defendants' state of mind or intention. Order 31, Rule 29 of the RSC provides for non-party discovery. The Court has a discretion *"to refuse the application it considers that particular oppression or prejudice will be caused to the person called upon to make discovery which is not capable of being adequately compensated by the payment by the party seeking discovery of the costs of the making thereof."*[11] A restrictive view has been taken to rule 29 and in *Chambers v Times Newspapers Ltd.*[12] Morris P held:

> *"I believe that as a general principle third party discovery, with all the inconvenience which it involves, should only be ordered when there is no realistic alternative available.."*[13]

## VIII.   WITNESSES AND EVIDENCE

27. The power of Irish courts to subpoena is limited to witnesses residing or present within the jurisdiction. Therefore American witnesses not resident nor present in Ireland cannot be subject to the Irish courts power of subpoena.

## IX.   STANDING

### A.   The Rule in *Foss v Harbottle* and Derivative Actions in Irish Law

28. In Irish law, the rule in *Foss v Harbottle*[14] governs the circumstances in which a shareholder may step into the shoes of the company. In that case, Wigram VC held:

> *"It was not, nor could it successfully be argued, that it was a matter of course for any individual members of a corporation thus to assume to themselves the right of suing in the name of the corporation. In law, the corporation and the aggregate members of the corporation are not the same thing for purposes like this; the only question can be,*

---

[11] *Ulster Bank v Byrne* [1997] IEHC 120.

[12] [1999] 2 IR 424; [1999] 1 ILRM 504.

[13] [1999] 2 IR 424, 430; [1999] 1 ILRM 504, 509.

[14] (1817) 2 Hare 461.

5129383.1

9

> *whether the facts... justify a departure from the rule which prima facie would require that the corporation should sue in its own name and in its corporate character, or in the name of someone whom the law has appointed to be its representative."*[15]

29. In *Edwards v Halliwell*,[16] an unauthorised increased in Trade Union Member subscriptions was at issue. Jenkins LJ found the members' personal rights had been violated and therefore the matter fell outside the scope of *Foss v Harbottle*. Jenkins L.J. summarised the rule as follows:

> "*The rule in Foss v Harbottle, as I understand it, comes to no more than this. First, the proper plaintiff in an action in respect of a wrong alleged to be done to a company or association of persons is prima facie the company or the association of persons itself. Secondly, where the alleged wrong is a transaction which might be made binding on the company or association and on all its members by a simple majority of the members, no individual member of the company is allowed to maintain an action in respect of that matter for the simple reason that, if a mere majority of the members of the company or association is in favour of what has been done, then cadit quaestio.*"

30. This summary was quoted and approved by the Irish Supreme Court.[17] In *Prudential Assurance Co. v. Newman Industries Ltd. (No.2)*,[18] the English Court of Appeal held:

> "*The rule [in* Foss v. Harbottle*] is the consequence of the fact that a corporation is a separate legal entity. Other consequences are limited liability and limited rights. The company is liable for its contracts and torts; the shareholder has no such liability. The company acquires causes of action for breaches of contract and for torts which damage*

---

[15] Ibid, pp.490-1.

[16] [1950] 2 All ER 1064.

[17] *Balkanbank v Taher* (19th January 1995) and more recently in *Glynn & Anor -v- Owen & Ors* [2007] IEHC 328 (05 October 2007) by Finlay Geoghegan J.

[18] [1982] 1 All E.R. 354.

> *the company. No cause of action vests in the shareholder. When the shareholder acquires a share he accepts the fact that the value of his investment follows the fortunes of the company and that he can only exercise his influence over the fortunes of the company by the exercise of his voting rights in general meeting. The law confers on him the right to ensure that the company observes the limitations of its memorandum of association and the right to ensure that other shareholders observe the rule, imposed on them by the articles of association. If it is right that the law has conferred or should in certain restricted circumstances confer further rights on a shareholder the scope and consequences of such further rights require careful consideration.*"

31. In *Prudential Assurance*, the Court of Appeal set forth five propositions derived from Jenkins LJ's statement (set out above):

    "(1) The proper plaintiff in an action in respect of a wrong alleged to be done to a corporation is, prima facie, the corporation.

    (2) Where the alleged wrong is a transaction which might be made binding on the corporation and on all its members by a simple majority of the members, no individual member of the corporation is allowed to maintain an action in respect of that matter because, if the majority confirms the transaction, cadit quaestio; or, if the majority challenges the transaction, there is no valid reason why the company should not sue.

    (3) There is no room for the operation of the rule if the alleged wrong is ultra vires the corporation, because the majority of members cannot confirm the transaction.

    (4) There is also no room for the operation of the rule if the transaction complained of could be validly done or sanctioned only by a special resolution or the like, because a simple majority cannot confirm a transaction which requires the concurrence of a greater majority.

    (5) There is an exception to the rule where what has been done amounts to fraud and the wrongdoers are themselves in control of the company. In this case the rule is relaxed

5129383.1

11

> *in favour of the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers themselves, being in control, would not allow the company to sue."*

32. *Foss v Harbottle* continues to be accepted and applied by the Irish courts.[19] There are some exceptions to the rule and then there are circumstances, as illustrated in *Edwards* that fall outside the scope of the rule and are not therefore properly exceptions. Courtney states:

   > *"The exceptions to the rule in Foss v Harbottle amount to a recognition that the rule does not prevent a member from bringing either two types of action. First, a member is entitled to bring a personal action to vindicate an infringement of his personal rights. Secondly a member may be entitled to bring a derivative action on behalf of the company.".*[20]

33. Actions on foot of a breach of a member's personal right as opposed to the company's rights are not within the scope of the rule and are not limited by it. Section 25 of the Companies Acts 1963 creates a statutory contract between the company and its members breaches of which may ground a cause of action. In *Pender v Lushington* (1877) 6 Ch D. 70 the chairman refused to count the votes of the plaintiff's nominees contrary to the articles of association. The plaintiff applied successfully for an injunction in the name of the company and his own name. Jessel MR held that it was:

   > *"an individual's right in respect of which he has a right to sue. That had nothing to do with the question like that raised in Foss v Harbottle and that line of cases."*

---

[19] *O'Neill v Ryan* [1993] ILRM 557; *Duggan v Bourke*, High Court, 30th May 1986, Costello J; Courtney, *The Law of Private Companies* (2nd ed), para.19.094; *Rayan Restaurant -v- Murphy & ors* [2009] IESC 28 (27 March 2009); *Martialone Ltd -v- Companies Acts* [2009] IEHC 570 (23 December 2009)(*Foss* applied); *Eylewood Ltd & Ors -v- Companies Acts* [2010] IEHC 57 (05 March 2010) (*Prudential Assurance* and *O'Neill* applied, para.49).

[20] *The Law of Private Companies* (2nd ed), para.19.098. Emphasis original.

34. Similarly in *Edwards* above, the change to the subscriptions amounted to an invalid alteration of the table of contribution. Jenkins LJ stated:

> *"[I]t seems to me that the rule in Foss v Harbottle has no application at all, for the individual members who are suing sue, not in the right of the union, but in their own right to protect from invasion their own individual rights as members."*

In *Heron International v Lord Grade*,[21] shareholders were entitled to maintain an action against a director in their own name as there had been no loss occasioned to the company arising from the poor advice in respect of a takeover bid he had given although the shareholders had personally sustained loss in reliance.

35. The exceptions to *Foss v Harbottle* were summarised in *Fanning v Murtagh* as:

> *"(a)    An act which is illegal or ultra vires to the company;*
>
> *(b)    An irregularity in the passing of a resolution which requires a qualified majority.*
>
> *(c)    An act purporting to abridge or abolish the individual rights of a member.*
>
> *(d)    An act which constitutes a fraud against the minority and the wrongdoers are themselves in control of the company."*

36. Both (a) and (d) will be considered here; (c) is not properly an exemption and has been considered above.

    (a)    An act which is illegal or *ultra vires* to the company.

    Where an ultra vires act was committed, a shareholder may sue for a declaration that an act was ultra vires as an action on a personal right. In *Simpson v Westminister Palace Hotel Co*.[22] funds established for one undertaking were used for another, which was *ultra vires* although sanctioned by the directors and a majority. Additionally, a member of a company may apply to restrain *ultra vires* acts under s.8(2) of the Companies Act

---

[21] [1983] BCLC 244.
[22] (1860) LR 3 Ch App. 262.

1963. Similarly, a member may initiate proceedings where illegal acts have been committed. In *Cockburn v Newbridge Sanitary Steam Laundry Co*[23] the managing director had paid bribes to War Office officials. The company and other shareholders were disinclined to initiate. O'Brien LC held:

> "The rule of law and good sense laid down in Foss v Harbottle is indisputable, but is subject to the exception that where the acts complained of are of a fraudulent character or beyond the powers of the company. The action may be maintained by a shareholder suing on behalf of himself and the other shareholders, the company being made a defendant in the action."

(d) An act which constitutes a fraud against the minority and the wrongdoers are themselves in control of the company.

What constitutes a "fraud on a minority" is widely interpreted and will include actions falling short of negligence. Usually this involves appropriation of the company's property by a majority in a controlling positions or where the majority support directors acting in breach of their fiduciary position. There are three factors usually shown:

- there was a fraud perpetuated by the majority on the minority and the company i.e. where "*the majority have put something into their pockets at the expense of the minority*"[24] Fraud in this context does not have any element of dishonesty[25]

- the defendant majority was in control of the company (*e.g.* 50% of the voting control, etc)

- the defendant derived a benefit.

37. A shareholder may bring a derivative action where one of the exceptions arises. The nature of such an action is summarised by Courtney:

> "[I]n a derivative action a shareholder acts in a non-personal capacity, namely, he acts not only for himself but also for all the other shareholders. Accordingly, it was held in

---

[23] [1915] 1 IR 237.

[24] *Menier v Hooper's Telegraph Works Ltd.* (1874) 9 Ch. App. 350.

[25] Keane, *Company Law* para.26.15.

5129383.1

14

> *Cooke v Cooke that where a shareholder sought to join in one action a claim for relief in his personal capacity with a derivative claim as representative of all of the other shareholders, leave was required to join those causes of action."* [26]

38. Significantly where a shareholder is successful in prosecuting a derivative claim, they will then drop out of the action and the court will award the judgment in favour of the company.[27] As the shareholder is acting as an agent of the company, he is entitled to be indemnified by the company against costs and expenses arising out of the agency[28]. It is important to note that this action is not intended to provide members with relief, and that there is a separate statutory protection for minority members of a company who have suffered oppression at the hands of the majority or the board of a company. This can be found in section 205 of the Companies Act, 1963.

39. There is a two step test to be met in bringing a derivative action. In *Prudential Assurance*, the test was set out:

> "*[E]stablish a prima facie case (i) that the company is entitled to the relief claimed, and (ii) that the action falls within the proper boundaries of the exception to the rule in Foss v Harbottle.*"

40. This appears to have been accepted by Keane J in *Crindle Investments v Wymes*[29]. In *Smith v Croft (No.3)*,[30] Knox J held it was proper to have regard to the views of independent shareholders.

41. The determination as to whether the plaintiff comes within the scope of the exceptions to *Foss v Harbottle* would follow after a consideration of all relevant evidence including the factors motivating the decision of the Thema directors to initiate proceedings.

---

[26] *The Law of Private Companies* (2nd ed), para.19.101. References omitted.

[27] *Spokes v Grosvenor Hotel Co. Ltd* [1897] 2 QB 124; *Wallersteiner v Moir (No.2)* [1975] 1 QB 373.

[28] *Wallersteiner v Moir (No.2)*, ibid.

[29] [1998] 4 IR 578.

[30] [1987] BCLC 355.

5129383.1

42. If there is some persuasive reason why a company should not bring the claim then the shareholder will not be permitted to sue on its behalf. An action of this sort is outlined in SI No 503 of 2010: Rules of the Superior Courts (Derivative Actions) 2010 and requires and affidavit that should exhibit an opinion from counsel indicating that the applicant has a realistic prospect of success.

**B.   Fiduciary Duties**

43. While fiduciary duties are generally owed to the company, Irish law recognises a cause of action on the part of shareholders for breach of fiduciary duties where a director expressly undertakes certain obligations to shareholders giving rise to fiduciary relationship. Irish law accepts that there are equitable fiduciary obligations resting on directors of companies which include the duty to act in the best interests of the company, the duty not make a secret profit and the duty to insure that one is not conflicted in ones interests when acting as a director.

**X.   COMMON LAW CLAIMS ALLEGED**

44. Under Irish law, a cause of action may accrue for negligence including professional negligence, negligent misrepresentation, fraud, breach of fiduciary duties, breach of contract, and recovery of monies had and received and recovery of monies pursuant to the artificial construction of the constructive trust. Unjust enrichment is recognised conceptually in Ireland. Irish law does not recognise a tort of aiding and abetting causes of action in civil law.

45. With regard to negligence, a plaintiff must show the existence of a duty of care, a breach of that duty and damages resulting from that breach. The same proofs are required for professional negligence which is a species of general negligence although the standard of care applicable differs from negligence *simpliciter*. In the case of negligence, the standard of care used is that to be expected of the reasonable person. In the case of professional negligence, the standard of case is that of the reasonably skilful professional in question.[31] The Irish Courts do not recognise gross negligence as a separate species of negligence or tort.[32]

---

[31] *Dunne v National Maternity Hospital* [1989] IR 91; *Roche v Peilow* [1986] ILRM 189; *O'Donovan v Cork County Council* [1967] IR 173.

[32] *APH Manufacturing BV v DHL Worldwide Newtwork NV* [2000] IEHC 121.

46. In both contract and tort, there is an obligation to mitigate loss under s.34 of the Civil Liability Act 1961 and a failure to do so will constitute contributory negligence and limits financial recovery.

47. Irish law does not recognise some of the causes of action pleaded by the plaintiff in the foreign proceedings specifically aiding and abetting and gross negligence and recognition of unjust enrichment is conceptual.

**XI    RISKS IN IRISH LITIGATION**

48. A "loser pays" rule is part of the practice of the Irish Courts. The general rule is that costs follow the event. Litigation is financed by interim fees rendered on account of total costs which are then assessed or agreed at the end of the case. This is a fundamental difference between the United States and Ireland. Lawyers in Ireland are paid up front or as the case progresses.

49. It is also the case that the assessment process in Ireland means that the rates that solicitors and barristers charge are being reduced at the end of the case which has facilitated the practice of obtaining monies up front or during the case.

50. In short, no litigation of this order can realistically progress in Ireland without monies being set aside for it. If the matter is transmitted to Ireland on grounds of *forum non conveniens* there will almost certainly be no actions capable of being brought if sufficient funds are not set aside for it by the plaintiffs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 30th day of September, 2011, at Dublin, Ireland.

_____
Jarlath Ryan BL